1  ARNOLD & PORTER LLP
   TRENTON H. NORRIS  (SBN 164781)
2  ANGEL A. GARGANTA (SBN 163957)
   RACHEL L. CHANIN (SBN 229253)
3  KEVIN M. BOVARD (SBN 247521)
4  One Embarcadero Center, 22nd Floor
   San Francisco, California  94111
5  Telephone:  415.356.3000
   Facsimile:  415.356.3099
6  E-Mail:  trent.norris@aporter.com
            angel.garganta@aporter.com
7            rachel.chanin@aporter.com
            kevin.bovard@aporter.com
8

9  Attorneys for Defendant

10

11                 UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

14  ROBERT CHACANACA and VICTOR        Case No.: 5:10-CV-00502-RS
    GUTTMANN, on Behalf of Themselves and
15  All Others Similarly Situated,          **NOTICE OF MOTION AND MOTION
                                            AND MEMORANDUM OF POINTS AND
16                  Plaintiffs,             AUTHORITIES IN SUPPORT OF
                                            DEFENDANT'S MOTION FOR
17       vs.                                JUDGMENT ON THE PLEADINGS**

18  THE QUAKER OATS COMPANY,            Hearing Date: July 15, 2010
                                        Time:  1:30 p.m.
19                  Defendant.          Place:  Courtroom 3, 17th Floor
                                        Judge:  Honorable Richard Seeborg
20                                      Action Filed: February 3, 2010

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on July 15, 2010, at 1:30 p.m. in Courtroom 3, 17th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, CA  94102, Defendant The Quaker Oats Company ("Quaker"), will and hereby does move this Court for judgment on the pleadings.

Quaker seek dismissal of the Complaint without leave to amend, and entry of  judgment in favor of Quaker.  This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the pleadings and papers on file herein, and such other matters as may be presented to the Court at the time of the hearing.

Dated:  May 27, 2010                                    ARNOLD & PORTER LLP



By:   /s/ Angel A. Garganta
      Angel A. Garganta
      Attorneys for Defendant

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ......................................................................................................... 1

II.     STATEMENT OF THE ISSUES TO BE DECIDED .................................................... 3

III.    FACTS ALLEGED BY PLAINTIFFS .......................................................................... 4

IV.     THE LEGAL STANDARD ............................................................................................ 5

V.      ARGUMENT ................................................................................................................. 6

        A.      Plaintiffs' Claims Are Preempted by Federal Law ........................................... 6

                1.      The FDA Has Extensively Regulated Statements About *Trans* Fat Content ................................................................................................ 6

                2.      Plaintiffs' Claims Are Preempted ......................................................... 9

        B.      Plaintiffs' Claims Are Barred by the Doctrine of Primary Jurisdiction .................... 11

        C.      This Court Should Abstain in Deference to the FDA ...................................... 14

        D.      *Cel-Tech's* Safe Harbor Bars Plaintiffs' UCL and FAL Claims .............................. 15

        E.      Plaintiffs Fail to Allege the Requisite Injury in Fact for Standing ........................... 16

        F.      Plaintiffs Have Not Pled Their Claims with the Requisite Particularity ................... 18

        G.      Plaintiffs' Conclusory Allegations  of Misrepresentation Do Not Satisfy the *Twombly* or *Iqbal* Standards ...................................................................... 20

        H.      Quaker's Product Statements Are True or Non-Actionable Puffery ....................... 21

        I.      Plaintiffs' Lanham Act Claim Is Barred ......................................................... 23

VI.     CONCLUSION ............................................................................................................ 24

i

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 5:10-CV-00502-RS

1

**TABLE OF AUTHORITIES**

2

3

Page(s)

4

**FEDERAL CASES**

5

*Aaronson v. Vital Pharm., Inc.*,
    2010 WL 625337 (S.D. Cal. Feb. 17, 2010) ................................................................ 12, 13

6

*All One God Faith, Inc. v. Hain Celestial Group, Inc.*,
7
    2009 WL 4907433 (N.D. Cal. Dec. 14, 2009) ............................................................... 13

8

*Anunziato v. eMachines, Inc.*,
9
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ......................................................................... 22, 23

10

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ......................................................................... 4, 5, 20, 21

11

*Barrus v. Sylvania*,
12
    55 F.3d 468 (9th Cir. 1995) .................................................................................... 24

13

*Bell Atl. Corp. v. Twombly*,
14
    550 U.S. 554 (2007) ......................................................................... 4, 5, 20, 21, 23

15

*Bernhardt v. Pfizer, Inc.*,
    2000 WL 1738645 (S.D.N.Y. Nov. 22, 2000) ............................................................... 13

16

*Birdsong v. Apple, Inc.*,
17
    590 F.3d 955 (9th Cir. 2009) .................................................................................... 17, 18

18

*Brosnan v. Florida*,
19
    2009 WL 1764535 (N.D. Cal. June 22, 2009) ............................................................... 24

20

*Cook, Perkins & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) .................................................................................... 22, 23

21

*Farm Raised Salmon Cases*,
22
    42 Cal. 4th 1077 (2008), *cert. denied,* 129 S. Ct. 896 (2009) ................................................ 10

23

*Hitt v. Ariz. Beverage Co.*,
24
    2009 WL 449190 (S.D. Cal. Feb. 4, 2009) ................................................................... 10

25

*Hoey v. Sony Elecs. Inc.*,
    515 F. Supp. 2d 1099 (N.D. Cal. 2007) ......................................................................... 19

26

*In re Human Tissue Prods. Liab. Litig.*,
27
    488 F. Supp. 2d 430 (D.N.J. 2007) ............................................................................. 13

28

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*,
  407 F.3d 1027 (9th Cir. 2005)...............................................................................................24

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009).............................................................................5, 6, 18, 19

*Koronthaly v. L'Oreal USA, Inc.*,
  2010 WL 1169958 (3d Cir. March 26, 2010) ...............................................................17, 18

*Legal Additions LLC v. Kowalski*,
  2010 WL 335789 (N.D. Cal. Jan. 22, 2010) ......................................................................5

*Lockwood v. Conagra Foods, Inc.*,
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) ............................................................................10

*Long v. Hewlett-Packard Co.*,
  2007 WL 2994812 (N.D. Cal. July 27, 2007).....................................................................20

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................................................18

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ...............................................................................19

*Maryland v. Louisiana*,
  451 U.S. 725 (1981)..............................................................................................................9

*Mills v. Giant of Md., LLC*,
  441 F. Supp. 2d 104 (D.D.C. 2006), *aff'd*, 508 F.3d 11 (D.C. Cir. 2007) ..............................7

*New York State Rest. Ass'n v. N.Y. City Bd. of Health*,
  556 F.3d 114 (2d Cir. 2009)..................................................................................................9

*New York State Restaurant Assoc. v. New York City Bd. of Health*,
  509 F. Supp. 2d 351 (S.D.N.Y. 2007)...................................................................................9

*Ove v. Gwinn*,
  264 F.3d 817 (9th Cir. 2001)..................................................................................................5

*Pollack v. U.S. Dep't of Justice*,
  577 F.3d 736 (7th Cir. 2009)...............................................................................................16

*Rivera v. Wyeth-Ayerst Labs.*,
  283 F.3d 315 (5th Cir. 2002)...............................................................................................17

*Rosen v. Unilever*,
  2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010) ...............................................15, 21

*Rubio v. Capital One Bank (USA), N.A.*,
  572 F. Supp. 2d 1157 (C.D. Cal. 2008).............................................................................16

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 5:10-CV-00502-RS

*Summers v. Earth Island Inst.*,
   129 S. Ct. 1142 (2009) ........................................................................ 16, 17

*Suzuki v. Hitachi Global Storage Tech.*,
   2007 WL 2070263 (N.D. Cal. July 17, 2007) ........................................ 16

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
   307 F.3d 775 (9th Cir. 2002).............................................................. 11, 12

*Tylka v. Gerber Prods. Co.*,
   1999 WL 495126 (N.D. Ill. July 1, 1999)............................................. 22, 23

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ............................................................................. 17

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)............................................................... 19

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003) .................................................. 24

*Weingberger v. Bentex Pharm, Inc.*,
   412 U.S. 645 (1973) ............................................................................ 13

*Wright v. General Mills*, *Inc.*,
   2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ............................... 18, 19, 20

**STATE CASES**

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ....................................................................... 3, 16

*Center for Biological Diversity, Inc. v. FPL Group, Inc.*,
   166 Cal. App. 4th 1349 (2008)................................................................ 14

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006)................................................................. 20

*Desert Healthcare Dist. v. PacifiCare, FHP, Inc.*,
   94 Cal. App. 4th 781 (2001).................................................................. 14

*Gatherer v. Purdue Pharma L.P.*,
   2002 WL 32144622 (Cal. Super. Ct. Dec. 13, 2002).................................. 14

*Korens v. R.W. Zukin Corp.*,
   212 Cal. App. 3d 1054 (1989)................................................................. 14

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ........................................................................ 19

*Wolfe v. State Farm Fire & Cas. Ins. Co.*,
  46 Cal. App. 4th 554 (1996)...................................................................................14

**STATUTES AND RULES**

15 U.S.C. § 1125 *et seq.*....................................................................................4, 24

21 U.S.C. § 301, *et seq.*...........................................................................................6

21 U.S.C. § 341, *et seq.*...........................................................................................6

21 U.S.C. § 343....................................................................................................7

21 U.S.C. § 343-1(a)(4)..........................................................................................7

21 U.S.C. § 343-1(a)(5)..............................................................................2, 7, 9, 11

21 U.S.C. § 343(q)(1)-(2).........................................................................................6

21 U.S.C. § 343(r)..........................................................................................6, 7, 9

Bus. & Prof. Code § 17200 *et seq.*...........................................................................4

Bus. & Prof. Code § 17500 *et seq.*...........................................................................5

Cal. Civ. Code § 1750 *et seq.*..................................................................................5

Fed. R. Civ. P. 9(b) .............................................................................3, 5, 6, 19, 20

Fed. R. Civ. P. 12(c)...........................................................................................3, 5

**OTHER AUTHORITIES**

21 C.F.R. § 100.1(c)(4)...........................................................................................7

21 C.F.R. § 101.9(c)(2)(ii) ......................................................1, 7, 9, 10, 12, 15, 22

21 C.F.R. § 101.9(f)(1) ......................................................................................7, 12

21 C.F.R. § 101.13(i)(3)................................................................................1, 8, 10

21 C.F.R. § 101.54(c)....................................................................................2, 11, 22

21 C.F.R. § 101.54(d) .................................................................................11, 22

21 C.F.R. § 101.62(b)(2)........................................................................................11

21 C.F.R. § 101.65...............................................................................................21

21 C.F.R., Ch. I, Subch. B, Pt. 101, Refs. & Annos..............................................7

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 5:10-CV-00502-RS

58 Fed. Reg. 44020 ..................................................................................................8

64 Fed. Reg. 62746 .............................................................................................8, 10

68 Fed. Reg. 41434 ..................................................................................................8

75 Fed. Reg. 22602-01 ...........................................................................................12

Warning Letter from Mary H. Woleske, Director, Atlanta District, FDA, to Eduardo
    Moreno, President, Ole' Mexican Foods, Inc. (Nov. 6, 2007), available at
    http://www.fda.gov/ICECI/EnforcementActions/
    WarningLetters/2007/ucm076568.htm ...............................................................9

United States Constitution ........................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 5:10-CV-00502-RS

## MEMORANDUM OF POINTS AND AUTHORITIES

I.     **INTRODUCTION**

Plaintiffs Robert Chacanaca and Victor Guttmann ("Plaintiffs") seek to supplant the role of the Food and Drug Administration (FDA) by asking this Court to declare misleading and unlawful statements by The Quaker Oats Company ("Quaker") -- "0g Trans Fat," "wholesome," a "good source of calcium and fiber," "made with whole grain oats," "no high fructose corn syrup," and "smart choices made easy" --  that are regulated by the FDA and/or that Plaintiffs do not even allege are false.  Put simply, this case never should have been brought and should now be dismissed as a matter of law.

Federal law establishes uniform product labeling requirements, and the FDA, pursuant to that authority, has promulgated detailed regulations governing product labeling.  Specifically, FDA regulations regarding disclosure of *trans* fat <u>mandate</u> that "[i]f the serving contains less than 0.5 gram, the content, when declared, <u>shall be expressed as zero</u>," 21 C.F.R. § 101.9(c)(2)(ii) (emphasis added), on the "Nutrition Facts" portion of the packaging.  The Quaker-branded products at issue properly list in the Nutrition Facts box the amount of *trans* fat as 0 grams.  Indeed, Plaintiffs do not dispute that this is entirely proper.

Plaintiffs nevertheless allege that when "0g Trans Fat" is repeated on the product label a few inches away from the Nutrition Facts box, that statement somehow <u>becomes</u> wrongful.  Such an allegation is contrary to other FDA regulations, which permit this type of statement outside of the Nutrition Facts box: "[T]he label or labeling of a product may contain a statement about the amount or percentage of a nutrient if . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (**e.g., '100 calories or '5 grams of fat'**), in which case no disclaimer is required."  21 C.F.R. § 101.13(i)(3) (emphasis added).  Plaintiffs thus base their *trans* fat allegations on the premise that the statement "0g Trans Fat" on the label is false and misleading -- even though (1) there is no dispute that the products satisfy the federal definition of "0g Trans Fat"; (2) the federal regulations *require* that representation to be made in the Nutrition Facts box; and (3) the same regulations permit that statement to be repeated elsewhere on the package, since the FDA clearly does not consider the

1   statement to be false or misleading.  In other words, a simple numerical repetition of information

2   from the Nutrition Facts box elsewhere on the package is expressly authorized by the FDA.

3          The federal labeling act not only permits the statements at issue, it also expressly preempts

4   Plaintiffs' claims.  That labeling law provides that, for nutrition levels, states are prohibited from

5   making "any requirement respecting any claim . . . in the label or labeling of  food that is <u>not</u>

6   <u>identical</u> to the requirement of [the act] . . . ."  21 U.S.C. § 343-1(a)(5) (2009) (emphasis added).[1]

7   Through this preemption provision, Congress unambiguously precluded exactly what Plaintiffs are

8   attempting here (*i.e.*, the creation of a rule through the judicial process that is different from federal

9   law), and this action should be dismissed for that reason.

10         Plaintiffs' other allegations of misleading statements merely piggy-back on the flawed *trans*

11  fat claims.  Plaintiffs acknowledge that the purported misleading statements such as "wholesome"

12  are "possibly true," but suggest they are "deceptive in intent and nature . . . [because] they imply

13  that Quaker Chewy granola bars are healthy despite that they [sic] contain artificial trans fat."

14  Compl. ¶ 58.  These conclusory allegations of deception do not come close to stating a claim.

15  Under Plaintiffs' theory, any statement -- even if true -- about an attribute or ingredient of a product

16  (e.g., "made with whole grain oats" or "no high fructose corn syrup") becomes misleading by virtue

17  of the existence of trace amounts of *trans* fat or for that matter any attribute (e.g., fat, more calories,

18  etc.) that Plaintiffs deem unhealthy, <u>even if</u> the FDA has not imposed restrictions on such

19  statements based on that attribute.  Moreover, Plaintiffs ignore the fact that the FDA specifically

20  regulates a number of these statements, *see, e.g.*, 21 C.F.R. § 101.54(c) (regulating "good source"

21  claims), and has provided no limitation on the use of these statements where a product contains

22  *trans* fat.  Plaintiffs essentially seek to take over the role of the FDA and ban even trace amounts of

23  *trans* fat.

24         Even if Plaintiffs' claims were not preempted (which they are), Plaintiffs' Complaint should

25  be dismissed for a number of other reasons.  First, regardless of the preemptive effect of federal

26

27  _____

28  [1] The Patient Protection and Affordable Care Act, H.R. 3590, signed by President Obama on March 23, 2010, modified provisions of the NLEA governing restaurants that are not applicable here.

law, it is clear that the federal government and the FDA in particular have established a comprehensive set of rules regarding product labeling that are the result of balancing a complex set of scientific, consumer protection, and other considerations.  This Court thus should decline to upset this carefully constructed balance under the doctrines of primary jurisdiction and equitable abstention, and should not declare "unfair" under California's unfair competition law conduct that falls within the "safe harbors" of FDA regulation.  Moreover, Plaintiffs have failed to satisfy other basic pleading requirements, such as failing to allege injury-in-fact sufficient for Article III standing, to include the requisite level of facts under Federal Rule of Civil Procedure 9(b), and to state a plausible legal claim of misrepresentation.  Additionally, as a matter of law, Quaker's statements are true and/or non-actionable puffery.  Finally, Plaintiffs' Lanham Act claim fails for the entirely independent reason that such a claim cannot be brought on behalf of consumers, as opposed to business competitors.

Accordingly, pursuant to Federal Rule Civil Procedure 12(c), this Court should grant Defendant's motion for judgment on the pleadings and enter judgment in favor of Quaker.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED

1.    **Express Preemption**:  Whether Plaintiffs' claims are preempted by the Nutrition Labeling and Education Act (NLEA) because they seek to impose requirements for product labeling that are "not identical" to those mandated by FDA.

2.    **Primary Jurisdiction**:  Whether Plaintiffs' claims are barred by the doctrine of primary jurisdiction because the initial decisionmaking responsibility should be performed by the FDA rather than the courts.

3.    **Equitable Abstention**:  Whether this Court should abstain because adjudication would interfere with FDA regulation of *trans* fat and front-of-the pack labeling, and result in potentially piecemeal and inconsistent regulation of product packaging by courts across the country.

4.    *Cel-Tech* **Safe Harbor**:  Is there a "safe harbor" defense to a claim brought under the Unfair Competition Law (UCL) where the product label contains a statement that is expressly permitted and even required by FDA regulations?

5.    **Standing:**  Whether Plaintiffs fail to allege the requisite injury in fact for standing.

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 5:10-CV-00502-RS

6.     **Pleading Misrepresentation With Particularity:**  Whether Plaintiffs have failed to plead their claims of misrepresentation with the adequate particularity.

7.     **Pleading Deficiencies--Conclusory Allegations of Misrepresentation**:  Whether Plaintiffs fail to state a plausible legal claim under *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007) because Plaintiffs' conclusory allegations of misrepresentation are insufficient.

8.     **Truth and/or Puffery**:  Whether Quaker's statements are true and/or non-actionable puffery.

9.     **Lanham Act**:  Whether Plaintiffs lack standing to bring a Lanham Act false advertising claim because they have not alleged a competitive injury.

## III.   FACTS ALLEGED BY PLAINTIFFS

Plaintiffs allege they "repeatedly purchased Quaker Chewy Granola Bars for their own use in various California stores."  Compl. ¶ 15.  Plaintiffs contend that "Quaker falsely labels Chewy Granola Bars as '0g trans fat' when they contain dangerous amounts of artificial trans fat."  *Id.* ¶ 6; *see also* Compl. ¶ 57.  Plaintiffs also assert that "[t]hough possibly true," the statements "'wholesome,' a 'good source of calcium and fiber,' 'made with whole grain oats,' 'no high fructose corn syrup,' and 'smart choices made easy'" are misleading because they "imply that Quaker Chewy granola bars are healthy despite that they [sic] contain artificial trans fat."  *Id.* ¶ 58 (emphasis added).   Plaintiffs further maintain that "images of oats, nuts, and children" are misleading because "[t]he obvious implication" is that the products are "part of a healthy lifestyle," but they "[i]n fact . . . contain artificial trans fat, which renders them unfit for human consumption."  *Id.* ¶ 59.  Plaintiffs assert -- without explanation -- that "[a]bsent these material deceptions, misstatements, and omissions, Plaintiffs and other Class members would not have purchased these Quaker products."  *Id.* ¶ 66.  Plaintiffs do not allege that they suffered any adverse health effects or that they consumed the products, much less that any amount of *trans* fat they may have consumed exposed them to any potential adverse health effects.

Plaintiffs allege causes of action for (1) false advertising under the Lanham Act, 15 U.S.C. § 1125 *et seq.*, (2) violations of the California Unfair Competition Law (UCL), Bus. & Prof. Code

§ 17200 *et seq.*, and the Common Law of Unfair Competition; (3) violations of the False Advertising Law (FAL), Bus. & Prof. Code § 17500 *et seq.*; and (4) violations of the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq.*

Plaintiffs do not seek any damages, but ask for an order enjoining Quaker from marketing its products as "0 grams trans fat"; an order compelling "corrective advertising"; disgorgement of monies, revenues, and profits; an order "compelling Quaker to destroy all misleading and deceptive advertising"; restitution; and costs, expenses, and attorneys' fees.  Compl., Prayer for Relief. Plaintiffs seek to certify a nationwide class of "[a]ll persons (excluding officers, directors, and employees of Quaker) who purchased, on or after January 1, 2000, one or more Quaker Chewy Granola Bar products containing artificial trans fat." *Id.* ¶ 63.

## IV.    THE LEGAL STANDARD

Under Federal Rule 12(c), "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings."  Fed. R. Civ. Proc. 12(c).  "[T]he legal standards for 12(b)(6) and 12(c) motions . . . are essentially the same.  The issue is whether the complaint contains sufficient factual allegations which, taken as true, state a facially plausible claim for relief."  *Legal Additions LLC v. Kowalski*, No. C-08-2754 EMC, 2010 WL 335789, at *2 (N.D. Cal. Jan. 22, 2010).  While the Court must assume the truth of all properly pleaded allegations of fact, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001).

A case should be dismissed where the complaint fails to state a "'claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  A court does not have to accept as true any legal conclusions.  *See Iqbal*, 129 S. Ct. at 1949-50.  Stripped of unsupported legal conclusions, the factual allegations must do more than "create[] a suspicion of a legally cognizable right of action;" they must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (quotations and citations omitted).

Moreover, because Plaintiffs' claims sound in fraud they are subject to the heightened pleading standard of Rule 9(b) and must be pled with particularity.  *See* Fed. R. Civ. Proc. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (holding allegations under the

1  CLRA and UCL failed to satisfy Rule 9(b) particularity requirement). "Averments of fraud must be

2  accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* at 1124

3  (quotations and citations omitted).

4  **V.    ARGUMENT**

5      **A.    Plaintiffs' Claims Are Preempted by Federal Law**

6          Plaintiffs ask this Court to declare misleading and unlawful a statement that Quaker is

7  <u>required</u> by the FDA to put on its Nutrition Facts box.  Plaintiffs do not allege that Quaker's

8  statement on the Nutrition Facts box that its products contain "0g" *trans* fat is in any way false or

9  misleading.  Instead, Plaintiffs' argument boils down to an assertion that (1) where the same

10  information, "0g Trans Fat," appears elsewhere on the product packaging it somehow <u>becomes</u>

11  misleading, and (2) the existence of trace amounts of *trans* fat renders even true statements about

12  the products, e.g., "no high fructose corn syrup," misleading.  Plaintiffs' strained claim is

13  preempted.

14          **1.    The FDA Has Extensively Regulated Statements About *Trans* Fat
                        Content**

15

16          The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FFDCA") establishes

17  a comprehensive federal scheme to ensure that food is safe and labeled in an manner that does not

18  mislead consumers.  21 U.S.C. § 341, *et seq.*  In 1990, Congress passed the Nutritional Labeling

19  and Education Act of 1990 ("NLEA"), which amended the FFDCA to include additional uniform

20  food labeling requirements and established the now-familiar Nutrition Facts box that appears on

21  food product labels.  *See* 21 U.S.C. § 343(q)(1)-(2).  In addition to the Nutrition Facts box, the

22  FFDCA also establishes requirements for claims outside of that box, "made in the label or labeling

23  of [a] food which expressly or by implication . . . characterize[] the level of any nutrient . . . ."  21

24  U.S.C. § 343(r).

25          The FFDCA includes a broad preemption provision that prohibits a state from imposing any

26  labeling requirements that are not "identical to" the federal requirements.  Specifically, the FFDCA

27  provides that states are prohibited from making "any requirement respecting any claim of the type

28  described in section 343(r)(1) of this title [*i.e.*, the section governing characterization of the level of

nutrients] made in the label or labeling of food that is <u>not identical</u> to the requirement of section

343(r) of this title . . . ."  21 U.S.C. § 343-1(a)(5) (emphasis added); *see also* 21 U.S.C.

§ 343-1(a)(4) (same language regarding preemption of statements in Nutrition Facts box); *Mills v.*

*Giant of Md., LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006) (noting the breadth of the NLEA

preemption clause), *aff'd*, 508 F.3d 11 (D.C. Cir. 2007).

The phrase "not identical" refers to <u>any</u> "[s]tate requirement [that] directly <u>or indirectly</u>

imposes obligations or contains provisions concerning the composition or labeling of food" that are

"not imposed by or contained in the applicable provision" or that "[d]iffer from those specifically

imposed by or contained in the applicable provision."  21 C.F.R. § 100.1(c)(4) (emphasis added).

Pursuant to the FFDCA and its amendments, the FDA has promulgated implementing

regulations that specifically define and authorize the *trans* fatty acid ("TFA") packaging statements

at issue in this case.  *See* 21 C.F.R., Ch. I, Subch. B, Pt. 101, Refs. & Annos. (citing 21 U.S.C.

§ 343 as statutory authority for regulations in Part 101 re "Food Labeling").  These laws, in

connection with the express preemption provisions of the FFDCA, preclude Plaintiffs' claims.

In 2003, the FDA issued its regulation governing the proper disclosures of TFA levels in

foods.  Where a product contains more than 0.5 gram of total fat in a serving (as with the products

at issue here), the Nutrition Facts box <u>must</u> include a statement regarding the level of *trans* fat

contained in the product.  21 C.F.R. § 101.9(c)(2)(ii).  However, in that situation, the level of *trans*

fat also <u>must</u> be reported as **zero** if the serving contains less than 0.5 gram of *trans* fat.  The law is

unambiguous regarding this requirement:  "If the serving contains less than 0.5 gram [*trans* fat], the

content, when declared, <u>shall be expressed as zero</u>."  21 C.F.R. § 101.9(c)(2)(ii) (emphasis added).

This regulation is the result of extensive rule-making procedures.  Using these procedures,

the FDA has found that the under 0.5 gram definition of "zero" is appropriate because levels of

*trans* fat below that level are insignificant.  *See* 21 C.F.R. § 101.9(f)(1) ("An 'insignificant amount'

shall be defined as that amount that allows a declaration of zero in nutrition labeling . . . ."); 21

C.F.R. § 101.9(c)(2)(ii) (providing a statement for *trans* fat "is not required for products that contain

less than 0.5 gram of total fat" and "[e]xcept as provided for in paragraph (f) of this section, if a

statement of the trans fat content is not required and, as a result, not declared, the statement 'Not a

---

7

significant source of trans fat' shall be placed at the bottom of the table of nutrient values.").[2]

The FDA also has promulgated a regulation that expressly permits representations that are made within the Nutrition Facts box (such as those representations regarding the defined levels of *trans* fat) to appear elsewhere on the label, so long as those statements are consistent with the statements in the Nutrition Facts box to ensure accuracy and avoid confusion. Thus, outside-the-Nutrition Facts box, "label or labeling of a product may contain a statement about the amount or percentage of a nutrient if:"

> The statement does not in any way implicitly characterize the level of nutrient in the food and it is not false or misleading in any respect (e.g., "**100 calories" or "5 grams of fat**"), in which case no disclaimer is required.

21 C.F.R. § 101.13(i)(3) (emphasis added).

The FDA requires consistency between statements made inside and outside of the Nutrition Box because it views differences between statements in those two locations as potentially "confusing to consumers." *See* RJN Ex. C, "Food Labeling: Nutrient Content Claims . . . ," 58 Fed. Reg. 44020, 44024 cmt. 8 ("The agency believes, however, that it is more important to prevent consumer confusion by having consistency on the food label than to be prescriptive as to the method by which nutrient values for relative claims are determined and used.") & 44025 cmt. 11 (Aug. 18, 1993) (to be codified at 21 C.F.R. pts. 5 and 101); RJN Ex. A, 64 Fed. Reg. at 62755 ("Also, one of the principles used by the agency in establishing nutrient content claims is that the nutrient must be declared in the nutrition label so that the claim is <u>verifiable by reference to the</u>

---

[2] *See also* Request for Judicial Notice ISO Motion for Judgment on the Pleadings ("RJN") Ex. A, "Food Labeling: Trans Fatty Acids in Nutritional Labeling, Nutrient Content Claims, and Health Claims," 64 Fed. Reg. 62746, 62758 (Nov. 17, 1999) (to be codified at 21 C.F.R. pt. 101) ("The petitioner's suggestion that the definition of 'saturated fat free' be changed to less than 0.5 g of saturated and trans fat combined is not analytically feasible because it would require accurate measurement of both saturated fat and trans fat at levels significantly below 0.5 g. In the absence of more sensitive methods, which the petitioner did not provide, it is not appropriate for the agency to set criteria that cannot be adequately analyzed."); RJN Ex. B, "Food Labeling: Trans Fatty Acids in Nutrition Labeling, Nutrient Content Claims, and Health Claims," 68 Fed. Reg. 41434, 41463 (July 11, 2003) (to be codified at 21 C.F.R. Part 101) (rejecting listing to nearest tenth or hundredth of a gram, discussing problems with detection at these levels, and explaining that the 0.5 increment for listing *trans* fat is consistent with increments used for listing total fat and saturated fat).

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 5:10-CV-00502-RS

nutrition label.") (emphasis added).  In fact, the FDA has taken, and continues to take, enforcement action based on this view.  For example, the FDA recently sent a warning letter to a food manufacturer that, among other things, made claims outside the Nutrition Facts panel that were *different* from information inside the panel.  *See* RJN Ex. D, Warning Letter from Mary H. Woleske, Director, Atlanta District, FDA, to Eduardo Moreno, President, Ole' Mexican Foods, Inc. (Nov. 6, 2007), available at http://www.fda.gov/ICECI/EnforcementActions/ WarningLetters/2007/ucm076568.htm) (citing violation of regulations based on inconsistency of statements in Nutrition Facts panel and other claims on the label).

### 2.  Plaintiffs' Claims Are Preempted

Not only do general principles of federal preemption under the United States Constitution apply here, *see Maryland v. Louisiana*, 451 U.S. 725, 746 (1981), but, as discussed above, the FFDCA also includes an express preemption provision that bars Plaintiffs' claims.  *See* 21 U.S.C. § 343-1(a)(5) (preemption regarding nutrient content statements).

Courts consistently have acknowledged that the FDA's regulations of nutrient content statements preempt state laws that attempt to impose requirements that are different from the FDA's rules.  As one court has put it, "states are broadly preempted from regulating voluntary claims that characterize the level of any nutrient . . . .  [S]tates are precluded under § 343-1(a)(5) from establishing requirements for 'claims,' . . . unless the requirements are identical to federal requirements."  *New York State Restaurant Assoc. v. New York City Bd. of Health*, 509 F. Supp. 2d 351, 358 (S.D.N.Y. 2007).  *See also New York State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 120 (2d Cir. 2009) ("Section 343-1(a)(5), which relates to Section 343(r), expressly preempts state or local governments from imposing <u>any requirement</u> on nutrient content claims made by a food purveyor 'in the label or labeling of food that is not identical to the requirements of [S]ection 343(r) . . . .'") (quoting § 343-1(a)(5)) (emphasis added).  Accordingly, Plaintiffs' attempt to use state law claims in this court to regulate nutrient content statements is preempted.

As outlined above, for statements on the Nutrition Facts box, the FDA mandates that "[i]f the serving contains less than 0.5 gram, the content, when declared, shall be expressed as zero."  21 C.F.R. § 101.9(c)(2)(ii).  For claims outside of the Nutrition Facts box,  the FDA regulations

1    expressly permit "a statement about the amount or percentage of a nutrient if . . . [t]he statement

2    does not in any way implicitly characterize the level of the nutrient in the food and it is not false or

3    misleading in any respect (e.g., **'100 calories' or '5 grams of fat'**)."  21 C.F.R. § 101.13(i)(3)

4    (emphasis added).  These provisions expressly preempt all of Plaintiffs' claims.

5          First, Plaintiffs' allegations regarding the "0g Trans Fat" statement are preempted.  Plaintiffs

6    seek to impose obligations that are expressly prohibited by the FDA's TFA regulations.  Plaintiffs

7    allege that the statement "0g Trans Fat" is "[f]alse and misleading."  Compl. ¶ 57.  But Plaintiffs do

8    not allege that the products contain TFAs in amounts that *exceed* the FDA's 0.5 gram threshold, nor

9    do they dispute that Quaker was <u>required</u> to declare 0g *trans* fat on the Nutrition Facts box.  Instead,

10   Plaintiffs ask this Court to prohibit statements that FDA regulations require on the Nutrition Facts

11   box, 21 C.F.R. § 101.9(c)(2)(ii) ("the content, when declared, shall be expressed as zero"), and

12   expressly authorize elsewhere on the packaging,  21 C.F.R. § 101.13(i)(3) (authorizing "a statement

13   about the amount or percentage of a nutrient").  *See also* RJN Ex. A, 64 FR at 62755 ("Also, one of

14   the principles used by the agency in establishing nutrient content claims is that the nutrient must be

15   declared in the nutrition label so that the claim is <u>verifiable by reference to the nutrition label</u>.")

16   (emphasis added).  Accordingly, Plaintiffs' claim that the statement "0g Trans Fat" is "[f]alse and

17   misleading," Compl. ¶ 57, is expressly preempted.[3]

18         Second, Plaintiffs' allegations of other misleading statements are similarly preempted.

19   Plaintiffs acknowledge that "[t]hough possibly true," the statements "'wholesome,' a 'good source

20   of calcium and fiber,' 'made with whole grain oats,' 'no high fructose corn syrup,' and 'smart

21

22   _____

23   [3] Because the FDA has expressly regulated the nutrient content claims at issue, and because
     Plaintiffs' claims seek to supplant these express regulations, this case is distinguishable from those
24   situations in which courts have declined to find preemption by the NLEA.  *See, e.g.*, *Lockwood v.
     Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1034 (N.D. Cal. 2009) (explaining that "all natural"
25   claims were not preempted where the FDA "has declined to adopt any regulations governing this
     term"); *Hitt v. Ariz. Beverage Co.*, No. 08cv809, 2009 WL 449190, at *4 (S.D. Cal. Feb. 4, 2009)
26   (finding no preemption where defendants did "not reference any express preemption provision that
     applies to Plaintiff's claims" challenging the use of the term "all natural" and the use of "fruit
27   names" in defendants' beverage names); *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1098
     (2008), *cert. denied*,129 S. Ct. 896 (2009) (permitting "private remedies" where plaintiffs alleged
28   "violations of state laws <u>identical</u> to the F[F]DCA" in context of claims of artificial colored farmed
     salmon).

_____

10

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 5:10-CV-00502-RS

choices made easy,'" as well as "images of oats, nuts, and children in soccer uniforms" are misleading because they "imply that Quaker Chewy granola bars are healthy despite that they [sic] contain artificial trans fat." Compl. ¶¶ 58, 59 (emphasis added). Thus, Plaintiffs' only basis for alleging the claims are "false or misleading" is the purported existence of trace amounts of TFAs -- amounts that the FDA has expressly <u>required</u> to be declared as 0 grams on the Nutrition Fact box. The FDA has not banned TFAs or limited statements that can be made about a product when it contains trace amounts of TFAs -- but that is precisely what Plaintiffs seek to do. Thus, Plaintiffs' theory is preempted because it imposes requirements that are "not identical" to FDA regulations. 21 U.S.C. § 343-1(a)(5).

Moreover, many of Plaintiffs' claims are preempted for the additional reason that there are specific regulations governing certain of the statements, and Plaintiffs do not allege, nor could they in good faith, that Quaker does not comply with these regulations. For instance, "good source" claims are governed by 21 C.F.R. § 101.54(c), which specifically provides that "[t]he term[] 'good source' . . . may be used on the label and in the labeling of foods . . . provided that the food contains 10 to 19 percent of the RDI [reference daily intake] or DRV [daily recommended value] per reference amount customarily consumed." "Good source of fiber" claims are also regulated by 21 C.F.R. § 101.54(d), which imposes additional labeling requirements where a food is not "low" in total fat.[4] The FDA regulations <u>expressly</u> define the circumstances where "good source" claims can be made, and do not provide an exception where a product contains TFAs.

Accordingly, Plaintiffs' claims are preempted.

**B.** **Plaintiffs' Claims Are Barred by the Doctrine of Primary Jurisdiction**

Primary jurisdiction "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,

---

[4] Specifically, 21 C.F.R. § 101.54(d) provides: "If a nutrient content claim is made with respect to the level of dietary fiber, that is, that the product is . . . a good source of fiber . . . and the food is not 'low' in fat as defined by § 101.62(b)(2) . . . then the label shall disclose the level of total fat per labeled serving."

307 F.3d 775, 780 (9th Cir. 2002).  The Ninth Circuit has articulated several factors in determining the application of the primary jurisdiction doctrine, including "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."  *Id.* at 781.

This case falls squarely within the primary jurisdiction doctrine.  The FDA has regulatory authority over statements regarding the TFA content of packaged goods, has issued specific regulations regarding TFA statements on labels, has issued specific regulations regarding nutrient content statements on the front of packages, and has indicated its intent to continue to refine its regulation of such statements.[5]  The FDA has specialized expertise in the area of TFAs, and has found, after notice and comment, that amounts of TFAs below 0.5 gram are not significant.  *See, e.g.,* RJN Ex. A, at 62758; RJN Ex. B, at 41463; 21 C.F.R. § 101.9(f)(1); 21 C.F.R. § 101.9(c)(2)(ii); discussed *supra* pp. 6-8.  Moreover, uniformity in regulation -- rather than piecemeal mandates by courts -- is critical to ensuring a system of labeling that will not confuse consumers.

Several recent California federal court decisions have applied the doctrine of primary jurisdiction to dismiss cases similar to this one.  For example, in *Aaronson v. Vital Pharm., Inc.*, No. 09-cv-1333, 2010 WL 625337 (S.D. Cal. Feb. 17, 2010), the plaintiff alleged that defendant, the manufacturer of  energy drinks violated the UCL and FAL because it "fail[ed] to make known the risks inherent" in the product "by deceptively promoting [it] as having approved and unique drug-qualities" and "disseminated deceptive representations that wrongly promote [the product] as a safe and healthy supplement."  *Id.* at *1.  The court granted a motion to dismiss these claims under the primary jurisdiction doctrine.  The district court reasoned that to evaluate the claims the court would "likely need to evaluate conflicting studies and determine whether [the product] and/or it's [sic]

---

[5] For example, the FDA is working on the development of additional labeling regulations and has emphasized the importance of maintaining consistency in the labeling system.  *See* RJN Ex. E, "Front-of-Pack and Shelf Tag Nutrition Symbols; Establishment of Docket; Request for Comments and Information," 75 Fed. Reg. 22602-01 (April 29, 2010).

ingredients should be approved as safe," and "[u]nder the primary-jurisdiction doctrine, these issues are best suited for the FDA." *Id.* at *2.   The court also explained that application of the primary jurisdiction doctrine was necessary to prevent interference with "uniform regulation in the field of dietary supplements." *Id.* at *3.

Similarly, in *All One God Faith, Inc. v. Hain Celestial Group, Inc.*, No. C 09-03517, 2009 WL 4907433 (N.D. Cal. Dec. 14, 2009), the district court granted defendant's motion to dismiss under the primary jurisdiction doctrine.  Plaintiff, a competitor company, alleged that defendants engaged in unfair competition by selling and marketing cosmetic products using the term "organic." *Id.* at *2.  There was no dispute in that case that the "USDA has declined expressly to impose the NOP [National Organics Program] standards on personal care products," although there had been draft recommendations to the USDA urging the development of a complete federal organic cosmetics program.  *Id.* at *5-6.  Nevertheless, the district court applied the primary jurisdiction doctrine:  "Under the primary jurisdiction doctrine, it would be inappropriate for this Court to assume the USDA's regulatory role, interpret the NOP's regulatory framework, and impose standards that the USDA itself has refused to impose upon Defendants."  *Id.* at *7.

In fact, courts have repeatedly applied the doctrine of primary jurisdiction to bar litigation of issues that fall within the province of the FDA.  *See Weingberger v. Bentex Pharm, Inc.*, 412 U.S. 645, 654 (1973) (deferring to FDA in action by drug marketers for declaratory judgment, because "questions within the peculiar expertise of an administrative agency [such as the FDA] are appropriately routed to the agency, while the court stays its hand") (internal quotations omitted); *In re Human Tissue Prods. Liab. Litig.*, 488 F. Supp. 2d 430, 433 (D.N.J. 2007) (holding court should defer to FDA on whether to issue notice because plaintiffs were "asking the [c]ourt to perform the tasks traditionally relegated to the FDA" and ordering notice could lead to "inconsistent notices"); *Bernhardt v. Pfizer, Inc.*, No. 00 Civ. 4042, 2000 WL 1738645, at *3 (S.D.N.Y. Nov. 22, 2000) (applying primary jurisdiction doctrine and deferring  to FDA on sending out emergency notice to prescription drug holders because of "the potential for inconsistent directions").

This Court similarly should not supplant the role of the FDA, particularly where the FDA already has specifically regulated TFAs, *see supra* pp. 6-8, and indicated its intention to further

1    regulate, *see supra* n.5.

2        **C.    This Court Should Abstain in Deference to the FDA**

3        Courts also simply decline equitable relief where it would entangle them in an area subject

4    to legislative or regulatory authority.  *See Center for Biological Diversity, Inc. v. FPL Group, Inc.*,

5    166 Cal. App. 4th 1349, 1371 (2008) (abstaining where "[i]ntervention by the courts . . . not only

6    would threaten duplication of efforts and inconsistency of results, but would require the court to

7    perform an ongoing regulatory role as technology evolves and conditions change"); *Desert*

8    *Healthcare Dist. v. PacifiCare, FHP, Inc.*, 94 Cal. App. 4th 781, 794-96 (2001) (abstaining in

9    action involving UCL claim); *Wolfe v. State Farm Fire & Cas. Ins. Co.*, 46 Cal. App. 4th 554, 568

10   (1996) ("The [issues] . . . are peculiarly matters within the legislative domain.  The Legislature's

11   expressed intent to address these issues, both now and in the future, mandates judicial restraint as

12   much if not more so than had it refused to do so. . . .   [W]e decline the invitation to undo what the

13   Legislature has done.").  *Cf. Korens v. R.W. Zukin Corp.*, 212 Cal. App. 3d 1054, 1058 (1989)

14   ("[W]e . . . do not believe that we can properly create by implication a law requiring the payment of

15   interest on security deposits when the Legislature has declined to do so.").

16       Courts have found abstention appropriate where adjudication would interfere with FDA

17   regulation.  In *Gatherer v. Purdue Pharma L.P.*, No. BC 257852, 2002 WL 32144622 (Cal. Super.

18   Ct. Dec. 13, 2002), the court held that abstention was appropriate where plaintiffs brought an action

19   against a pharmaceutical manufacturer alleging misrepresentations or omissions regarding the

20   appropriate uses, risk, and safety of the drug OxyContin.  *Id.* at * 1.  The court explained:

21           If this court were to exercise jurisdiction over this matter, it would
             improperly intrude into the prescription drug industry that the federal
22           government heavily regulates.

23           Abstention applies here where the remedy, if granted, has
             ramifications extending throughout an industry to such a degree that it
24           would endanger the judiciary in a protracted nature of policy
             formulation and enforcement.  Equity relief would be impossible and
25           difficult to administer.

26           This is a national problem which has many ramifications and this
             court abstains . . . because the matters raised in Plaintiff's complaint
27           was subject to substantial regulation by the federal government.

28   *Id.*

Here, the abstention doctrine applies with particular force.  The FDA has specifically regulated in this area, *see* 21 C.F.R. § 101.9(c)(2)(ii) (TFA Nutritional Facts box regulation), 21 C.F.R. § 101.13(i)(3) (nutrient content claims) and discussion *supra* pp. 6-8, and has indicated its intention to continue refining labeling requirements in the future, *see* RJN Ex. E and discussion *supra* n.5.   Yet Plaintiffs ask the Court to intervene in the FDA's regulatory scheme, and second guess its determination that it is appropriate to declare trace amounts of TFAs as 0 grams.

Moreover, this case is particularly appropriate for application of the abstention doctrine because it is but one of numerous cases across the country against various manufacturers alleging misrepresentations in connection with TFAs in a variety of products.  *See Rosen v. Unilever United States, Inc.*, 5:09-cv-02563 (N.D. Cal.);[6] *Red v. Unilever United States, Inc.*, 5:10-cv-0387 (N.D. Cal.); *Higginbotham v. Kellogg Co.*, 3:10-cv-00255 (S.D. Cal.) (voluntarily dismissed); *Bahn  v. Nestle U.S.A., Inc.*, 2:10-cv-1022 (C.D. Cal.); *Red  v. The Kroger Co.*, 2:10-cv-1025 (C.D. Cal.); *Red  v. Kraft Foods, Inc.*, 2:10-cv-1028  (C.D. Cal.); *Peviani v. Hostess Brands Inc.,* 2:10-cv-02303 (C.D. Cal.); *Lee v. ConAgra Foods, Inc.*, 8:10-cv-00421 (C.D. Cal.) (voluntarily dismissed).  In addition, similar claims have been filed against Quaker in the Southern District of New York.  *See Kline-Galkin v. The Quaker Oats Co. et al.*, 7:10-CV-03477 (S.D.N.Y April 26, 2010).  Having courts individually adjudicate these claims -- including issues such as what level of TFAs pose health risks, when statements are "misleading" to consumers, how products should be labeled, etc. -- risks inconsistent decisions and the application of different standards to different manufacturers and products.

The FDA -- with its specialized expertise in regulating TFAs and product packaging -- simply is better equipped to develop a uniform scheme of regulation.  This Court should abstain from second-guessing or interfering with FDA regulations on this issue.

### D.    *Cel-Tech's* Safe Harbor Bars Plaintiffs' UCL and FAL Claims

The California Supreme Court has instructed that if a legislative or regulatory body has

---

[6] *Rosen v. Unilever* was dismissed with prejudice at the pleading stage.  *Rosen v. Unilever*, N.D. Cal. Case No. 5:09-cv-02563 JW, Dkt. # 57,  2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010) (granting  defendant's motion to dismiss with prejudice).

1    permitted certain conduct, courts may not override that determination. *See Cel-Tech Commc'ns,*

2    *Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999) ("Courts may not simply impose

3    their own notions of the day as to what is fair or unfair. . . .   If the Legislature has permitted certain

4    conduct or considered a situation and concluded no action should lie, courts may not override that

5    determination.  When specific legislation provides a 'safe harbor,' plaintiffs may not use the general

6    unfair competition law to assault that harbor.").

7        Courts have consistently applied *Cel-Tech's* "safe harbor" concept to bar claims like those

8    here.  *See, e.g.*, *Rubio v. Capital One Bank (USA), N.A.*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal.

9    2008) (holding bank's credit card disclosures that comply with Truth in Lending Act cannot violate

10   UCL); *Suzuki v. Hitachi Global Storage Tech.*, No. C 06-07289 MHP, 2007 WL 2070263, at *5

11   (N.D. Cal. July 17, 2007) ("[P]laintiff's UCL claim fails under California's safe harbor doctrine

12   because using decimal notation to represent HDD capacity is clearly permitted by the legislature.").

13       Here, FDA has specifically determined that the statement "0g Trans Fat" is not only

14   accurate, but in fact should be <u>required</u> when a product contains less than 0.5 grams.  Plaintiffs seek

15   to have this Court declare as misleading that which the FDA has expressly mandated.  Plaintiffs

16   cannot "assault th[e] harbor" of FDA regulations through the guise of general unfair competition

17   law.  *See Cel-Tech*, 20 Cal. 4th at 182.

18       **E.    Plaintiffs Fail to Allege the Requisite Injury in Fact for Standing**

19       Plaintiffs' claims also fail for the independent reason that Plaintiffs have not -- and cannot --

20   allege facts sufficient to demonstrate standing, as their claims are entirely premised on speculative

21   injury.  No plaintiff can obtain any relief in an action brought in federal court unless that plaintiff

22   can demonstrate as at threshold matter that he or she satisfies the standing requirements imposed by

23   Article III.  *See, e.g.*, *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009) ("[Plaintiff] bears

24   the burden of showing that he has standing for each type of relief sought.").  To show standing, a

25   plaintiff must allege that "'he is under threat of suffering "injury in fact" that is concrete and

26   particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be

27   fairly traceable to the challenged action of the defendant; and it must be likely that a favorable

28   judicial decision will prevent or redress the injury.'"  *Pollack v. U.S. Dep't of Justice*, 577 F.3d 736,

16

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 5:10-CV-00502-RS

739 (7th Cir. 2009) (quoting *Summers*, 129 S. Ct. at 1149), *cert. denied,* 130 S. Ct. 1890 (Mar. 22, 2010); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (explaining that Article III's standing requirement demands that each plaintiff "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant") (citations and quotations omitted).

The Ninth Circuit recently affirmed dismissal in a case similar to this one because the plaintiff had failed to satisfy the injury-in-fact requirement. In *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), consumers brought a class action lawsuit alleging that Apple's iPod was defective because it poses an unreasonable risk of hearing loss to users. *Id.* at 956. The Ninth Circuit affirmed dismissal of plaintiffs' claims under the UCL because Plaintiffs failed to "allege[] the requisite injury in fact to have standing." *Id.* at 960. Specifically, the court concluded that plaintiffs had not alleged a physical injury to themselves, that any alleged injury was purely hypothetical, and that the alleged economic harm did not constitute injury in fact. *Id.* at 960-62. The court explained:

> The plaintiffs do not claim that they suffered or immediately will suffer hearing loss from their iPod use. The plaintiffs do not even claim that they used their iPods in a way that exposed them to the alleged risk of hearing loss. At most, the plaintiffs plead a potential risk of hearing loss not to themselves, but to other unidentified iPod users . . . . The risk of injury the plaintiffs allege is not concrete and particularized as to themselves.

*Id.* at 960 (citations and emphasis omitted). *See also Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (finding no injury-in-fact to create standing where plaintiff claimed that she "would like her money back" for having purchased a product that failed to make certain disclosures and was allegedly defective).

Similarly, in *Koronthaly v. L'Oreal USA, Inc.*, No. 08-4625, 2010 WL 1169958 (3d Cir. March 26, 2010), the Third Circuit affirmed dismissal of claims factually analogous to those in this case. Plaintiff filed a purported class action, alleging that she was "misled into purchasing unsafe lipstick products," despite the fact that the FDA had determined that "the lead levels in the [d]efendants' lipsticks were not dangerous and therefore did not require warnings." *Id.* at *2. The Third Circuit affirmed dismissal of the case, concluding that Plaintiff "has asserted only a subjective

allegation that the trace amounts of lead in lipsticks are unacceptable to her, not an injury-in-fact sufficient to confer Article III standing." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)) (additional citations omitted).

Additionally, in *Wright v. General Mills, Inc.*, No. 08cv1532, 2009 WL 3247148, at *6 (S.D. Cal. Sept. 30, 2009), another case of purported misrepresentations on food packaging, the court held that the allegations of injury-in-fact were insufficient.  In that case, plaintiff sued General Mills for advertising "Nature Valley" products as "100% natural" even though the products contained high fructose corn syrup.  But like Plaintiffs here, the plaintiff in *Wright* merely asserted conclusory allegations that "[a]s a direct result of its misleading, deceptive, untrue advertising and its unlawful, unfair and fraudulent business practices . . . Defendant caused Plaintiff and other members of the Class to purchase, purchase more of, or pay more for, these Nature Valley products." *Id.* at *5 (quotations omitted).  The *Wright* court found that these assertions fell far short of the requirements for alleging injury-in-fact. *Id.*

As in *Birdsong*, *Koronthaly* and *Wright*, Plaintiffs here fail to allege the requisite injury. Plaintiffs allege they were mislead because Quaker did not disclose trace amounts of TFAs -- amounts so small the FDA <u>requires</u> they be declared as 0 gram on the Nutrition Facts box.  But Plaintiffs do not allege any injury or even risk of injury based on the amount of TFAs consumed -- the Complaint merely discusses the purported general dangers of TFAs and generically asserts that "[a]bsent these material deceptions . . . Plaintiffs . . . would not have purchased these Quaker products." Compl. ¶ 66.  But this bare allegation does not explain how Plaintiffs suffered any concrete injury-in-fact from purchasing Quaker's products as a result of the alleged "misrepresentations."  Plaintiffs do not allege that they or any other member of the class has actually been personally injured.  Nor do they allege they did not get what they paid for or any other valid theory of economic injury.  Accordingly, Plaintiffs fail to satisfy the Article III standing requirements, and this case should be dismissed.

### F.    Plaintiffs Have Not Pled Their Claims with the Requisite Particularity

It is well-established that claims sounding in fraud under the UCL, FAL, and CLRA must be plead with particularity. *Kearns*, 567 F.3d at 1124 (holding claims under CLRA and UCL failed to

18

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 5:10-CV-00502-RS

satisfy Rule 9(b)); *Wright*, 2009 WL 3247148, at *6 (applying Rule 9(b) particularity requirement

to CLRA and UCL claims); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1005 (N.D. Cal.

2009) (dismissing CLRA, FAL, and UCL claims that failed to meet the Rule 9(b) standard).  This

same standard applies to allegations of omissions.  *Kearns*, 567 F.3d at 1126-27.  ". . . Rule 9(b)

applies not only to claims in which fraud is an essential element, but also to claims grounded in

allegations of fraudulent conduct."  *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1102 (N.D. Cal.

2007) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)).  "Rule 9(b)

demands that the circumstances constituting the alleged fraud be specific enough to give defendants

notice of the particular misconduct . . . .   Averments of fraud must be accompanied by the who,

what, when, where, and how of the misconduct charged."  *Kearns*, 567 F. 3d at 1124 (citations and

quotations omitted).

Here, Plaintiffs' Complaint does not come close to meeting this standard.  Plaintiffs do not

allege the specific misrepresentations that each Plaintiff allegedly saw, nor in what way they relied

upon the information.[7]  Plaintiffs assert, without explanation, that "[a]bsent these material

deceptions, misstatements, and omissions, Plaintiffs and other Class members would not have

purchased these Quaker products."  Compl. ¶ 66.  But Plaintiffs say nothing about the specific

products they purchased or when they purchased them; what representations they allegedly read,

heard, and saw; or what misstatements they purportedly relied upon in making their purchasing

decisions.

These bare allegations are indistinguishable from those in *Wright v. General Mills*, 2009 WL

3247148, where the complaint asserted that "[a]s a direct result of its misleading, deceptive, untrue

advertising and its unlawful, unfair and fraudulent business practices . . .  Defendant caused Plaintiff

and other members of the Class to purchase, purchase more of, or pay more for, these Nature Valley

products."  *Id.* at *5 (quotations omitted).  The *Wright* court found that these allegations failed to

---

[7] Plaintiffs are required to plead reliance on the purported misrepresentations.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) ("Therefore, we conclude that this language imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong.").

1  satisfy the pleading standard of *Twombly* or *Iqbal*, or Rule 9(b).  *Id.* at *6.

2         To the extent the Complaint attempts to plead an omission of fact, that claim similarly fails.

3  To be actionable, an "omission must be contrary to a representation actually made by the defendant,

4  or an omission of fact the defendant was obliged to disclose."  *Daugherty v. Am. Honda Motor Co.*,

5  *Inc.*, 144 Cal. App. 4th 824, 835 (2006); *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007

6  WL 2994812, at *8 (N.D. Cal. July 27, 2007) (applying *Daugherty* and dismissing CLRA and UCL

7  claims ).  Here, the Complaint is devoid of any explanation as to what actionable "omission" was

8  made by Quaker.  In fact, the Complaint makes clear there was no such omission.  Plaintiffs allege

9  that "[b]oth Quaker Granola Bar products . . . contain partially hydrogenated oil, a form of artificial

10  trans fat." Compl. ¶ 56.  But the Complaint does not allege that Quaker in any way concealed that

11  the products contained hydrogenated oils.  Plaintiffs' only allegation of omission -- that the "actual

12  content of trans fat per serving is not '0g' and is deceptively omitted," Compl. ¶ 57 -- is premised

13  on requiring Quaker to disclose information that in fact contradicts what the FDA requires be

14  disclosed.  *See supra* pp. 6-8.  Plaintiffs plead no facts suggesting that Quaker had an affirmative

15  obligation to disclose trace amounts of TFAs, below the 0.5 gram threshold, that the FDA does not

16  even consider to be significant.  *Id.*

17         In short, Plaintiffs fail to plead fraud or misrepresentation with sufficient particularity and

18  their claims should be dismissed.[8]

19         **G.      Plaintiffs' Conclusory Allegations  of Misrepresentation Do Not Satisfy the**
20                 ***Twombly* or *Iqbal* Standards**

21         To support a claim for relief, the Complaint's factual allegations must, stripped of

22  unsupported legal conclusions, do more than "create[] a suspicion of a legally cognizable right of

23  action"; they must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555

24  (quotations, citations, and alternations omitted); *Iqbal*, 129 S. Ct. at 149-50.

25         Here, Plaintiffs allege that while the statements  "wholesome," a "good source of calcium

26

27  ───────────────────
   [8] Because Plaintiffs fail to plead fraud or misrepresentation with particularity, their assertion that the
28  statute of limitations should be tolled because "Quaker actively and purposefully concealed the truth
   regarding its products," Compl. ¶ 72, similarly fails.

and fiber," "made with whole grain oats," "no high fructose corn syrup," and "smart choices made easy" are "possibly true," they are misleading because they "imply that Quaker Chewy granola bars are healthy despite that they [sic] contain artificial trans fat." Compl. ¶ 58. Likewise, Plaintiffs allege that "images of oats, nuts, and children in soccer uniforms" have "[t]he obvious implication that Quaker Chewy granola bars are . . . part of a healthy lifestyle," but the products contain TFAs "which renders them unfit for human consumption." *Id.* ¶ 59. But this argument is nonsensical -- Plaintiffs never explain how trace amount of TFAs makes these statements or images "misleading." This conclusory allegation does not satisfy the requirements of *Twombly* and *Iqbal*.

Judge Ware recently dismissed with prejudice a parallel case involving similar allegations about another food manufacturer's products for failure to meet the pleading standard. Like the Complaint here, plaintiff's assertion that "the inclusion of partially hydrogenated oil in the blend makes the 'nutritious' representations false and misleading" was premised on an number of logical fallacies and did not meet the pleading standard set forth in *Twombly* and *Iqbal*. *See* Order Granting Defendant's Motion to Dismiss with Prejudice (May 3, 2010), pgs. 6-9 in *Rosen v. Unilever United States, Inc.*, No. C 09-02563 JW, Doc. # 57, 2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010). Here, Plaintiffs do not allege why the existence of trace amounts of TFAs renders true statements like "wholesome," a "good source of calcium and fiber," "made with whole grain oats," "no high fructose corn syrup," and "smart choices made easy," or the images of "oats, nuts, and children in soccer uniforms" misleading. Plaintiffs' strained theory appears to be that any statement or image about the ingredients or content of a product becomes "misleading" -- even if true -- simply because the product might contain some additional ingredients that are purportedly unhealthy, even where the FDA has not imposed restrictions on such claims based on these ingredients.[9] Such illogical conclusory allegations fail to state a claim.

### H.   Quaker's Product Statements Are True or Non-Actionable Puffery

The Complaint also fails on its face because Plaintiffs' claims are either true or non-actionable puffery. In fact, Plaintiffs acknowledge that all of the purported misrepresentations, with

---

[9] In fact, the FDA's definition of the term "healthy" does not include any criteria tied to the level of TFAs. *See* 21 C.F.R. § 101.65.

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 5:10-CV-00502-RS

the exception of "0g Trans Fat," are "possibly true."  Compl. ¶ 58.

*"0g Trans Fat"*:  As outlined above, this statement is true because the FDA requires that trace amounts of TFAs be declared as zero.  *See* 21 C.F.R. § 101.9(c)(2)(ii).  Plaintiffs do not allege that Quaker failed to comply with FDA regulations.  Plaintiffs' position that the statement is untrue or misleading directly conflicts with the FDA's mandate that trace amounts of TFAs, which the FDA does not consider to be significant, be declared as 0 grams.  *See supra* pp. 6-8.

*"Wholesome"*:  This statement is non-actionable puffery, and in the alterative true.  "Puffery" is "sales talk," statements that no one could reasonably rely upon or mistake for claims of act.  *See Cook, Perkins & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (explaining puffing as "outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance" and "claims which are vague or highly subjective") (citations, quotations, and alterations omitted); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) ("Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable.").  Here, the statement "wholesome" is so general and vague that no reasonable consumer could reasonably claim to have been mislead.  In fact, courts have found similar statements to be "puffery."  *See, e.g., Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126, at *2, *8 (N.D. Ill. July 1, 1999) (finding statement "most **wholesome** nutritious safe foods you can buy anywhere in the world" was puffery) (emphasis added).  Moreover, Plaintiffs fail to allege any concrete reason -- beyond mere speculation -- as to why the statement "wholesome" is false or misleading.  Plaintiffs' only argument is that  "wholesome," "though possibly true," Compl. ¶ 58, is misleading because of the existence of trace amounts of  TFAs.  But no reasonable consumer would be misled into thinking the mere use of the word "wholesome" means the product does not even contain trace amounts of TFAs.

*"Good source of calcium and fiber"*:  As outlined above, these statements are specifically defined by FDA regulations.  *See* 21 C.F.R. § 101.54(c),(d) & discussion *supra* p. 11.  Plaintiffs do not, nor can they in good faith, plead that Quaker did not comply with these regulations.  Because Quaker complied with the regulations defining these terms, there is no question that the statements

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 5:10-CV-00502-RS

1  are true.  Had FDA wanted to make an exception for "good source" claims where a product contains
2  trace amount of TFAs, it could have done so.  But it did not.

3  **"Made with whole grain oats"** and **"No high fructose corn syrup"**:  This is true.  Plaintiffs
4  do not allege that these straightforward statements about the ingredients of the products are false.
5  Rather, Plaintiffs assert that the statements are misleading because they "imply that Quaker Chewy
6  granola bars are healthy despite that they [sic] contain artificial trans fat."  Compl. ¶ 58.  Plaintiffs'
7  logic defies reason, and is precisely the type of speculative allegation the Supreme Court has held
8  insufficient to state a claim.  *See Twombly*, 550 U.S. at 555.  These statements simply recite the
9  ingredients of the products.  Under Plaintiffs' theory, any statement about the level of an ingredient
10  becomes "misleading" -- even if true -- simply because the product might contain some additional
11  attribute that Plaintiffs deem unhealthy, <u>even if</u> the FDA has not imposed restrictions on such
12  statements based on that attribute.

13  **Smart Choices Made Easy**:  This is true, or in the alternative non-actionable puffery.  There
14  is no allegation that Quaker's statement "smart choices made easy" is in any way <u>untrue</u>.  To the
15  extent that Plaintiffs argue "smart choices made easy" is misleading because it "impl[ies] [the
16  products] are healthy," Compl. ¶ 58, though they contain trace amounts of TFAs that FDA requires
17  be declared as "0 grams," that generalized statement about the product is no more misleading than
18  "wholesome" and is, at most, non-actionable puffery.  *See Cook,* 911 F.2d at 246; *Anunziato*, 402
19  F. Supp. 2d at 1139; *Tylka*, 1999 WL 495126, at *2, *8.

20  **Images of Oats, Nuts, and Children in Soccer Uniforms**:  Again, Plaintiffs do not allege
21  that anything about these images is untrue -- e.g., that the products do not contain oats and nuts.
22  Rather, Plaintiffs' claim is that the "obvious implication" is that the products are "part of a healthy
23  lifestyle" and that cannot be true because of the existence of trace amounts of TFAs.  Compl. ¶ 59.
24  Under Plaintiffs' strained theory, virtually all, if not all, product images -- even of ingredients that
25  are in fact in the product -- would become "misleading" by virtue of the existence of trace TFAs, or
26  for that matter any attribute that Plaintiffs deem unhealthy.

27  **I.      Plaintiffs' Lanham Act Claim Is Barred**
28  Plaintiffs' claim under the Lanham Act (First Cause of Action) is barred for the additional

1    reason that it is black letter law that consumers do not have standing to allege Lanham Act false

2    advertising claims.  Plaintiffs allege that Quaker made "false or misleading statements of fact

3    regarding the[] [products'] contents" in violation of the Lanham Act, 15 U.S.C. § 1125 *et seq.*

4    Compl. ¶ 74.[10]  However, the Ninth Circuit has repeatedly held that to have standing to sue under

5    the Lanham Act's false advertising provisions, the plaintiff must be a competitor of the defendant.

6    *See Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.,* 407 F.3d 1027, 1037 (9th Cir.

7    2005) (holding plaintiff must demonstrate "(1) a commercial injury based upon a misrepresentation

8    about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to

9    compete with the defendant"); *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995) (affirming

10   dismissal of Lanham Act false advertising claim on standing grounds because plaintiffs, "[a]s

11   consumers, . . . have alleged neither commercial injury nor competitive injury").

12           Accordingly, numerous district courts have held that consumers, like the Plaintiffs in this

13   case, do not have standing to bring Lanham Act false adverting claims.  *See, e.g., Brosnan v.*

14   *Florida*, No. C09-227 BZ, 2009 WL 1764535, at * 1 n.4 (N.D. Cal. June 22, 2009) (holding that

15   "[t]o the extent that plaintiff intends to assert a false advertising claim under the Lanham Act, that

16   claim is dismissed . . . [because] plaintiff does not allege that he commercially competes with any of

17   the defendants such that he has standing to sue for any false representations"); *Von Grabe v. Sprint*

18   *PCS*, 312 F. Supp. 2d 1285, 1302 (S.D. Cal. 2003) (dismissing Lanham Act false advertising claim

19   because "consumers do not meet the standing requirement for the Lanham Act") (citing *Barrus*, 55

20   F.2d at 470).  Thus, there is no question that Plaintiffs' Lanham Act claim fails.

21   **VI.    CONCLUSION**

22           For the above stated reasons, the Court should dismiss the Complaint with prejudice.

23   Dated:  May 27, 2010                         ARNOLD & PORTER LLP

24                                                By:  /s/ Angel A. Garganta
                                                     _____
25                                                    Angel A. Garganta
                                                     Attorneys for Defendant
26   _____

27   [10] While the Plaintiffs do not cite a specific section, the allegations appear to be brought under the
     false advertising prong of the Lanham Act.  *See* 15 U.S.C. § 1125(a)(1)(B).  There are no
28   allegations of violation of the "false association" prong.  *Id.* § 1125(a)(1)(A).

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 5:10-CV-00502-RS