ARNOLD & PORTER LLP
TRENTON H. NORRIS (SBN 164781)
ANGEL A. GARGANTA (SBN 163957)
RACHEL L. CHANIN (SBN 229253)
KEVIN M. BOVARD (SBN 247521)
One Embarcadero Center, 22nd Floor
San Francisco, California  94111
Telephone:  415.356.3000
Facsimile:  415.356.3099
E-Mail:  trent.norris@aporter.com
          angel.garganta@aporter.com
          rachel.chanin@aporter.com
          kevin.bovard@aporter.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT CHACANACA and VICTOR GUTTMANN, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> THE QUAKER OATS COMPANY, <br><br> Defendant. | Case No.: 5:10-CV-00502-RS <br><br> **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Hearing Date: July 15, 2010 <br> Time: 1:30 p.m. <br> Place:  Courtroom 3, 17th Floor <br> Judge:   Honorable Richard Seeborg <br> Action Filed: February 3, 2010 |

1

**TABLE OF CONTENTS**

2

3
Page

4   I.      INTRODUCTION ....................................................................................................1

5   II.     ARGUMENT ..........................................................................................................2

6           A.      Plaintiffs' Claims Are Expressly Preempted, and Plaintiffs Have Not
                    Made (and Cannot Make) Any Argument Demonstrating That They Are
7                   Not........................................................................................................................2

8                   1.      The *Trans* Fat Statement Is Expressly Permitted..............................2

9                   2.      Plaintiffs Cannot Change the Fact that this is a Cut-and-Dried Case
                            of Express Preemption by Citing Inapposite Cases and Ignoring the
10                          Actual Language of Federal Law ......................................................3

11          B.      Primary Jurisdiction and Abstention Principles Preclude Plaintiffs'
                    Claims. .................................................................................................................7
12
                    1.      Plaintiffs Have Not Demonstrated Why Their Attempt to Create
13                          New Standards and to Modify Current Nutrient Content Claim
                            Definitions Are Not Topics Better Left to the FDA. ..........................7
14
15                  2.      Quaker Has Demonstrated Why this Court Should Abstain from
                            Adjudicating Plaintiffs' Claims........................................................9

16          C.      *Cel-Tech's* Safe Harbor Bars Plaintiffs' UCL and FAL Claims..................9

17          D.      Plaintiffs Fail to Allege the Requisite Injury-in-Fact for Standing...........10

18          E.      Plaintiffs' Claims Are Barred by Rule 9 .....................................................11

19          F.      Plaintiffs' Conclusory Allegations Do Not Satisfy *Twombly* or *Iqbal*
                    Standards...........................................................................................................12
20
21          G.      Quaker's Product Statements Are True or Non-Actionable Puffery. ........13

22          H.      Plaintiffs' Lanham Act Claim Is Barred .....................................................15

    III.    CONCLUSION.....................................................................................................15

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 5:10-CV-00502-RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Altria Group, Inc. v. Good*,
   129 S. Ct. 538 (2008) .......................................................................................4

*Alvarez v. Chevron Corp.*,
   2009 U.S. Dist. LEXIS 94377 (C.D. Cal. Sept. 30, 2009).................................10

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ...................................................................1, 2, 12, 13

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005)....................................................................................3, 4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 554 (2007)..............................................................1, 2, 12, 13

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009)...........................................................................11

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
   2009 U.S. Dist. LEXIS 104451 (W.D. Mo. Nov. 9, 2009)...................................9

*Cipollone v. Liggett Group, Inc.*,
   505 U.S. 504 (1992)..........................................................................................3

*County of Santa Clara v. Astra USA, Inc*,
   588 F.3d 1237 (9th Cir. 2009)....................................................................7, 8

*Davel Commc'n, Inc. v. Qwest Corp.*,
   460 F.3d 1075 (9th Cir. 2006)...........................................................................8

*Freightliner Corp. v. Myrick*,
   514 U.S. 280 (1995)..........................................................................................7

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*,
   407 F.3d 1027 (9th Cir. 2005)........................................................................15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009).........................................................................12

*Koronthaly v. L'Oreal USA, Inc.*,
   2010 WL 1169958 (3d Cir. Mar. 26, 2010) ......................................................11

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 5:10-CV-00502-RS

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005)..................................................................11

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)......................................................................................4

*Nader v. Allegheny Airlines, Inc.*,
    426 U.S. 290 (1976)......................................................................................8

*Newcal Indus. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008).........................................................................14

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
    642 F. Supp. 2d 1112 (C.D. Cal. 2009)...............................................................8

*Reyes v. McDonald's Corp.*,
    2006 U.S. Dist. LEXIS 81684 (N.D. Ill. Nov. 8, 2006)............................................5

*Rivera v. Wyeth-Ayerst Labs.*,
    283 F.3d 315 (5th Cir. 2002)....................................................................10, 11

*Rosen v. Unilever United States, Inc.*,
    2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010) ..........................................12

*Rubio v. Capital One Bank (USA), N.A.*,
    572 F. Supp. 2d 1157 (C.D. Cal. 2008)...............................................................10

*Ryan v. Chemlawn Corp.*,
    935 F.2d 129 (7th Cir. 1991).............................................................................9

*Summers v. Earth Island Inst.*,
    129 S. Ct. 1142 (2009)...................................................................................10

*Suzuki v. Hitachi Global Storage Tech.*,
    2007 WL 2070263 (N.D. Cal. July 17, 2007)......................................................10

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
    307 F.3d 775 (9th Cir. 2002)............................................................................7

*TrafficSchool.com, Inc. v. Edriver, Inc.*,
    633 F. Supp. 2d 1063 (C.D. Cal. 2008)...............................................................15

*Vermont Pure Holdings, Ltd. v. Nestle Waters N. Am, Inc.*,
    2006 U.S. Dist. LEXIS 13683 (D. Mass. Mar. 28, 2006) ........................................5

*Von Koenig v. Snapple Beverage Corp.*,
    2010 WL 1980208 (E.D. Cal. May 10, 2010)................................................10, 11

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)...................................................................6, 13, 14

*Wright v. Gen'l Mills, Inc.*,
2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ......................................................... 8

*Wyeth v. Levine*,
129 S. Ct. 1187 (2009) ............................................................................................. 4

*Yumul v. Smart Balance, Inc.*,
Case No. CV 10-00927 (C.D. Cal. May 24, 2010) ........................................... 12, 13

**STATE CASES**

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ...................................................................................... 2, 9, 10

*Center for Biological Diversity, Inc. v. FPL Group, Inc.*,
166 Cal. App. 4th 1349 (2008) .................................................................................. 9

*Desert Healthcare v. PacfiCare, FHP, Inc.*,
94 Cal. App. 4th 781 (2001) ..................................................................................... 9

*Farokhzadeh v. Too Faced Cosmetics, Inc.*,
2010 WL 1645817 (Cal. Ct. App. April 26, 2010) (UNPUBLISHED) ................ 11

*Gatherer v. Purdue Pharma L.P.*,
2002 WL 32144622 (Cal. Super. Dec. 13, 2002) ...................................................... 9

*Gregory v. Albertson's, Inc.*,
104 Cal. App. 4th 845 (2002) .................................................................................. 10

*Morgan v. AT & T Wireless Servs., Inc.*,
177 Cal. App. 4th 1235 (2009) ................................................................................ 13

*Smith v. State Farm Mut. Auto Ins. Co.*,
93 Cal. App. 4th 700 (2001) .................................................................................... 10

**STATUTES AND RULES**

15 U.S.C. § 1116 ............................................................................................................... 15

15 U.S.C. § 1118 ............................................................................................................... 15

15 U.S.C. § 1125 *et seq.* .................................................................................................. 15

21 U.S.C. § 343-1(a)(5) ................................................................................................. 2, 3

21 U.S.C. § 343(r) ............................................................................................................. 8

Fed. R. Civ. P. 9 ........................................................................................................... 2, 12

N.D. Cal. Local Rule 3-4(e) ............................................................................................ 11

**REGULATIONS**

21 C.F.R. § 100.1 ................................................................................................................... 3

21 C.F.R. § 101.9(c) ................................................................................................... 2, 5, 7, 13

21 C.F.R. § 101.9(f) ............................................................................................................... 5

21 C.F.R. § 101.13(c) ............................................................................................................. 6

21 C.F.R. § 101.13(i) ................................................................................................... 2, 5, 6, 7, 13

21 C.F.R. § 101.54(c) ................................................................................................... 1, 3, 6, 7

21 C.F.R. § 101.54(d) ........................................................................................................ 6, 7

21 C.F.R. § 101.62(b) ............................................................................................................ 7

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 5:10-CV-00502-RS

## I.  INTRODUCTION

Despite its many pages, nothing in Plaintiffs' opposition changes the fact that the primary statement at issue in this case, "0g Trans Fat," is <u>explicitly defined and regulated</u> by the Federal Food, Drug and Cosmetics Act ("FFDCA"), the Nutrition Labeling and Education Act ("NLEA") and implementing regulations.  These comprehensive laws permit the statement as a result of extensive, science-based consideration by the Food and Drug Administration ("FDA").  Plaintiffs' complaint boils down to an attempt to require something different from what the federal law permits by holding The Quaker Oats Company ("Quaker") liable for complying with federal law, but such claims are precluded by the express preemption provisions of the NLEA.

None of the cases or arguments in opposition change this.  Indeed, none of the cases Plaintiffs cite involved a situation in which plaintiffs were permitted to pursue claims based on statements that were expressly regulated and preempted by federal laws.  Instead, Plaintiffs cite a hodgepodge of cases concerning state claims or requirements that involved representations that were outside the scope of what was addressed by applicable federal statutes, arose in contexts where express preemption did not apply, or did not concern labeling or preemption issues at all.

Plaintiffs' remaining allegations merely piggy-back on the flawed "0g Trans Fat" allegation.  Plaintiffs acknowledge that the statements "wholesome," "good source of calcium and fiber," "made with whole grain oats," "no high fructose corn syrup," and "smart choices made easy" are "possibly true," but suggest they are "deceptive in intent and nature . . . [because] they imply that Quaker Chewy granola bars are healthy despite that they contain artificial trans fat."  Compl. ¶ 58.  Likewise, Plaintiffs challenge "images of oats, nuts, and children in soccer uniforms" because "[t]he obvious implication" is the products are "part of healthy lifestyle" when "[i]n fact . . . [they] contain artificial trans fat."  *Id.* ¶ 59.  Such conclusory allegations fail to satisfy the pleading requirements of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007).  It defies logic that these statements and images are misleading because the products contain trace amounts of *trans* fat that the FDA <u>requires</u> be declared as "0g."  Plaintiffs also ignore the fact that "good source" statements are specifically defined by the FDA, 21 C.F.R. § 101.54(c)-(d) (2010), and they do not allege Quaker's products failed to adhere to this definition.

1    Plaintiffs' opposition similarly mischaracterizes the law applicable to the issues of primary

2  jurisdiction, abstention, *Cel-Tech* safe harbor, standing, Federal Rule of Civil Procedure 9 pleading

3  requirements, *Iqbal* and *Twombly* pleading standards, truth and non-actionable puffery, and the

4  Lanham Act.  This Court therefore should grant Quaker's motion for judgment on the pleadings.

5  **II.    ARGUMENT**

6    **A.    Plaintiffs' Claims Are Expressly Preempted, and Plaintiffs Have Not Made (and**
   **Cannot Make) Any Argument Demonstrating That They Are Not.**

7

8      **1.    The *Trans* Fat Statement Is Expressly Permitted.**

9    **"*0g Trans Fat*":**  The FDA regulations regarding disclosure of *trans* fat are clear.  *See*

10  Quaker's Mem. ISO Def.'s Mot. for Judg. on Pleadings ("Opening Br.") at 6-9.  For products

11  meeting certain specifications and where the amount of *trans* fat is "less than 0.5 gram" (as is not

12  disputed here), the *trans* fat content "shall be expressed as zero" on the "Nutrition Facts" portion of

13  the packaging.  21 C.F.R. § 101.9(c)(2)(ii) (2010) (emphasis added).  The regulations also directly

14  provide that this same nutrient content information can be repeated outside the Nutrition Facts box.

15  21 C.F.R. § 101.13(i)(3) (2010).  Thus, information required to be disclosed inside the Nutrition

16  Box, such as the amount of fat, or a content of "0g Trans Fat," absolutely can be restated elsewhere

17  on the label.  Indeed, the regulations use the very type of statement at issue here as an example of

18  permissible outside-the-Nutrition Box phrases.  *Id.* ("[T]he label or labeling of a product may

19  contain a statement about the amount or percentage of a nutrient if . . .  The statement does not in

20  any way implicitly characterize the level of the nutrient in the food and it is not false or misleading

21  in any respect (e.g., '100 calories' or **'5 grams of fat'**), in which case no disclaimer is required.")

22  (emphasis added).  Thus, the applicable federal regulations already give examples of nutrient

23  content statements that are not "false or misleading," and the "0g Trans Fat" statement is precisely

24  such a statement.

25    The federal labeling act not only permits the statements, it also expressly preempts

26  Plaintiffs' claims, which simply amount to an attempt to require something different on the label by

27  second-guessing the FDA's definitions and determinations.  21 U.S.C. § 343-1(a)(5)(2009) (states

28  are prohibited from making "any requirement respecting any claim . . . in the label or labeling of

2

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 5:10-CV-00502-RS

1    food that is <u>not identical</u> to the requirement of [the Act]") (emphasis added); Opening Br. at 9-10.

2           Plaintiffs' assertion that preemption does not apply to state-law civil claims that seek to hold

3    defendants liable despite compliance with the labeling law (as opposed to preempting only direct

4    state legislation) is without merit.  *See* Plaintiffs' Opp. to Quaker's Motion ("Opp'n") at 5 (arguing

5    that "California's consumer fraud laws cannot be preempted because they impose no 'requirement'

6    for nutrition labeling").  It is a familiar principle that claims under state laws in civil courts are

7    considered to seek to impose state "requirements" that are preempted when they fall within the

8    domain of regulatory conduct covered by a federal statute with an express preemption provision like

9    21 U.S.C. § 343-1(a)(5).  *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443 (2005)

10   (preemption provisions "may preempt judge-made rules, as well as statutes and regulations . . .");

11   *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992) ("The phrase '[n]o requirement or

12   prohibition' sweeps broadly and suggests no distinction between positive enactments and common

13   law . . . .").  There is no escaping the conclusion that Plaintiffs' claims, which seek to hold Quaker

14   liable for statements that are expressly permitted under the federal labeling act, are preempted.[1]

15          ***Other Statements Premised on Trans Fat*:**  There is no question the "good source of

16   calcium and fiber" claims are also preempted because "good source" is expressly defined by the

17   FDA, and Plaintiffs do not allege that Quaker does not comply with these regulations.  21 C.F.R.

18   § 101.54(c) ("The term[] 'good source' . . . may be used. . . provided that the food contains 10 to 19

19   percent of the RDI or DRV per reference amount customarily consumed . . . ."); *id.* § 101.54(d)

20   (additional requirements for fiber claims where a food is not "low" in total fat).

21                  **2.    Plaintiffs Cannot Change the Fact that this is a Cut-and-Dried Case of**
22                         **Express Preemption by Citing Inapposite Cases and Ignoring the Actual**
                          **Language of Federal Law.**

23          Faced with directly applicable federal law that permits the statements on Quaker's

24   packaging as neither false nor misleading and that preempts their claims, Plaintiffs attempt to

25   convince this Court otherwise by citing an array of cases that have nothing to do with this case.

26   _____

27   [1] Plaintiffs mistakenly argue that Quaker relies on 21 C.F.R. § 100.1 as grounds for federal
     preemption.  Opp'n at 5.  Plaintiffs misunderstand the role of § 100.1 in the preemption analysis to
28   be applied here.  This section simply helps define the term "not identical." Opening Br. at 7.

1    There simply is no precedent for Plaintiffs' attempt through civil litigation to re-write the federal

2    labeling laws.

3         For example, Plaintiffs rely heavily on *Altria Group, Inc. v. Good*, 129 S. Ct. 538 (2008).

4    Opp'n at 5.  However, in *Altria*, plaintiffs sought to hold the defendant liable -- not for statements

5    that the federal law at issue expressly permitted -- but for *other* statements.  There, the federal

6    labeling law at issue provided that certain warning statements were required on cigarette

7    packaging.  *Id.* at 543.  The plaintiffs' claims did not concern those warning statements, but

8    attacked the use of different terms, *e.g.*, "light," which were not discussed in the federal labeling

9    law.  *Id.* at 546.  That case thus is entirely different from this one, in which Plaintiffs seek to hold

10   Quaker liable for the statement, "0g Trans Fat," which is governed and permitted by federal law.

11        Similarly, in *Bates*, 544 U.S. 431, Opp'n at 7, the plaintiffs sought to hold the defendant

12   liable for a statement that the product was "recommended in all areas where peanuts are grown."

13   *Id.* at 435.  The defendant argued that the plaintiffs' claims were preempted by the Federal

14   Insecticide, Fungicide, and Rodenticide Act's (FIFRA's) express preemption clause.  *Id.* at 436.

15   Again, no federal regulation had expressly defined the circumstances in which the defendant was

16   permitted to use that particular phrase.  Not only is *Bates* factually distinguishable, but it

17   emphasizes the point that Plaintiffs' state law claims would be sustainable only if they sought to

18   impose requirements <u>equivalent to</u> the FDA's regulations and definitions of nutrient content claims,

19   which they do not.  *See id.* at 453 (to survive preemption, "a state-law labeling requirement [like the

20   plaintiffs' fraud and failure-to-warn claims] <u>must in fact be equivalent</u> to a requirement under

21   FIFRA" and "must also be measured against any relevant EPA regulations").  Other cases cited by

22   Plaintiffs are similarly distinguishable.  *See, e.g.*, *Wyeth v. Levine*, 129 S. Ct. 1187, 1200 (2009) (as

23   Plaintiffs acknowledge, "there was no applicable preemption clause in the FDCA concerning

24   prescription drugs," Opp'n at 6: "[D]espite its 1976 enactment of an express pre-emption provision

25   for medical devices, . . . Congress has not enacted such a provision for prescription drugs");

26   *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495-97, 501 (1996) (state law claims permissible because

27   they were "equal to or substantially identical to" the federal requirements at issue in that case).

28        The NLEA cases relied upon by Plaintiffs are similarly inapplicable, because none sought

1    recovery under standards directly contradictory to federal regulations.  In *Reyes v. McDonald's*

2    *Corp.*, Nos. 06C1604 and 06C2813, 2006 U.S. Dist. LEXIS 81684 (N.D. Ill. Nov. 8, 2006),

3    plaintiffs sought to hold the defendant accountable under *inter alia* Illinois state law based on

4    allegations that the defendant failed to comply with NLEA reporting regulations.  *Id.* at *1-*2.  The

5    court determined that the plaintiffs were <u>not</u> permitted to "proceed on any of the state law claims to

6    the extent they are based on nutrition corrections <u>that are preempted by the text</u>" of the federal

7    regulations.  *Id.* at *23 (emphasis added).  The court found that the plaintiffs were not permitted to

8    recover under "a broader definition of 'misbranding'" than that defined in the NLEA and only

9    permitted to pursue the consumer fraud cause of action to the extent it was "identical to the

10   requirements set forth in the NLEA."  *Id.* at 24.  *Reyes*, therefore, supports Quaker's position and

11   forbids Plaintiffs to recover under any theory that would impose different definitions of "0g Trans

12   Fat" than those in the labeling law.  *See also Vermont Pure Holdings, Ltd. v. Nestle Waters N. Am,*

13   *Inc.*, No. 03-11465-DPW, 2006 U.S. Dist. LEXIS 13683, at *20, *25, *30 (D. Mass. Mar. 28, 2006)

14   (finding no preemption because plaintiff did "not seek either to challenge or add to the FDA's

15   definition of 'spring water,'" and its claims regarding the defendant's statements about the quality

16   of its bottled water did "not arise out of a term that is specifically defined by the FDA").

17        Plaintiffs try to cobble together an argument that the statement "0g Trans Fat" somehow is

18   wrongful (and their claim not preempted) when it is on the *front* of a product's label.  Opp'n at 7-9.

19   Plaintiffs construct this argument, however, by ignoring the FDA regulations that expressly permit

20   the statement.  For products like the Quaker products at issue, the FDA regulations <u>require</u> that the

21   Nutrition Box state that the product contains "0 grams" trans fat.  *See* 21 C.F.R. § 101.9(c)(2)(ii).[2]

22   Section 101.13(i)(3) permits the same statement to be made elsewhere on the label: "[T]he label or

23   labeling of a product may contain a statement about the amount or percentage of a nutrient if: . . .

24

_____

25   [2] As outlined in Opening Brief at 7, the FDA defines an "insignificant amount" as "that amount that
     allows a declaration of zero." 21 C.F.R. § 101.9(f)(1).  And the FDA has determined that trans fat
26   amounts below 0.5 gram are <u>required</u> to be "expressed as zero." 21 C.F.R. § 101.9(c)(2)(ii).  Thus,
     contrary to Plaintiffs' suggestion, Opp'n at 7-8 n.4, the FDA has made an explicit determination
27   regarding what information regarding *trans* fat is sufficiently significant to require disclosure to
     consumers.
28

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 5:10-CV-00502-RS

The statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., **100 calories or 5 grams of fat**) . . . ." (emphasis added). Plaintiffs <u>ignore</u> this specific regulation -- in fact, although Plaintiffs acknowledge Quaker's citation to § 101.13(i)(3), they go on to quote a different provision regarding what constitutes a "nutrient content claim," 21 C.F.R. § 101.13(c). Opp'n at 8.[3] Plaintiffs' reliance on *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) misconstrues that case and Quaker's argument. Quaker is not arguing FDA regulation regarding disclosure of *trans* fat in the Nutrition Fact box "cures the false front-label statement." Opp'n at 9. Rather, Quaker's argument is that Plaintiffs' claims regarding the front-label statement "0g Trans Fat" is <u>specifically regulated</u> by the FDA and preempted. *Williams* was not a preemption case, *see* 552 F.3d at 937 (preemption arguments not considered), and contrary to Plaintiffs' mischaracterization, did not involve the Nutrition Facts box, *id.* at 939. Rather, in *Williams*, plaintiffs alleged misrepresentation based on packaging statements and images -- e.g., "'Fruit Juice' juxtaposed alongside images of fruits" -- that <u>contradicted</u> the ingredient list showing the product contained no fruit. *Id.* at 936, 939. In contrast, the statement "0g Trans Fat" is not only consistent with, but is <u>required</u> by the FDA for, the Nutrition Facts box. It is Plaintiffs, not Quaker, that seek to mandate a contradictory statement in this case.

With respect to the packaging statements other than "0g Trans Fat," Plaintiffs advance the nonsensical argument that "there is no preemption where the FDA does not regulate disqualifying trans fat criteria." Opp'n at 10. But the FDA has approved the use of the term "good source" without any "disqualifying trans fat criteria." 21 C.F.R. § 101.54(c).[4] Plaintiffs' argument boils

---

[3] Plaintiffs' citation to the *N.Y. State Restaurant Association* cases, Opp'n at 8, is irrelevant -- Plaintiffs ignore the specific <u>outside of the box</u> regulation that authorizes the statement at issue here. Plaintiffs' opposition also mischaracterizes the November 6, 2007 FDA Letter, discussed Opening Br. at 9. In that letter, the FDA raised concerns about differences between statements on the Nutrition Facts panel and elsewhere on the label. *See* Request for Judicial Notice ("RJN") Ex. D ("Your labeling is inconsistent in that the Nutrition Facts panel lists dietary fiber content per serving as 6 grams, but the claim 'Dietary Fiber (4g)' appears next to the Nutrition Facts panel.").

[4] The FDA <u>has</u> established disqualifying criteria for total fat for "good source fiber" claims, but chose not to include *trans* fat among them. *See* 21 C.F.R. § 101.54(d) ("If a nutrient content claim is made with respect to the level of dietary fiber, that is, that the product is . . . a good source of

(Footnote Cont'd on Following Page)

down to a claim that it does not like the FDA's definition.[5] But Plaintiffs' disagreement with that definition does not overcome the preemptive effect of federal law.

### B.     Primary Jurisdiction and Abstention Principles Preclude Plaintiffs' Claims.

Although the Court need not concern itself with primary jurisdiction or abstention because the claims at issue are preempted, if the claims are not found to be preempted, these doctrines should be invoked by the Court to dismiss Plaintiffs' claims.

### 1.     Plaintiffs Have Not Demonstrated Why Their Attempt to Create New Standards and to Modify Current Nutrient Content Claim Definitions Are Not Topics Better Left to the FDA.

Plaintiffs misapply the standard that courts use to determine whether to invoke the doctrine of primary jurisdiction.  The Ninth Circuit has articulated several factors in determining the application of the primary jurisdiction doctrine, including "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."  *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).  "'[P]rimary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'"  *County of Santa Clara v. Astra USA, Inc*, 588 F.3d 1237, 1251 (9th Cir. 2009).

This case satisfies each of these factors.  First, Plaintiffs seek to challenge the definitions of regulated nutrient content claims (for *trans* fat and "good source" claims).  They do so on the basis

---

(Footnote Cont'd From Previous Page)

fiber . . . and the food is not 'low' in fat as defined by § 101.62(b)(2) . . . then the label shall disclose the level of total fat per labeled serving.").

[5] *Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995), Opp'n at 10-11, is distinguishable. In *Freightliner*, the court held that because there were no active federal regulations with respect to stopping distances and vehicle stability requirements for trucks, the plaintiffs' state law claims for negligent design defects were not preempted.  *Id.* at 286.  Plaintiffs attempt to analogize to *Myrick* on the grounds that "the FDA's failure to establish disqualifying trans fat criteria" means that there is no federal regulations that would operate to preempt their claims.  Opp'n at 10-11.  This is patently incorrect; federal law includes extensive rules and definitions governing the nutrient content claims at issue here.  *See* 21 C.F.R. §§ 101.9(c), 101.13(i), and 101.54(c)-(d).

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 5:10-CV-00502-RS

of a variety of purported scientific evidence regarding the health effects of *trans* fats.  Compl. ¶¶ 16-55.  Second, the regulation of nutrient content claims like those challenged in the Complaint has been placed directly within the jurisdiction of the FDA.  *See* 21 U.S.C. § 343(r) and implementing regulations.  Third, the labeling of packaged food products is a field subject to the comprehensive regulatory authority of the FDA pursuant to the FFDCA and the NLEA.  And fourth, the implementing regulations of this labeling regime were the result of an extensive, science-based rulemaking process that considered the positions of a variety of stakeholders.  Any revisions to such regulations certainly require the FDA's expertise and authority to insure that any revisions are uniformly implemented.  The alternative would involve disparate definitions fashioned by the Plaintiffs in this case, and plaintiffs around the country.

Plaintiffs cite to *County of Santa Clara v. Astra*, 588 F.3d 1237, for the proposition that a court should decline to invoke the doctrine of primary jurisdiction where an action can "plausibly be adjudicated" without an agency's expertise.  Opp'n at 12.  But in *Astra*, the Ninth Circuit specifically invited the United States to submit a brief articulating the Secretary of Health and Human Services' "views on whether [the court] should invoke primary jurisdiction," and the Secretary "indicated that at least some possible disputes [in the case] could be resolved by the court without the DHHS's expertise."  *Id.* at 1252 and n.19.  That obviously has not happened here.  Moreover, *Davel Commc'n, Inc. v. Qwest Corp.*, 460 F.3d 1075 (9th Cir. 2006), also cited by Plaintiffs, in fact *applied* the primary jurisdiction doctrine in the context of a motion to dismiss, referring the case to an agency better equipped to address the dispute.  *Id.* at 1090.  Other cases cited are not similar to the issues raised here.  *See, e.g.*, *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 299 (1976) (primary jurisdiction inapplicable because court "not called upon to substitute its judgment for the agency's"); *Wright v. Gen'l Mills, Inc.*, No. 08cv1532 L(NLS), 2009 WL 3247148, at *3 (S.D. Cal. Sept. 30, 2009) (primary jurisdiction inapplicable because the FDA's policies with respect to the "use of the term 'natural'" were "unrestrictive"); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1123 (C.D. Cal. 2009) (primary jurisdiction inapplicable because FDA had not "taken any interest in investigating the claims or issues

presented" by case).[6]

###    2.    Quaker Has Demonstrated Why this Court Should Abstain from Adjudicating Plaintiffs' Claims.

Abstention is another tool that allows a court to decline to exercise jurisdiction where it would be entangled in areas subject to legislative or regulatory authority.  As a result of its discretionary nature, abstention is a doctrine that cuts across various statutory regimes and fields of regulation.  *Center for Biological Diversity, Inc. v. FPL Group, Inc.*, 166 Cal. App. 4th 1349 (2008); *Desert Healthcare v. PacfiCare, FHP, Inc.*, 94 Cal. App. 4th 781 (2001); and *Gatherer v. Purdue Pharma L.P.*, No. BC257852, 2002 WL 32144622 (Cal. Super. Dec. 13, 2002) are examples of the diverse settings in which courts have chosen to abstain.  Abstention is also appropriate where UCL claims, like Plaintiffs', would involve the court in fields better left to the expertise of legislators or regulators.  "It is well established that a court of equity will abstain from employing the remedies available under the unfair competition law in appropriate cases. . . . " *Ctr. for Biological Diversity*, 166 Cal. App. 4th at 1371 (citations, quotations, and brackets omitted). "Judicial abstention is appropriate when granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency." *Id.* at 1371-72 (quotations omitted).  Plaintiffs seek to have the Court supplant the FDA in the complex field of product nutritional labeling requirements, and therefore abstention is appropriate.

###    C.    *Cel-Tech's* Safe Harbor Bars Plaintiffs' UCL and FAL Claims.

If a legislative or regulatory body has permitted certain conduct, courts may not override that determination.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999).  Here, FDA has determined that the statement "0g Trans Fat" is not only accurate, but <u>required and permitted</u> when a product contains less than 0.5 gram *trans* fat.  Plaintiffs argue that the "safe harbor" doctrine "is limited to actions between competitors, and thus does not apply to

---

[6] Moreover, *Ryan v. Chemlawn Corp.*, 935 F.2d 129 (7th Cir. 1991) and *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, Case No. 08-1967-MD-W-ODS, 2009 U.S. Dist. LEXIS 104451 (W.D. Mo. Nov. 9, 2009) are distinguishable in that they apply a primary jurisdiction multi-factor analysis not used by the Ninth Circuit.

1    Plaintiffs' consumer claims."  Opp'n at 21 (citing *Smith v. State Farm Mut. Auto Ins. Co.*, 93 Cal.

2    App. 4th 700, 720 n.23 (2001)).  Plaintiffs mischaracterize a footnote in *Smith* that discusses

3    whether the definition of "unfair" should be applied outside of the competitor context, and <u>not</u>

4    whether the "safe harbor" doctrine applies to consumer claims.  *Id.*[7]  Plaintiffs cite no cases

5    supporting their assertion that the "safe harbor" doctrine does not apply to consumer claims, and

6    ignore the cases cited in Quaker's Opening Brief involving <u>consumer</u> class actions.  *See, e.g.*, *Rubio*

7    *v. Capital One Bank (USA), N.A.*, 572 F. Supp. 2d 1157, 1168-69 (C.D. Cal. 2008) (applying "safe

8    harbor" doctrine in class action by credit card holders); *Suzuki v. Hitachi Global Storage Tech.*, No.

9    C 06-07289 MHP, 2007 WL 2070263, at *4-5 (N.D. Cal. July 17, 2007) (applying "safe harbor"

10   doctrine in class action alleging use of a legislatively defined standard for a "gigabyte" overstated

11   useable storage).  Plaintiffs also assert "no legislature or regulatory agency has ever expressly

12   mandated--or even permitted--the conduct forming the basis of Plaintiffs' claims," Opp'n at 18,

13   despite the FDA's clear regulation of the phrase "0g Trans Fat."[8]  Plaintiffs cannot "assault th[e]

14   harbor" of FDA regulations through the "guise of the unfair competition law." *Cel-Tech*, 20 Cal. 4th

15   at 182, 183.

16       **D.      Plaintiffs Fail to Allege the Requisite Injury-in-Fact for Standing.**

17       Plaintiffs have not -- and cannot -- allege facts sufficient to satisfy the Article III standing

18   requirement, as their claims are entirely premised on speculative injury that is not concrete and

19   particularized.  *See Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009); Opening Br. at 16-

20   18.  Plaintiffs ignore most of the appellate court authority cited in Quaker's Opening Brief, which

21   found in cases similar to this one that plaintiffs failed to satisfy the injury-in-fact requirement.  *See*

22   *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (no injury-in-fact where plaintiff

23

24   ---

     [7]  Moreover, it is questionable whether *Smith's* limitation of *Cel-Tech's* definition of "unfair" is
25   good law.  *See, e.g.*, *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 n.3 (2002) ("In our
     reading of *Cel-Tech*, we differ somewhat from the interpretation in *Smith* . . . footnote 23 . . . .").

26   [8] *Von Koenig v. Snapple Beverage Corp.*, No. 09-cv-00606 FRC EFB, 2010 WL 1980208 (E.D.
     Cal. May 10, 2010) is distinguishable because there the FDA had not regulated the term "natural"
27   through a formal "rulemaking process."  *Id.* at * 7.  Plaintiffs' citation to *Alvarez v. Chevron Corp.*,
     No. CV 00-3343, 2009 U.S. Dist. LEXIS 94377, (C.D. Cal. Sept. 30, 2009) merely proves Quaker's
28   point.  *Id.* at *18 (applying "safe harbor" where defendants only acted as mandated by the law).

---

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 5:10-CV-00502-RS

1    claimed that she "would like her money back" for product that allegedly failed to make certain

2    disclosures and was defective); *Koronthaly v. L'Oreal USA, Inc.*, No. 08-4625, 2010 WL 1169958,

3    at *2 (3d Cir. Mar. 26, 2010) (no injury-in-fact where plaintiff alleged she was "misled into

4    purchasing unsafe lipstick products," even though FDA had determined that "the [trace] lead levels

5    in the [d]efendants' lipsticks were not dangerous and . . . did not require warnings").

6         The only case Plaintiffs even address is *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir.

7    2009). Opp'n at 19. Plaintiffs' attempt to argue that case supports their position fails. As in

8    *Birdsong*, the risk here is purely hypothetical -- Plaintiffs do not allege that *they* suffered any

9    concrete injury from the purported trace amounts of *trans* fat, amounts so small the FDA <u>requires</u>

10   that they be declared as 0 grams. *See supra* Section II(A)(1); *Birdsong*, 590 F.3d at 961. Nor do

11   Plaintiffs provide any support for the conclusory allegation that the economic value of the products

12   at issue were less than they paid. *See id.* at 961 ("[T]he alleged loss in value does not constitute a

13   distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk . . . .").

14        Hence, the Complaint is devoid of any allegation that Plaintiffs did not receive the benefit of

15   the bargain, paid more for Quaker's products due the alleged misrepresentations, or that they would

16   have purchased a similar product for less money. The cases cited by Plaintiffs are distinguishable.

17   *See Von Koenig*, 2010 WL 1980208, at *9 (plaintiffs alleged that "they would have purchased

18   alternative drink products" and that they "paid more for defendant's drink products and would have

19   been willing to pay less if they had not been misled"); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp.

20   2d 1181, 1194 (S.D. Cal. 2005) (plaintiffs alleged concrete injury that defendants illicitly shifted tax

21   burden to their customers, *i.e.*, plaintiffs paid too much tax); *Farokhzadeh v. Too Faced Cosmetics,*

22   *Inc.*, No. B213306, 2010 WL 1645817 (Cal. Ct. App. April 26, 2010) (UNPUBLISHED) (Plaintiffs

23   are prohibited from citing, *see* N.D. Cal. Local Rule 3-4(e))) (plaintiff in that case, unlike here,

24   "established an 'immediate' causal connection" between advertising and decision to buy).

25        As in *Birdsong*, *Rivera*, and *Koronthaly*, Plaintiffs do not explain how they suffered any

26   concrete injury from purchasing Quaker's products as a result of the alleged "misrepresentations."

27       **E.**    **Plaintiffs' Claims Are Barred by Rule 9.**

28       Because Plaintiffs' claims sound in fraud, they must be pled with particularity. "Averments

1    of fraud must be accompanied by the who, what, when, where and how of the misconduct charged."

2    *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citations and quotations omitted).

3    Because Plaintiffs fail to plead fraud with particularity, their assertion that the statute of limitations

4    should be tolled because "Quaker actively and purposefully concealed the truth," Compl. ¶ 72, also

5    fails.  *See Yumul v. Smart Balance, Inc.*, Case No. CV 10-00927 (C.D. Cal. May 24, 2010), p. 22

6    (granting motion to dismiss claims outside of statute of limitations for failure to allege facts

7    supporting tolling or fraudulent concealment).  Plaintiffs contend they have satisfied the

8    requirements of Federal Rule of Civil Procedure 9 because they "specify the exact wording of each

9    deceptive statement, include images of each claim on the product, and describe in detail why each

10   statement is deceptive."  Opp'n at 21.  These allegedly "deceptive statements" are in fact Quaker's

11   FDA-sanctioned statements regarding *trans* fat and "good source," and other statements, e.g., "no

12   high fructose corn syrup" that Plaintiffs acknowledge are "possibly true." Compl. ¶ 58.  Plaintiffs

13   nowhere specifically allege how they were defrauded by virtue of Quaker's statements, *i.e., what*

14   *specific representations each Plaintiff saw and allegedly relied upon in purchasing the products.*

15   At bottom, there simply is no particular allegation that explains the "who, what, when, where and

16   how" of the misconduct charged.  *See Kearns*, 567 F.3d at 1124; *Yumul v. Smart Balance*

17   (dismissing similar complaint by the same plaintiffs' counsel for failure to plead claims with

18   particularity).

19          **F.      Plaintiffs' Conclusory Allegations Do Not Satisfy *Twombly* or *Iqbal* Standards.**

20          A case should be dismissed where the complaint fails to state a "claim to relief that is

21   plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (quotations omitted).  The factual allegations must

22   "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (quotations and

23   citations omitted).  Here, Plaintiffs allege that statements it acknowledges are "possibly" true, e.g.,

24   "no high fructose corn syrup," and "images of oats, nuts, and children in soccer uniforms" are

25   somehow rendered deceptive because the products may contain trace amounts of *trans* fat.  Compl.

26   ¶¶ 58-59.  These conclusory allegations do not satisfy the requirements of *Twombly* and *Iqbal*.

27   Judge Ware recently dismissed with prejudice a parallel case involving similar allegations about

28   another food manufacturer's products for failure to meet the pleading standard.  *See Rosen v.*

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 5:10-CV-00502-RS

*Unilever United States, Inc.*, 2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010).  Contrary to Plaintiffs' suggestion, Opp'n at 21 n.12, Judge Ware did not apply the "incorrect standard, *i.e.*, not the reasonable consumer standard under *Williams*."  Judge Ware applied the black letter pleading standards set forth by the Supreme Court in *Twombly* and *Iqbal* to conclude plaintiffs had not set forth a plausible claim under any applicable standard.  Plaintiffs point to Judge Morrow's decision in *Yumul v. Smart Balance*.  Opp'n at 21.  But Plaintiff ignores the portion of *Yumul* where the court granted in part defendant's motion to dismiss.  *See supra* Sect. II(E).[9]  In this case, Plaintiffs' strained theory appears to be that any statement or image on a label becomes "misleading" -- even if true -- because the product might contain some additional attribute that Plaintiffs deem unhealthy, even if the FDA has not imposed restrictions on such statements based on that attribute.  Under such a theory, an enterprising plaintiff could claim virtually any statement about a product is deceptive.

### G.  Quaker's Product Statements Are True or Non-Actionable Puffery.

The challenged statements are true and not likely to deceive, or, in certain cases, non-actionable puffery.[10]  The Complaint fails to state a claim to the contrary.

*"0g Trans Fat"*:  This is true because the FDA requires that trace amounts of *trans* fat be declared as zero on the Nutrition Facts box, and expressly authorizes this statement to be repeated elsewhere on the product packaging.  21 C.F.R. § 101.9(c)(2)(ii), 101.13(i)(3); *supra* Sect. II(A)(1).

*"Wholesome"*:  Plaintiffs fail to allege how this statement is rendered untrue or deceptive

---

[9] Judge Morrow's denial of portions of the motion to dismiss is distinguishable.  *Yumul* involved quantities of *trans* fat, 1.5 grams, significantly above the trace amounts of *trans* fat the FDA requires be declared as zero.  *See Yumul* at 14.

[10] Contrary to Plaintiffs' suggestion, Opp'n at 25, Quaker never argued that the statements "good source of calcium and fiber," "made with whole grain oats," and "no high fructose corn syrup" were puffery.  Rather, these statements are true and not deceptive.  Opening Brief p. 22-23.  Plaintiffs argue that "the purported truth of a claim is not determinative of whether it is actionable."  Opp'n at 24.  While there may be some circumstances where a technically true statement is likely to mislead, Plaintiffs have not pled facts sufficient to support such allegations.  The cases cited by Plaintiffs involved circumstances where, unlike here, there were specific allegations as to why the representations were likely to deceive.  *See, e.g., Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1256 (2009) (alleging AT & T sold an expensive line of cell phones in conjunction with multi-year service plans knowing that they would be rendered "essentially useless" by network improvements).

13

1   because of trace *trans* fat the FDA requires be declared as "0g." This statement is also classic

2   puffery. As explained in *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir.

3   2008), Opp'n at 24, while "a statement that is quantifiable, that makes a claim to the specific or

4   absolute characteristics of a product may be an actionable statement . . . , a subjective claim about a

5   product is non-actionable puffery." *Id.* at 1053 (quotations omitted) (statement about copier

6   "flexibility" was "classic puffery"). Here, "wholesome" is a general statement about a product's

7   characteristics.[11]

8       ***"Good source of calcium and fiber"***: Plaintiffs ignore the fact "good source" claims are

9   specifically regulated by the FDA by lumping their arguments in opposition in with other

10  statements. Opp'n at 22. These claims are specifically defined by the FDA, *see supra* Section

11  II(A)(1), and Plaintiffs do not allege Quaker did not comply with these regulations.

12      ***"Made with whole grain oats"*** and ***"No high fructose corn syrup"***: There is no allegation

13  that these straightforward recitations of ingredients are deceptive. This case stands in sharp contrast

14  to *Williams*, 552 F.3d 934, where the allegation was the that misleading representations on the front

15  of the box contradicted the ingredient list. *See id.* at 939; *supra* Sect. II(A)(2).

16      ***Smart Choices Made Easy***: Plaintiffs' arguments in opposition run far afield of allegations

17  actually pled in the Complaint, and should not be considered on a motion for judgment on the

18  pleadings. Moreover, Plaintiffs' purported critique of the Smart Choice's program and other food

19  manufacturer's products, Opp'n at 23, proves nothing about whether the phrase is false or

20  misleading as to Quaker products at issue in this case. The only allegation in the Complaint is a

21  one-sentence assertion that "[t]hough possible true, these statements are deceptive . . . : they imply

22  that Quaker Chewy Granola bars are healthy despite that they contain artificial trans fat." Compl.

23  ¶ 58. In other words, Plaintiffs contend that the products are not a "smart choice" purely because

24

---

25  [11]  Plaintiffs again mischaracterize *Williams* -- in that case, the court held that the term "'nutritious,

26  were it standing on its own, could arguably constitute puffery, since nutritiousness could be difficult

27  to measure concretely." 552 F.3d at 939 n.3  It was only because of the entire context of the

28  packaging in that case, which as discussed above involved allegations the representations on the front of the package contradicted the ingredient list, *see supra* Section II(A)(2), that the court declined to dismiss that "nutritious" statement as puffery. *Id.*

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 5:10-CV-00502-RS

1   they contain a trace amount of *trans* fat that the FDA <u>requires</u> be declared as "0g."

2       ***Images of Oats, Nuts, and Children in Soccer Uniforms***:  Plaintiffs do not allege that

3   anything about these images is untrue or deceptive.  In opposition Plaintiffs assert the nonsensical

4   argument that "a reasonable consumer can easily obtain the minerals from healthier products."

5   Opp'n at 22.  Under Plaintiffs' theory, virtually all, if not all, images even of ingredients *that are in*

6   *fact in the product*, become "misleading" if a plaintiff believes there is a "healthier" alternative.

7       **H.**    **Plaintiffs' Lanham Act Claim Is Barred.**

8       It is black letter law that to have standing under the Lanham Act's false advertising

9   provisions, plaintiff must be a competitor of defendant.  *See Jack Russell Terrier Network of N. Cal.*

10   *v. Am. Kennel Club, Inc.,* 407 F.3d 1027, 1037 (9th Cir. 2005).

11       Plaintiffs argue that because they seek "only injunctive relief" their claims are "governed by

12   15 U.S.C. § 1116, not § 1125(a)(1)," Opp'n at 25, and suggest -- without citation to authority -- that

13   as a result they can circumvent the well-established standing requirements of the Lanham Act.

14   Plaintiffs mischaracterize their Complaint and the law.  Section 1116 is a <u>remedy provision</u> for

15   alleged violations of  Lanham Act Section 1125, and in no way circumvents the Lanham Act's well-

16   established standing requirements.  *See* Compl., First Cause of Action, p. 17 ("False Advertising

17   under the Lanham Act, 15 U.S.C. § 1125 *et seq.*"), ¶¶ 77-78 (seeking as remedy destruction of

18   advertising under 15 U.S.C. § 1118 and injunction under 15 U.S.C. § 1116).

19       Plaintiffs do not cite a single case for the proposition that a Lanham Act claim can be

20   brought by a non-competitor.  The only case they do cite -- *TrafficSchool.com, Inc. v. Edriver, Inc.*,

21   633 F. Supp. 2d 1063 (C.D. Cal. 2008) -- stands for precisely the opposite.  *Id.* at 1070 ("For a

22   plaintiff to have standing, the parties must be competitors . . . .") (citations and quotations omitted).

23   Accordingly, Plaintiffs' Lanham Act claims must be dismissed.

24   **III.**    **CONCLUSION**

25       For the above stated reasons, the Court should dismiss the Complaint with prejudice.

26   Dated:  July 1, 2010            ARNOLD & PORTER LLP

27                   By:  /s/ Angel A. Garganta
                      Angel A. Garganta

28                         Attorneys for Defendant