1  **ARNOLD & PORTER LLP**
   ANGEL A. GARGANTA (SBN 163957)
2  RACHEL L. CHANIN (SBN 229253)
   GEORGE F. LANGENDORF (SBN 255563)
3  One Embarcadero Center, 22nd Floor
   San Francisco, California  94111
4  Telephone:  415.356.3000
   Facsimile:  415.356.3099
5  E-Mail: angel.garganta@aporter.com
          rachel.chanin@aporter.com
6          george.langendorf@aporter.com

7  Attorneys for Defendant

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11               **SAN FRANCISCO DIVISION**

12

13

14  VICTOR GUTTMANN, KELLEY BRUNO,          Case No.: 5:10-CV-00502-RS
    SONYA YRENE, and REBECCA YUMUL,
15  on behalf of themselves and all others similarly
    situated,                                **NOTICE OF MOTION AND MOTION
16                                            AND MEMORANDUM OF POINTS AND
                    Plaintiffs,              AUTHORITIES IN SUPPORT OF
17                                            DEFENDANT'S MOTION TO DISMISS
            v.                               CONSOLIDATED COMPLAINT**
18
    THE QUAKER OATS COMPANY,                 Hearing Date:  September 29, 2011
19                                            Time:  1:30 p.m.
                    Defendant.               Place:  Courtroom 3, 17th Floor
20                                            Judge:  Honorable Richard Seeborg
                                             Action Filed:  February 3, 2010
21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT on September 29, 2011 at 1:30 p.m., in Courtroom 3, 17th

4

Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant The

5

Quaker Oats Company ("Quaker") will and hereby does move this Court to dismiss the

6

Consolidated Complaint filed against it on June 24, 2011.

7

Quaker seeks dismissal of the Consolidated Complaint without leave to amend, and entry of

8

judgment in favor of Quaker.  This motion is based on this Notice of Motion and Motion, the

9

attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice

10

("RJN"), the pleadings and papers on file herein, and such other matters as may be presented to the

11

Court at the time of the hearing.

12

Dated:  July 29, 2011                                   ARNOLD & PORTER LLP

13

14

By:   /s/ Angel A. Garganta

15

Angel A. Garganta
Attorneys for Defendant

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS CONSOLIDATED COMPLAINT, CASE NO. 5:10-CV-00502-RS

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...................................................................................................1

II.  STATEMENT OF THE ISSUES TO BE DECIDED.........................................2

III. FACTS ALLEGED BY PLAINTIFFS ...............................................................2

IV.  PROCEDURAL HISTORY ..................................................................................3

V.   ARGUMENT..........................................................................................................4

    A.   Plaintiffs' Claims Are Preempted by Federal Law. ...................................4

        1.   Plaintiffs' "Made with Whole Grain Oats" and "No High Fructose Corn Syrup" Claims Are Preempted..............................................4

        2.   Plaintiffs' "Heart Healthy" Claims Are Preempted. .....................5

        3.   Plaintiffs' "Helps Reduce Cholesterol!" Claims Are Preempted. ...................7

        4.   Claims Regarding Images of Oats, Fruits, and Brown Sugar Are Preempted...........................................9

    B.   Taken in the Packaging Context in Which They Appear, the Statements "Wholesome, Great-Tasting Goodness in Every Bowl," "Quality," and "Smart Choices Made Easy" Are Non-Actionable Puffery.......................10

        1.   The Concept of "Healthiness" Is Mere Puffery That Is Not Actionable. ...............................11

        2.   The Statements "Wholesome, Great-Tasting Goodness in Every Bowl," "Quality," and "Smart Choices Made Easy" Are Puffery.................11

    C.   The Consolidated Complaint Does Not Allege Facts Showing a "Plausible Claim for Relief."...............................14

        1.   PHOs are Considered "Generally Safe" Under Federal Law........................14

        2.   The Amounts of Trans Fat in the Products Is Equated to "Zero" by All Applicable State Laws.......................15

VI.  CONCLUSION.....................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Italian Pasta Co. v. New World Pasta Co.*,
    371 F.3d 387 (8th Cir. 2004)..................................................................12, 13

*Anunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ..........................................................13

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ......................................................... 2, 14, 15, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................. 2, 14, 15, 17

*Bros. v. Hewlett-Packard Co.*,
    2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) ..................................................10

*Chacanaca v. The Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ....................................................passim

*Cook, Perkins & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990)...................................................................11, 14

*Corley v. Rosewood Care Center, Inc. of Peoria*,
    388 F.3d 990 (7th Cir. 2004)....................................................................13

*Dvora v. General Mills, Inc.*,
    2011 WL 1897349 (C.D. Cal. May 16, 2011) ....................................................9

*Long v. Hewlett-Packard Co.*,
    2007 WL 2994812 (N.D. Cal. July 27, 2007),
    *aff'd*, 316 F. App'x 585 (9th Cir. 2009)........................................................10

*Lynch v. Rawls*,
    2011 WL 1561801 (9th Cir. Apr. 26, 2011)......................................................15

*Newcal Indus., Inc. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008) ...................................................................12

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008),
    *aff'd*, 322 F. App'x 489 (9th Cir. 2009).......................................................10

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
    227 F.3d 489 (5th Cir. 2000)....................................................................12

ii

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ................................................................... 13

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................................... 15

*Tylka v. Gerber Prods. Co.*,
    1999 WL 495126 (N.D. Ill. July 1, 1999) ...................................................... 3, 12

*Whiting v. AARP*,
    701 F. Supp. 2d 21 (D.D.C. 2010) ....................................................................... 14

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................................... 11

**STATUTES AND RULES**

21 U.S.C. § 343(r) ............................................................................................... 6, 7

21 U.S.C. § 343-1(a)(5) ........................................................................................... 7

21 U.S.C. § 348 *et seq.* ........................................................................................ 15

Baltimore Health Code § 6-507 ............................................................................. 16

Cal. Bus. & Prof. Code § 17200 *et seq.* ................................................................. 3

Cal. Bus. & Prof. Code § 17500 *et seq.* ................................................................. 3

Cal. Civ. Code § 1750 *et seq.* ................................................................................. 3

Cal. Health & Safety Code § 114377(d) ................................................................ 16

N.Y.C. Health Code. § 81.08(b) ............................................................................ 16

Philadelphia Health Code § 6-307(2) .................................................................... 16

Stamford Municipal Code Sec. 132-24.1 .............................................................. 16

**OTHER AUTHORITIES**

21 C.F.R. § 101.13(h)(1) ......................................................................................... 8

21 C.F.R. § 101.14(a)(1) ......................................................................................... 6

21 C.F.R. § 101.14(a)(4) ......................................................................................... 8

21 C.F.R. § 101.22(i) ......................................................................................... 9, 10

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS CONSOLIDATED COMPLAINT, CASE NO. 5:10-CV-00502-RS

21 C.F.R. § 101.81(c)(2) ................................................................................................7, 8

21 C.F.R. § 170.30 ...........................................................................................................15

75 Fed. Reg. 76526 (Dec. 8, 2010) .................................................................................15

*Guidance for Industry: A Labeling Guide for Restaurants and Other Retail Establishments*
*Selling Away-From-Home Foods*, § III Nutrition Labeling of Restaurant Foods,
¶¶ 40-41, 45-46, 55, 60, Food and Drug Administration (Apr. 2008) .................................6

*Health Claim Notification for Whole Grain Foods with Moderate Fat Content*,
FDA (Dec. 9, 2003), http://www.fda.gov/Food/ LabelingNutrition/LabelClaims/FDA
ModernizationActFDAMAClaims/ucm073634.htm .........................................................7

Select Committee on GRAS Substances, *Report No. 70*, www.accessdata.fda.gov/scripts/
fcn/fcnDetailNavigation.cfm?rpt=scogsListing&id=154.....................................................15

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS CONSOLIDATED COMPLAINT, CASE NO. 5:10-CV-00502-RS

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Plaintiffs have ignored this Court's prior ruling.  They have alleged that certain claims appearing on packages of Quaker products -- "heart healthy," "made with whole grain oats," "no high fructose corn syrup," and "helps reduce cholesterol' -- are false and misleading, despite the fact that these claims are regulated by the Nutrition Labeling and Education Act ("NLEA").  They have not alleged that these claims violate the NLEA; consequently they seek to impose requirements that are "not identical" to the federal standard, and their allegations are preempted.

Perhaps realizing this, Plaintiffs also assert that certain statements -- "wholesome, great tasting goodness" and "smart choices made easy" -- are misleading because they imply the products on which they appear are "healthy."  *See* Consolidated Compl. (hereafter, "Compl.") ¶¶ 72-73, June 24, 2011, ECF No. 95.  These allegations fail because, taken in the context in which they appear on Quaker's packaging, they invoke a subjective and unverifiable concept of "healthiness," and are therefore non-actionable puffery.

Moreover, and fundamentally, the entire premise of the Consolidated Complaint is not cognizable as a matter of law.  All of the supposed "deception" flows from the alleged "fact" that partially hydrogenated oils (PHOs) in any amount are "unfit for human consumption," Compl. ¶ 73, and there is "'no safe level,'" *id.* ¶ 59.  The FDA lists PHOs as an ingredient that is "generally recognized as safe," meaning that as a matter of federal law, companies may use PHOs.  Moreover, the amount of trans fat actually in the Products is so low that the FDA requires it to be declared as zero, and all applicable state and local laws identified in the Consolidated Complaint equate it with containing no trans fat at all.  Consequently the Consolidated Complaint fails to state a "plausible claim for relief" as required by federal pleading standards.

In short, the allegations in the Consolidated Complaint are baseless, and the few facts alleged establish that Quaker has not done anything wrong.  Quaker respectfully requests that the Court should dismiss the Consolidated Complaint outright, with prejudice.

## II.   STATEMENT OF THE ISSUES TO BE DECIDED

1.   **Preemption**:  Whether Plaintiffs' claims regarding "heart healthy," "Helps Reduce Cholesterol!," and images of oats, fruits, and brown sugar are preempted by the NLEA because they seek to impose requirements for product labeling that are "not identical" to those mandated by the FDA.

2.   **Non-Actionable Puffery**:  Whether Plaintiffs' claims regarding "wholesome, great-tasting goodness in every bowl," "quality," and "smart choices made easy," taken in context, are non-actionable puffery.

3.   **Failure to Show a Plausible Claim For Relief**:  Whether Plaintiffs fail to state a plausible legal claim under *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-58 (2007) because trans fat is considered "generally safe" under federal law, and the amounts of trans fat in the products equates to "zero" under the state and local laws cited by Plaintiffs.

## III.   FACTS ALLEGED BY PLAINTIFFS

Plaintiffs allege they have "repeatedly purchased" Quaker Chewy® Granola Bars, Instant Quaker Oatmeal, and Quaker Oatmeal to Go Bars ("the Products") at retail locations in California. *See* Compl. ¶¶ 3, 14-20.  They allege that the Products bore statements that they were "heart-healthy," *see id.* ¶¶ 67-71, 82; "made with whole grain oats," *see id.* ¶ 72; "no high fructose corn syrup," *see id.*; "helps reduce cholesterol," *see id.* ¶¶ 82-83; "wholesome, great tasting goodness in every bowl," *see id.* ¶ 70; "quality," *see id.*; "smart choices made easy," *see id.* ¶¶ 72-80; and bore images of fruit, brown sugar, oats, nuts and children in soccer uniforms, *id.* ¶¶ 71, 81.

The Consolidated Complaint alleges that these statements are false and misleading because the Products contain partially hydrogenated vegetable oils, which in turn contain trans fat.  Compl. ¶ 4.  Plaintiffs allege that trans fat is "toxic," "unfit for human consumption," and that there is "'no safe level.'"  *Id.* ¶¶ 4, 59, 72-73, 81.  The Consolidated Complaint also alleges that the Products are unhealthy because they contain "highly refined sugar."  *Id.* ¶¶ 67, 70, 74, 81.

1    Plaintiffs do not and cannot allege that any representations made by Quaker violate FDA

2    regulations.  They further do not allege that the amount of trans fat or sugars in the Products that

3    they consumed caused any adverse health effects to themselves or anyone else.

4    Plaintiffs allege causes of action for (1) violations of California's Unfair Competition Law

5    (UCL), Bus. & Prof. Code § 17200 *et seq.* (Counts 1 and 2); (2) violations of California's False

6    Advertising Law (FAL), Bus. & Prof. Code § 17500 *et seq.* (Count 3); and (3) violations of

7    California's Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq.* (Counts 4 and

8    5).  Compl. ¶¶ 110-44.

9    **IV.    PROCEDURAL HISTORY**

10    The first complaint in this action, which contained allegations regarding only Quaker

11    Chewy® Granola Bars, was filed on February 3, 2010 by Victor Guttmann and Robert Chacanaca.

12    On October 14, 2010, the Court granted in part and denied in part Quaker's motion for judgment on

13    the pleadings in that action.  *Chacanaca v. The Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal.

14    2010).  This Court held that to the extent Plaintiffs' state law claims seek to impose requirements in

15    addition to what is mandated by federal statutes and regulations, they fail on preemption grounds.

16    *See id.* at 1114, 1117-23.  The Court explained that "[a]s a matter of federal law, then, the presence

17    of trans fats alone is not a 'disqualifying' nutrient which would prevent Quaker Oats from

18    emphasizing whatever other health benefits are available from the Bars' other ingredients or

19    because it lacks certain ingredients." *Id* .at 1122.  This Court further found that

20     "at this juncture" and "on this motion," it could not determine whether the statements "wholesome"

21    and "smart choices made easy" were non-actionable puffery.  *Id.* at 1125-26.  This Court reasoned

22    that, depending on the context, a statement like "wholesome" alone may not be puffery, and

23    distinguished other cases where "wholesome" had been found to be puffery based on the larger

24    context and packaging.  *See id.* at 1125 ("The use of the word 'wholesome,' however, was only part

25    of the phrase deemed puffery in *Tylka* [*v. Gerber Products Co.*, No. 96-1647, 1999 WL 495126, at

26    *2 (N.D. Ill. July 1, 1999)]."  Moreover, the Court's conclusion that certain claims should be

27    permitted to proceed was premised on accepting Plaintiffs' allegation that trans fats are not safe in

28    any amount.  *See Chacanaca*, 752 F. Supp. 2d at 1115 ("[Plaintiffs] insist in their Complaint that

trans fats are not safe for human consumption in any amount."); *id.* at 1126 ("Taking plaintiffs' allegation that trans fats are not safe in any amount as true . . . .").

On November 29, 2010, December 7, 2010, and January 7, 2011, three additional suits containing similar allegations were filed against Quaker in this jurisdiction.[1]  On June 14, 2011, the Court consolidated all four cases into the present action and appointed interim class counsel.  On June 24, 2011, interim class counsel filed the operative Consolidated Complaint.  The Consolidated Complaint adds allegations regarding additional products (Instant Quaker Oatmeal and Quaker Oatmeal to Go Bars), pleads additional statements that are allegedly deceptive, and identifies additional packaging that Plaintiffs allege is misleading.

## V.     ARGUMENT

### A.     Plaintiffs' Claims Are Preempted by Federal Law.

Several of the statements Plaintiffs allege are false and misleading are in fact defined claims subject to specific FDA regulations.  Plaintiffs have not and cannot allege that Quaker has violated these FDA standards, and therefore their claims are preempted and should be dismissed.  As this Court has already ruled, the NLEA includes express preemption provisions that preclude plaintiffs from seeking to impose requirements in addition to what is mandated by federal statutes and regulations.  *Chacanaca*, 752 F. Supp. 2d at 1114, 1116-19.  Plaintiffs seek to assert claims that either this Court has already specifically found preempted or that are preempted under the same reasoning as this Court's prior decision.

#### 1.     Plaintiffs' "Made with Whole Grain Oats" and "No High Fructose Corn Syrup" Claims Are Preempted.

This Court previously held that the statements "made with whole grain oats" and "no high fructose corn syrup" are preempted.  *Chacanaca*, 752 F. Supp. 2d at 1121-22 (finding claims preempted, and explaining that "plaintiffs' claim asks this Court to *ascribe* disqualifying status to trans fats where the Agency [FDA] has at least so far declined to do so") (emphasis in original).

---

[1]  *Yrene v. Quaker Oats Co.*, No. 5:10-CV-5389 RS; *Yumul, et al. v. Quaker Oats Co.*, No. 5:10-CV-5538 RS; *Pelobello v. Quaker Oats Co.*, No. 3:11-CV-00093 RS.

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT, CASE NO. 5:10-CV-00502-RS

This Court has already ruled that these claims are preempted, and Plaintiffs allege no additional facts that would support a different conclusion.

### 2.    Plaintiffs' "Heart Healthy" Claims Are Preempted.

Plaintiffs argue that the claim "heart healthy" and related statements and images on certain Instant Quaker Oatmeal and Oatmeal-to-Go packaging are misleading because Quaker's products contain partially hydrogenated oils resulting in trace amounts of trans fat, and "highly refined sugars." Compl. ¶¶ 67-70, 82.

The Consolidated Complaint identifies certain Quaker Instant Oatmeal product packaging that states, surrounded by a heart, "Heart Healthy" and "Whole Grains," along with an asterisk stating "See side panel for information about the relationship between whole grains and heart disease." *See* Compl. ¶¶ 67-70, pp. 13-18. The side panel of the packaging states "Now that's a part of a delicious heart healthy* breakfast," with a statement immediately below that "*diets rich in whole grain oats and other plant foods and low in saturated fat and cholesterol may help reduce the risk of heart disease." *Id.* p. 16, ¶¶ 68-71. The other side panel also prominently displays in large font the same statement that "Diets rich in whole grain foods and other plant foods and low in saturated fat and cholesterol may help reduce the risk of heart disease." *Id.* p. 17, ¶¶ 68-71. The Consolidated Complaint also identifies specific Quaker Instant Oatmeal back label packaging that again states "part of a delicious heart healthy* breakfast," surrounded by oats in the shape of a heart, along with the statement immediately below that: "*diets rich in whole grain oats and other plant foods and low in saturated fat and cholesterol may help reduce the risk of heart disease." Compl. p. 20, ¶¶ 68-71.

As this Court has already noted, the FDA specifically regulates these types of health claims, whether written statements or symbols:

> Health claim means any claim made on the label or in labeling of a food . . . that expressly or by implication, including . . . written statements (e.g., a brand name including a term such as "heart"), symbols (e.g., a heart symbol), or vignettes, characterizes the relationship of any substance to a disease or health-related condition. Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition.

21 C.F.R. § 101.14(a)(1); *Chacanaca*, 752 F. Supp. 2d at 1117.  "A food purveyor *may* include implicit content claims so long as they are consistent with a definition for a claim, as provided in a federal regulation."  *Id.* at 1117 (quotations omitted).  *See also* RJN Ex. A (*Guidance for Industry: A Labeling Guide for Restaurants and Other Retail Establishments Selling Away-From-Home Foods*, § III Nutrition Labeling of Restaurant Foods, ¶¶ 40-41, 45-46, 55, 60, Food and Drug Administration (Apr. 2008) (explaining that the claims "heart healthy" and "healthy heart," when linked in labeling to a specific food, are regulated by the FDA as an implied health claim about reducing the risk of heart disease)).

In this case, the FDA has authorized precisely the health claim about the relationship between whole grain foods and heart health that Plaintiffs allege is misleading -- that "diets rich in whole grain foods and other plant foods and low in saturated fat and cholesterol may help reduce the risk of heart disease."  The Federal Food, Drug, and Cosmetic Act (FDCA) provides that, notwithstanding other provisions of the statute and FDA regulations, such health claims may be authorized pursuant to a notification process where a party submits a proposed claim based on an authoritative statement issued by a federal scientific body about the relationship between a nutrient and a disease-related condition.  *See* 21 U.S.C. § 343(r)(3)(C).  If the FDA authorizes the claim, then any food manufacturer may make the claim until the FDA issues a regulation prohibiting or modifying the claim or the FDA or a federal court finds that the requirements of the claim have not been met.  *See* 21 U.S.C. § 343(r)(3)(D).

Pursuant to the above-described process, in 2003, Kraft Foods submitted, and the FDA approved, a notification for the following claim: "Diets rich in whole grain foods and other plant foods, and low in saturated fat and cholesterol, may help reduce the risk of heart disease."  RJN Ex. B (Kraft Letter, Aug. 8, 2003 (attaching report titled "Notification of Health Claim Based on Authoritative Statement: Whole Grain Foods and Heart Disease")).  After discussions with the FDA, Kraft added a requirement that foods labeled with the claim contain less than "0.5 grams trans fat per reference amount customarily consumed (following standard rounding rules)."  RJN Ex. C (Kraft Letter, Nov. 26, 2003 (attaching amended report)).  After the FDA approval, Quaker was free to use "heart healthy" and related images based on the product's whole grain content, if Quaker met

6

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS CONSOLIDATED COMPLAINT, CASE NO. 5:10-CV-00502-RS

the FDA-approved criteria.  *See* 21 U.S.C. § 343(r)(3)(D); RJN Ex. D (*Health Claim Notification for Whole Grain Foods with Moderate Fat Content*, FDA (Dec. 9, 2003), http://www.fda.gov/Food/LabelingNutrition/LabelClaims/FDAModernizationActFDAMAClaims/ucm073634.htm (noting that "after December 9, 2003, manufacturers may use the specified claim on the label and in labeling of any food product that meets the eligibility criteria described in the Kraft notification (and stated below), unless or until FDA or a court acts to prohibit the claim.")).

Plaintiffs do not and cannot allege that the Quaker products violate the FDA-approved criteria.  Instead, Plaintiffs improperly seek to impose non-identical requirements by arguing that Quaker may not make the claim if the product contains any partially hydrogenated oils, even amounts resulting in trans fat below the 0.5 gram threshold, or if the product contains sugar.  Plaintiffs' claims are nothing more than an effort to impose additional non-identical requirements, and to challenge the FDA's previous decision to authorize the claim.  These claims are clearly preempted by federal law.  *See* 21 U.S.C. § 343-1(a)(5).

### 3.     Plaintiffs' "Helps Reduce Cholesterol!" Claims Are Preempted.

Plaintiffs allege that the statement "Helps Reduce Cholesterol!" on certain Oatmeal to Go bar packaging is "not complete, not truthful, and highly misleading" because of the existence of trace amounts of trans fat, as well as refined sugars and starches.  Compl. ¶ 83 (emphasis omitted).  Specifically, the Consolidated Complaint identifies a statement on the lower half of the back panel that "Oatmeal Helps Reduce Cholesterol!*", with an asterisked statement below that "*3 grams of soluble fiber from oatmeal daily in a diet low in saturated fat and cholesterol may reduce the risk of heart disease.  Quaker Old Fashioned Oats provide 2g per serving.  Quaker Instant Oatmeal, Oatmeal Squares, and Oatmeal to Go bars provide 1 gram per serving."  *See* RJN Ex. E (copy of label).[2]  Again, the FDA specifically authorizes precisely such statements, and Plaintiffs' claims are preempted.  Specifically, 21 C.F.R. § 101.81(c)(2) provides that "[a] health claim associating diets that are low in saturated fat and cholesterol and that include soluble fiber from certain foods with reduced risk of heart disease may be made on the label or labeling of a food . . . ."

---

[2] Because the copy of the label excerpted in the Complaint is difficult to read, Quaker submits a true and correct copy of the same label in its RJN.

The regulation sets forth specific requirements for making the claim, and Plaintiffs do not and cannot allege these are not satisfied. 21 C.F.R. § 101.81(c)(2).[3]  The regulation also authorizes an optional statement about the relationship to reducing cholesterol.  *See id.* § 101.81(b)(2) (stating that "[s]oluble fiber from certain foods, when included in a low saturated fat and cholesterol diet, also <u>helps to lower blood total- and LDL-cholesterol levels</u>") (emphasis added); *id.* § 101.81(d)(2)-(3) (providing claim may also "state that the relationship between intake of diets that are low in saturated fat and cholesterol and that include soluble fiber from the eligible foods sources . . . is through the intermediate link of 'blood cholesterol' or blood total- and LDL-cholesterol" and "information from paragraphs (a) and (b) [i.e., § 101.81(b)(2) above] of this section, which summarizes the relationship between diets that are low in saturated fat and cholesterol and that include soluble fiber from certain foods . . . .").

As this Court has previously noted, while the FDA imposes certain general disqualifying criteria for all health claims based on total fat, saturated fat, cholesterol, or sodium, there are no general disqualifying criteria for trans fat, partially hydrogenated oils, or sugar.  *See id.* § 101.14(a)(4); *Chacanaca*, 752 F. Supp. 2d at 1122 ("The Agency has by regulation imposed 'disqualifying' levels for only four nutrients: total fat, saturated fat, cholesterol, and sodium.  21 C.F.R. §§ 101.13(h)(1), 101.14(a)(4).").

Plaintiffs do not, and cannot in good faith, argue that the criteria for the claim are not met. Rather, Plaintiffs' claims regarding the statement "Helps Reduce Cholesterol!" amount to yet another attempt -- despite this Court's ruling on the prior motion for judgment on the pleadings --

---

[3] The regulation provides that the claim may be made if "(A) The claim states that diets that are low in saturated fat and cholesterol and that include soluble fiber from certain foods '**may**' or 'might' reduce the risk of heart disease. (B) In specifying the disease, the claim uses the following terms: '**heart disease**' or 'coronary heart disease''; (C) In specifying the substance, the claim uses the term '**soluble fiber**' qualified by the name of the eligible source of soluble fiber . . . . (D) In specifying the fat component, the claim uses the terms '**saturated fat**' and '**cholesterol**'; (E) The claim does not attribute any degree of risk reduction for CHD to diets that are low in saturated fat and cholesterol and that include soluble fiber . . . ; and (F) The claim does not imply that consumption of diets that are low in saturated fat and cholesterol and that include soluble fiber . . . is the only recognized means of achieving a reduced risk of CHD.  (G) The claim specifies the daily dietary intake of the soluble fiber source that is necessary to reduce the risk of coronary heart disease and the contribution one serving of the product makes to the specified daily dietary intake level. . . ."  21 C.F.R. § 101.81(c)(2) (emphasis added).

1     to impose additional non-identical requirements on Quaker.

2              **4.      Claims Regarding Images of Oats, Fruits, and Brown Sugar Are**
                         **Preempted.**
3

4              Plaintiffs argue that certain images of oats, nuts, fruit, and brown sugar are allegedly

5     misleading or "reinforc[e]" allegedly misleading health claims.  *See* Compl. ¶ 69 ("images of oats

6     formed in the shape of a heart"), ¶ 71 ("images of fruit, oats formed in the shape of a heart, and

7     natural brown sugar"), ¶81 ("images of oats, nuts").  Plaintiffs again assert that these images are

8     misleading because of trace amounts of trans fat, partially hydrogenated oils, and "highly refined

9     sugars." *Id.*  ¶¶ 68, 70, 81.  But FDA regulations explicitly authorize such images "characterizing

10    flavor," and Plaintiffs' claims merely seek to impose non-identical requirements.

11             Specifically, 21 C.F.R. § 101.22(i) regulates depictions characterizing flavor.  *See* 21 C.F.R.

12    § 101.22(i) ("If the label, labeling, or advertising of a food makes any direct or indirect

13    representations with respect to the primarily recognizable flavor(s), by word, vignette, e.g.,

14    depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a

15    food wishes to designate the type of flavor in the food other than through the statement of

16    ingredients, such flavor shall be considered the characterizing flavor . . . .").  That is, the FDA has

17    specifically regulated the use of such images and Plaintiffs have not -- and cannot -- allege the

18    criteria are not satisfied.  Rather, again Plaintiffs seek to impose additional non-identical

19    requirements based on trace amounts of trans fat from partially hydrogenated oils, and sugars.

20             Other courts have found that claims regarding similar images being purportedly misleading

21    are preempted.  For example, in *Dvora v. General Mills, Inc.*, No. CV 11-1074-GW, 2011 WL

22    1897349, *4 (C.D. Cal. May 16, 2011), the Court found that plaintiffs' claims that pictures of

23    clusters allegedly resembling blueberries and/or pomegranate seeds were misleading were

24    preempted under the "characterizing flavor" regulations, 21 C.F.R. § 101.22(i).  The *Dvora* court

25    explained: "[I]t is impossible to see how [p]laintiff's lawsuit does not seek to impose limitations on

26    [d]efendants' manner of packaging its products that are different from what federal regulations

27    currently require/permit.  Accordingly, the Court would conclude that [p]laintiff's claims (as

28    currently delineated) are preempted." *Id.* at *6.

1    Under the FDA regulations, Quaker is permitted to include images of oats, nuts, fruit, and

2  brown sugar consistent with the characterizing flavor regulations, 21 C.F.R. § 101.22(i).  Plaintiffs'

3  arguments are merely an attempt to impose additional non-identical requirements.  Those claims are

4  preempted.

5    **B.    Taken in the Packaging Context in Which They Appear, the Statements**
       **"Wholesome, Great-Tasting Goodness in Every Bowl," "Quality," and "Smart**
6       **Choices Made Easy" Are Non-Actionable Puffery.**

7    The only other representations identified by Plaintiffs are statements that the Products

8  contain "wholesome, great-tasting goodness in every bowl," are a "smart choice made easy," and

9  are "quality."  This Court previously found, with respect to the prior Complaint in this case, that "at

10  this juncture" and "on this motion," it could not determine whether the statements "wholesome" and

11  "smart choices made easy" in isolation were non-actionable puffery.  *Chacanaca*, 752 F. Supp. 2d

12  at 1125-26.  This Court reasoned that whether a statement such as "wholesome" is puffery depends

13  on the larger context and packaging.  *See id.* at 1125.  An examination of the context of the

14  statements and packaging, as presented in the Consolidated Complaint, reveals that these are

15  generalized statements of opinion about product quality that are subjective and not falsifiable.  *See*

16  *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489

17  (9th Cir. 2009).  As such, they are puffery and are not actionable.  *See also, e.g.*, *Bros. v. Hewlett-*

18  *Packard Co.*, C-06-02254 RMW, 2006 WL 3093685 at *4-5 (N.D. Cal. Oct. 31, 2006) (rejecting

19  "high-performance" and "top of the line" as puffery); *Long v. Hewlett-Packard Co.,* C 06-02816

20  JW, 2007 WL 2994812, *7 (N.D. Cal. July 27, 2007), *aff'd*, 316 F. App'x 585 (9th Cir. 2009)

21  (rejecting "reliable mobile computing solution" and "do more on the move" as puffery).

22    Perhaps realizing this, Plaintiffs' primary challenge to these statements is *not* that they are

23  untrue, but that they are misleading because they imply that the Products are "healthy."  *See, e.g.*,

24  Compl. ¶ 72 ("Though possibly true, these statements are deceptive . . . they imply that Quaker chewy

25  granola bars are healthy despite containing artificial trans fat . . . ."), ¶ 73 ("[T]he obvious implication

26  of the statements, taken in context, is that Quaker Chewy granola bars are a good decision for one's

27  health.").  Plaintiffs' challenge fails because statements that invoke a subjective and unverifiable

28  concept of "healthiness" are non-actionable puffery.  *See Oestreicher*, 544 F. Supp. 2d at 973.

### 1.    The Concept of "Healthiness" Is Mere Puffery That Is Not Actionable.

To the extent Plaintiffs' allegations rest on some vague concept of "healthiness," these claims are non-actionable puffery.  In *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008), the Ninth Circuit explained that claims that are otherwise puffery might still be challenged if they contribute to a broader deceptive message conveyed by the package as a whole.  In that case, the Ninth Circuit first found that other aspects of the product packaging deceptively suggested that the products contained fruit.  *Id.* at 939.  Turning to allegations that the statement "nutritious" was false and misleading, the Court stated that, "were it standing on its own" the claim "nutritious" could be puffery "since nutritiousness can be difficult to measure concretely."  *Id.* at 939 n.3.  It allowed the allegation to go forward, however, because the claim "contributes . . . to the deceptive context of the packaging as a whole."  *Id.* at 939 n.3.

In this case, by contrast, the Court has already rejected Plaintiffs' allegations that Quaker's statements about specific nutrients and ingredients (including trace amounts of trans fat) in the Products are false and misleading.  *Chacanaca*, 752 F. Supp. 2d at 1117-24 (holding that such claims are preempted by FDA regulations).  Consequently, there is no broader deception to which the supposed implied claims of healthiness might contribute, and standalone statements that allegedly imply "healthfulness" are mere puffery.

### 2.    The Statements "Wholesome, Great-Tasting Goodness in Every Bowl," "Quality," and "Smart Choices Made Easy" Are Puffery.

To the extent Plaintiffs argue that the statements "wholesome, great-tasting goodness in every bowl," "smart choices made easy," and "quality" are false in their own right, rather than because they imply that the Products are "healthy," the allegations should be dismissed because the statements, taken in their entirety, are puffery.[4]

---

[4] This Court previously considered the term "wholesome" in isolation, and concluded that "[t]he insistence that a product with (allegedly) dangerous additives is nonetheless 'wholesome,' by contrast, arguably *could* mislead a reasonable consumer."  *Chacanaca*, 752 F. Supp. 2d at 1125-26 (emphasis in original).  However, when the statements are considered in the context in which they actually appear, they are plainly puffery, as described above.  *See Cook, Perkins & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (explaining puffing as "claims which are vague or highly subjective") (citations, quotations, and alterations omitted).  Additionally, the

(Footnote Cont'd on Following Page)

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT, CASE NO. 5:10-CV-00502-RS

**"Wholesome, great-tasting goodness in every bowl"**: As alleged, the word "wholesome" appears on certain Quaker packaging as part of the following phrases:

> "With wholesome, great tasting goodness in every bowl, our instant oatmeal is sure to give everyone in your family something to smile about."  Compl. p. 19.

> "Made with the goodness of whole grain Quaker® oats and yummy ingredients like peanut butter or chocolate chips, they're a great tasting, wholesome way to help keep your family going."  Compl. p. 23.

In the first occurrence, "wholesome" is one of two modifiers of the term "goodness" (the other being "great tasting", a phrase that is quintessential puffery).  *See Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("[A] general, subjective claim about a product is non-actionable puffery."); *see also Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 392 (8th Cir. 2004) ("great taste" is "unquantifiable and subject to an individual's fancy").  The remainder of the sentence -- "sure to give everyone in your family something to smile about" -- is clear exaggeration; no reasonable customer would conclude that instant oatmeal would cause every person in every family to smile.  *See Chacanaca*, 752 F. Supp. 2d at 1125-26 (distinguishing *Tylka v. Gerber Prods. Co.*, No. 96-1647, 1999 WL 495126, at *2 (N.D. Ill. July 1, 1999) on the grounds that "[it] was surely the idea that there were no more nutritious, safe or wholesome products available *anywhere* else around the globe that rose to the level of unbelievable exaggeration").

In the second occurrence, "wholesome" modifies the "way" that the Products "keep your family going" and is preceded by additional puffery such as "yummy" and "great tasting."  *See Newcal Indus.*, 513 F.3d at 1053; *Am. Italian Pasta Co.*, 371 F.3d at 392 ("great taste" is "unquantifiable and subject to an individual's fancy").  Again, the full context of the statement belies any conclusion that the statements are objective or verifiable, or would induce consumer reliance.  *Newcal Indus.*, 513 F.3d at 1053 ("A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance."); *see also Pizza Hut, Inc. v. Papa John's Int'l*,

---

(Footnote Cont'd From Previous Page)

Court's prior conclusion was premised on accepting Plaintiffs' allegation that trans fats are not safe *in any amount*, *see Chacanaca*, 752 F. Supp. 2d at 1115, 1126, which, as discussed below, *infra* Sect. V(C), is as a matter of law implausible.

NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT, CASE NO. 5:10-CV-00502-RS

1    *Inc.*, 227 F.3d 489, 498 (5th Cir. 2000) ("[B]ecause the phrases 'better ingredients' and 'better

2    pizza' are not subject to quantifiable measures, the slogan is non-actionable puffery.").

3    **"Quality"**: Courts have repeatedly found this statement to be non-actionable puffery.

4    *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) ("The Court finds that

5    the word 'quality' is non-actionable puffery.") (citing *Corley v. Rosewood Care Center, Inc. of*

6    *Peoria*, 388 F.3d 990, 1008 (7th Cir. 2004) (holding that the phrase "high quality," as applied to the

7    amount of care to residents of a nursing home, "comes under the category of sales puffery upon

8    which no reasonable person could rely in making a decision . . . .")); *In re Sony Grand Wega KDF-*

9    *E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal.

10   2010) (alleged representations that televisions were "higher" or "superior" quality "are mere puffery

11   and cannot support a claim under the UCL, FAL, or CLRA"); *see also Am. Italian Pasta Co.*, 371

12   F.3d at 391-94 (the trademarked phrase "Quality Since 1867" is non-actionable puffery).

13   **"Smart Choices Made Easy"**:  As a threshold matter, "Smart Choices Made Easy" is not

14   simply a statement on certain Quaker Chewy® Granola Bars labels.  "Smart Choices Made Easy®"

15   is a mark registered with the United States Patent and Trademark Office.  Plaintiffs do not -- and

16   cannot -- allege that the Quaker Chewy® Granola Bar products that displayed the Smart Choices

17   Made Easy® mark did not meet the requirements of the program.

18   Furthermore, the following explanatory text appears next to the certification mark on the

19   specific Quaker Chewy® Granola Bars labels identified by Plaintiffs:

20   When choosing a granola bar, Quaker Chewy® Granola Bars are a smart choice because
     they have 25% less sugar than regular Chocolate Chip Quaker Chewy Granola Bars, have 0g
21   trans fat and are a good source of fiber.  One of over 300 smart choices made easy from
     PepsiCo.  For more information on our Smart Spot™ nutrition standards and help getting
22   started with a healthy lifestyle, visit www.smartspot.com.

23   Compl. p. 25.  Plaintiffs do not challenge anything in this text as false.  Plaintiffs do not -- and

24   cannot -- allege that Quaker Chewy® Granola Bars do not have 25% less sugar than regular

25   Chocolate Chip Quaker Chewy Granola Bars, or that the "0g trans fat" and the "good source of

26   fiber" claims are not accurate under FDA guidelines.  Further, the text clearly indicates why Quaker

27   considers its Chewy Granola Bars to be a smart choice: they contain 25% less sugar than regular

28   Chocolate Chip Quaker Chewy Granola Bars, have 0g trans fat, and are a good source of fiber.

1    Finally -- as with "wholesome" -- Plaintiffs remove the phrase "smart choice" from its

2    context, and then allege that the presence of "highly refined sugar and simple starches" means

3    Quaker Chewy® Granola Bars are not a "smart choice."  Compl. ¶ 74.  There is no benchmark

4    against which to determine "smartness,"  and thus the use of the term "smart" is mere puffery.

5    *Whiting v. AARP*, 701 F. Supp. 2d 21, 30 (D.D.C. 2010) (concluding that the statement "smart

6    option" is too general and subjective in nature to be considered a misrepresentation and instead is

7    "mere puffery") (citing, *inter alia*, *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911

8    F.2d 242, 246 (9th Cir. 1990), *aff'd,* 637 F.3d 355 (D.C. Cir. 2011)).

9        **C.**    **The Consolidated Complaint Does Not Allege Facts Showing a "Plausible Claim**
10           **for Relief."**

11   The facts alleged in the Consolidated Complaint do not state a claim that is "plausible on its

12   face." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  A claim is "plausible" when it

13   pleads facts from which the court can draw a "reasonable inference" that the defendant is liable for

14   the alleged misconduct.  *Iqbal*, 129 S. Ct. at 1949.  Stripped of unsupported legal conclusions, the

15   factual allegations must do more than "create a suspicion of a legally cognizable right of action";

16   they must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (quotations

17   and alterations omitted).  And, where the facts pled are "merely consistent" with a defendant's

18   liability, a court may dismiss the claims if there is a more likely explanation that is lawful.  *Id.* at

19   557; *Iqbal*, 129 S. Ct. at 1949.

20   As described above, the statements identified in the Consolidated Complaint are either

21   preempted by federal law (*i.e.* "heart-healthy"), or non-actionable puffery (*i.e.* claims that imply a

22   product is "healthy").  Even if any claims are not preempted or puffery, however, the Consolidated

23   Complaint should still be dismissed because the facts alleged do not support a "reasonable inference

24   of liability" either standing alone or in conjunction with one another.  To the contrary, they support

25   the lawfulness of the Product packaging.

26       **1.**    **PHOs are Considered "Generally Safe" Under Federal Law.**

27   The Consolidated Complaint alleges that trans fats are "toxic" and "unfit for human

28   consumption."  Compl. ¶ 73 ("In fact, the trans fat content of Quaker Chewy granola bars renders

them unfit for human consumption"). *See also id.* ¶¶ 4, 59, 72, 81. The Court accepted this

allegation as true when it ruled on Quaker's initial motion to dismiss. *See Chacanaca*, 752 F.

Supp. 2d at 1115 ("[Plaintiffs] insist in their Complaint that trans fats are not safe for human

consumption in any amount."), *id.* at 1126 ("Taking plaintiffs' allegation that trans fats are not safe

in any amount as true . . . .").

But partially hydrogenated oils have long been listed in the FDA database of food additives

that are "generally regarded as safe" (GRAS).[5] This means that, as a matter of federal law,

companies are permitted to add partially hydrogenated oils to products without obtaining pre-

market approval. *See, e.g.*, 21 U.S.C. 348 *et seq.*; 21 C.F.R. § 170.30.[6]

*Ipso facto*, PHOs are not "unfit for human consumption." In turn, the Court need not and

should not accept Plaintiffs' allegations to that effect as true. *See Lynch v. Rawls*, No. 09–17379,

2011 WL 1561801 (9th Cir. Apr. 26, 2011) (explaining that courts are "'not required to accept as

true conclusory allegations . . . that contradict matters properly subject to judicial notice'")

(quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Thus the

presence of trans fat in the Products -- standing alone -- cannot support a "reasonable inference" of

liability. Indeed, there is a more likely explanation that is lawful. *Twombly*, 550 U.S. at 567;

*Iqbal*, 129 S. Ct. at 1950. Namely, that PHOs are not "unfit for human consumption" and may

lawfully be used in food products.

### 2.    The Amounts of Trans Fat in the Products Is Equated to "Zero" by All Applicable State Laws.

The *amounts* of trans fat in the Products also undermine any "reasonable inference" that

Quaker is liable. Plaintiffs assert that there is "no safe level of artificial trans fat intake," *see*

Compl. ¶ 59, and identify numerous state and locals laws that they say have "banned" the use of

trans fats entirely in restaurants. See Compl. p. 12, ¶¶ 62-63 ("Trans fat is so inherently dangerous

---

[5] *See* RJN Ex. F (Select Committee on GRAS Substances, *Report No. 70* (last updated Oct. 31, 2006), www.accessdata.fda.gov/scripts/fcn/fcnDetailNavigation.cfm?rpt=scogsListing&id=154 (last visited July 29, 2011)).

[6] The FDA has denied one citizen petition to revoke the GRAS status of trans fat, while two others remain pending. *See* 75 Fed. Reg. 76526, 76543 (Dec. 8, 2010).

15

that it is being banned in an increasing number of American states and European Countries.").

But *every one* of the state and local laws identified in the Consolidated Complaint expressly *permits* trans fat at levels of less than 0.5 grams per serving, the precise level of trans fat in the Products.

- California proscribes restaurants from using foods that contain trans fat, but provides that a food contains artificial trans fat "if the food contains vegetable shortening, margarine, or any kind of partially hydrogenated vegetable oil, *unless the label required on the food, pursuant to applicable federal and state law, lists the trans fat content as less than 0.5 grams per serving*." Cal. Health & Safety Code § 114377(d) (emphasis added).

- New York City prohibits restaurants from using foods that contain trans fat, but provides that "*a food whose nutrition facts label or other documentation from the manufacturer lists the trans fat content of the food as less than 0.5 grams per serving, shall not be deemed to contain artificial trans fat.*" N.Y.C. Health Code. § 81.08(b) (emphasis added).

- Philadelphia prohibits restaurants from using or serving any foods containing artificial trans fat, and provides that "a food shall be deemed to contain artificial trans fat if the food is labeled as, lists as an ingredient, contains or is vegetable shortening, margarine or any kind of partially hydrogenated vegetable oil, *except that a food the nutrition facts label of which, or other documentation from the manufacturer, lists the trans fat content of the food as less than 0.5 grams per serving shall not be deemed to contain artificial trans fat.*" Philadelphia Health Code § 6-307(2) (emphasis added).

- Baltimore Health Code § 6-507 provides: "(a)(1) '*Food containing trans fat' defined.* (1) 'Food containing trans fat' means, except as provided in paragraph (2) of this subsection, any food that: (i) is labeled as containing vegetable shortening, margarine, or any kind of partially hydrogenated vegetable oil; (ii) lists vegetable shortening, margarine, or any kind of partially hydrogenated vegetable oil as an ingredient; or (iii) contains vegetable shortening, margarine, or any kind of partially hydrogenated vegetable oil.  (2) *"Food containing trans fat" does not include food with a nutrition facts label or other documentation from the manufacturer that lists the food's trans fat content as less than 0.5 grams per serving.* (b) *Prohibited use, etc.* (1) Except as provided in paragraph (2) of this subsection, food containing trans fat may not be stored, distributed, held for service, used in preparation of any menu item, or served in any food service facility. (2) This subsection does not apply to food that is served directly to patrons in the original sealed package of the manufacturer." (emphasis added).

- Montgomery County Bd. Health Res. 16-134, Artificial trans fats in eating and drinking establishments, (a)(2): "*Artificial trans fat*" means the specific type of fat formed when hydrogen is added to liquid vegetable oil to make the oil more solid . . . .  *However, a food with a nutrition facts label or other document from the manufacturer that lists the trans fat content of the food as less than 0.5 grams per serving does not contain artificial trans fat.*" (emphasis added).

- Stamford Municipal Code Sec. 132-24.1, Foods containing artificial trans fat, "(b) For the purposes of this section, a food shall be deemed to contain artificial trans fat if the food is

16

labeled as, lists as an ingredient, or has vegetable shortening, margarine or any kind of partially hydrogenated vegetable oil. ***However, a food whose nutrition facts label or other documentation from the manufacturer lists the trans fat content of the food as less than 0.5 grams per serving, shall not be deemed to contain artificial trans fat.***"  (emphasis added).

And, as the Court has already found (and Plaintiffs do not dispute), federal law also requires trans fat at the level of 0.5 grams per serving to be declared as "zero" in the Nutrition Facts Box. *Chacanaca*, 752 F. Supp. 2d at 1115 ("Plaintiffs accept that the '0 grams' carried on the nutrition box complies with FDA regulations.  They acknowledge that defendant would *violate* FDA regulations if it were to attempt to state a decimal amount smaller than 0.5.") (emphasis in original).

Accordingly, the Consolidated Complaint itself establishes a broad consensus under federal, state and local law equating food containing less than 0.5 grams of trans fat per serving -- the amount contained in the Products -- with food containing no trans fat.

This being the case, the facts alleged in the Consolidated Complaint are fully consistent with the simple truth that Quaker disclosed the ingredients in the Products and made claims about the Products that fully comply with all applicable laws.  Consequently, the Consolidated Complaint fails to state a "claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1949.  It is far more likely that Quaker's conduct is entirely lawful, and therefore, the Consolidated Complaint should be dismissed.  *Id.*

## VI.    CONCLUSION

For the above stated reasons, the Court should dismiss the Consolidated Complaint with prejudice.

Respectfully submitted,

Dated:  July 29, 2011                     ARNOLD & PORTER LLP

By:   /s/ Angel A. Garganta
       Angel A. Garganta
       Attorneys for Defendant