\*E-Filed 3/28/12\*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE QUAKER OATS LABELING LITIGATION | No. C 10-0502 RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

## I. INTRODUCTION

This consolidated action challenges defendant Quaker Oats Company's labeling practices on three of its products: Quaker Instant Oatmeal, Quaker Chewy Granola Bars, and Quaker Oatmeal to Go Bars. Prior to the consolidation, Quaker brought a motion for judgment on the pleadings in one of the cases, which was granted in part and denied in part. Now that an amended consolidated complaint has been filed, and the scope of the claims expanded, Quaker moves to dismiss, on grounds similar to those raised in its earlier motion for judgment on pleadings. For the reasons explained below, the motion will be granted in part and denied in part.[1]

---

[1] In light of the consolidation, and the withdrawal of named plaintiff Robert Chacanaca, plaintiffs' unopposed request to change the caption of this action to the form set out above is granted.

## II. BACKGROUND

Plaintiffs' primary contention in this action is that consumption of any amount of artificial "trans fats" is unhealthy, and that therefore various aspects of the labeling on Quaker's products, which contain small amounts of trans fats, are false and misleading.[2] Based on that contention, the First Amended Consolidated Complaint sets out claims for relief on behalf of a putative class of consumers under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL") and its Consumer Legal Remedies Act Civ. Code §§ 1750 *et seq*. ("CLRA").[3]

As discussed in the prior order, such state law claims can go forward only if not preempted by federal labeling requirements. At the time of the prior order, plaintiffs were challenging certain specific aspects of the labeling of Quaker Chewy Granola Bars. Some of those challenges were found to be preempted, and others not. Plaintiffs now complain of various additional statements and images on Chewy Bars, Instant Oatmeal, and Oatmeal To Go Bars, to which Quaker contends preemption applies. Quaker also argues that other challenged statements are non-actionable as "mere puffery," and that plaintiffs' entire complaint fails as implausible, given that the United States Food and Drug Administration ("FDA") apparently does not share plaintiffs' view that consumption of *any* amount of trans fats presents a health risk.

## III. LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its face."

---

[2] A more complete explanation of the nature of artificial and natural trans fats is set out in the prior order on Quaker's motion for judgment on the pleadings. As in that order, the term "trans fats" will be used here to refer to the artificial variety known also as "partially hydrogenated vegetable oil" or "PHVO."

[3] The complaint also includes a count under the "California False Advertising Law" Cal. Bus. & Prof. Code §§ 17500 et seq. Violations of those provisions, however, also constitute violations of the UCL. *See* Cal. Bus. & Prof. Code § 17200 (" unfair competition shall mean and include . . . any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.")

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 US at 570). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 US at 555 ("threadbare recitals of the elements of the cause of action, supported by mere conclusory statements," are not taken as true).

IV. DISCUSSION

A. Plausibility

Quaker argues that all of plaintiffs' claims "are based on the implausible allegation that trans fat is 'toxic to human health' and that there is 'no safe level' of trans fat consumption." Quaker insists that the FDA has "thoroughly evaluated and rejected the key scientific premises" underlying plaintiffs' theory of liability. In response, plaintiffs argue that Quaker is substantially overstating what the FDA has actually determined regarding trans fats, and that, if anything, the FDA has recognized that trans fats may need further regulation. While plaintiffs have persuasive arguments in that regard, even if it were the case that the FDA had clearly and specifically found that trans fats are safe in small quantities (notwithstanding possible consequences of cumulative exposure), that would not justify dismissing the complaint under *Twombly* and *Iqbal* as "implausible."

Although the FDA's conclusions, and the research on which it has relied, may serve as evidence Quaker can offer to rebut plaintiffs' allegations, there is no basis on a motion to dismiss to

1 conclude the FDA is so infallible that it is wholly implausible for plaintiffs to contend trans fats
2 present a health risk. Particularly given that scientific understanding of the risks presented by
3 particular substances often evolves over time, the FDA pronouncements on which Quaker relies are
4 insufficient to support dismissing the complaint on implausibility grounds.

### B. Preemption

As explained in more detail in the prior order, plaintiffs can avoid preemption if they show either that the labeling material they challenge does not constitute a "nutrient content claim" or "health claim," or, if it does, that the product effectively is "misbranded" under the Nutrition Labeling and Education Act, Pub.L. No. 101-535, 104 Stat. 2353 (codified as amended at 21 U.S.C. §§ 301, 321, 337, 343, 371) ("NLEA"). Of particular relevance here is 21 U.S.C. §343(r), which governs all statements about nutrient content or health information a manufacturer voluntarily chooses to include on a food label or packaging. Specifically, the section covers claims that "expressly or by implication," "characterize[] the level of any nutrient," or "characterize[] the relationship of any nutrient . . . to a disease or health related condition . . . ." 21 U.S.C. § 343(r)(1).

In these motion proceedings, plaintiffs do not dispute that the product label statements and images Quaker contends implicate preemption are in fact nutrient content or health claims. Plaintiffs argue, however, that the statements do not comply with the NLEA and/or with FDA regulations promulgated thereunder, such that the products are effectively "misbranded," and state law claims are not preempted. Plaintiffs' argument is persuasive as to some, but not all of the particular statements and images in dispute.

### 1. "Adds a dietarily insignificant amount of trans fat."

This phrase appears on the packaging of all three product categories alleged in the complaint. Plaintiffs argue that because Quaker has recast the explicitly permitted statement that its products contain "0 Grams" of trans fats, it is now impermissibly relying on *implied* preemption, rather than express permission. FDA regulations, however, expressly provide that an "'insignificant amount' shall be defined as that amount that allows a declaration of zero in nutrition labeling." 21

C.F.R. § 101.9(f)(1). The challenged phrase is permissible under the regulations, and therefore state law claims that it is false or misleading are preempted.

2. "Heart Healthy"/Images of Hearts.

Instant Quaker Oatmeal packaging combines "heart healthy" statements and images of hearts with the claim that "diets rich in whole grain foods and other plant foods and low in saturated fat and cholesterol may help reduce the risk of heart disease." On Oatmeal to Go bars, similar statements and images are used in conjunction with the health claim that "3g of soluble fiber daily as part of a diet low in saturated fat and cholesterol may reduce the risk of heart disease." In both instances, the claims are expressly permitted under FDA regulations.

Plaintiffs nonetheless contend that preemption does not apply, arguing first that the process by which Kraft Foods obtained regulatory approval for the first claim was defective. That argument is misdirected, because the question is not whether the claim *should* be permissible under the regulations, but whether it *is*. Plaintiffs' further arguments that Quaker cannot rely on the regulations given the presence of trans fats in its products, fail for the same reasons discussed in the prior order. Trans fat is not a "disqualifying" ingredient that renders misleading otherwise truthful nutrition content claims. [4] Finally, plaintiffs' suggestion that Quaker has improperly inserted "intervening material" is not tenable. The regulation expressly provides for a reference statement directing the consumer to further information located elsewhere on the packaging. *See* 21 C.F.R. § 101.14(d)(2)(iv). Accordingly, plaintiffs' claims arising from the use of the "heart healthy" statement and heart images are preempted.

---

[4] The First Amended Consolidated Complaint also adds allegations that the Quaker products contain unhealthy amounts of processed sugars and starches. Those too would not appear to be "disqualifying" ingredients. *See* 21 C.F.R. §§ 101.13(h)(1), 101.14(a)(4) (imposing "disqualifying" levels for only total fat, saturated fat, cholesterol, and sodium). Quaker's argument that plaintiffs' allegations regarding processed sugar and starches are overly conclusory is somewhat persuasive, but does not support dismissal of any of the claims or the striking of those averments.

3. "Helps Reduce Cholesterol."

The packaging of Quaker's Oatmeal to Go bars include a representation that they can "help[] reduce cholesterol." Plaintiffs admit that FDA regulations authorize a health claim associating soluble fiber from whole grain oats with a reduced risk of coronary heart disease. See Am. Compl. ¶ 106 (citing 21 C.F.R. § 101.81). This regulation allows the label to contain "optional information" that the "reduced risk of heart disease is through the intermediate link of" cholesterol. 21 C.F.R. § 101.81(d)(2).

Plaintiffs argue that Quaker cannot take advantage of those provisions here because it has presented the "helps reduce cholesterol" claim in a prominent manner that goes beyond merely presenting "optional information" as authorized by the regulation. Plaintiffs point to a warning letter the FDA sent regarding an allegedly similar overemphasis of cholesterol lowering claims made on Cheerios boxes. Quaker, in turn distinguishes the Cheerios labeling practices from those on Oatmeal to Go Bars in several significant respects.

Although the question is close, it would be premature to conclude at the pleading stage that Quaker's labeling practices necessarily fall within the scope of what is expressly permitted under the FDA regulations. Accordingly, this aspect of plaintiffs' claims will not be dismissed on preemption grounds at this time.

4. "All the nutrition of a bowl of oatmeal."

The packaging of a Quaker's Oatmeal to Go Bar asserts that it has "all the nutrition of a bowl of instant oatmeal," and includes a picture of a steaming bowl of oatmeal. Quaker contends this claim is permissible under 21 CFR § 101.65(c)(2), which allows the phrase "'contains the same amount of [nutrient] as a [food]' and "as much [nutrient] as a [food]'" to be stated on product labels. The regulation plainly contemplates that a *specific* nutrient will be identified, giving as examples, "as much fiber as an apple," and "Contains the same amount of Vitamin C as an 8 oz glass of orange juice." Quaker argues that if it is allowed to identify any *one* nutrient that is equally available from the two things being compared, there is no reason it should not be allowed to claim that *all* the nutrition in one is available in the other. The regulation, however, also requires that food to which

the comparison is drawn qualify as a "good source" of the particular nutrient.  See 21 CFR § 101.65(c)(2) (" . . . provided that the amount of the nutrient in the reference food is enough to qualify that food as a 'good source' of that nutrient.")  It further provides that the compared product be an "equivalent, good source" on a per serving basis.

Quaker glosses over these aspects of the regulation and does not explain how it would even be possible to determine whether its "all the nutrition of a bowl of instant oatmeal" statement is in compliance with the requirement that the instant oatmeal be a "good source" of unspecified nutrients.  As such, the regulation simply does not specifically authorize the kind of statement that Quaker is making.

It is not immediately clear that plaintiffs will be able to show the statement is false or misleading, given that they do not appear to be contending that there are any nutrients in instant oatmeal not found in Oatmeal to Go Bars, or that there is a discrepancy in the amount of such nutrients.  Again, trans fat is not a "disqualifying" ingredient that renders misleading otherwise truthful nutrition content claims.  Nevertheless, because this particular claim does not plainly fall under the regulation on which Quaker relies, there is no basis to conclude at this juncture that it is *preempted.*

5.  Images of Oats, Nuts, Fruits, and Brown Sugar

The prior order held that photographic depictions of oats and nuts were not preempted because the "NLEA does not regulate 'front of the box' symbols."  Quaker asserts that determination is not controlling here, because it did not previously present the argument that 21 C.F.R. § 101.22 governs representations relating to a product's *flavors*, and that in any event the complaint now challenges similar imagery on a different product, instant oatmeal.  Notwithstanding the fact that the complaint attaches photographic exemplars of the labeling in question, it is not clear whether the challenged imagery is more appropriately characterized as descriptive of the products' flavors or of other characteristics.  *See also*, *Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1143 (C.D. Cal. 2010)("Who gets to decide whether a product labeling claim is a 'characterizing flavor' claim or a claim about the product's ingredients, or an implicit claim that a product is healthful

because it contains a particular ingredient? If a 'flavor' claim suggests health benefits (especially in conjunction with other labeling claims), are Plaintiffs barred from alleging that it is misleading?"). Accordingly, at least at the pleading stage, it cannot be determined that preemption applies to these claims.

### C. Puffery

Quaker acknowledges that the prior order found various statements such as "wholesome" and "smart choices made easy" could not be dismissed as mere non-actionable "puffery." Quaker contends those and similar claims may now be rejected because it has provided additional context and more nuanced arguments, and because additional products are at issue. Although Quaker is within its rights to raise the point again, it will not be revisited in any detail. It may well be that Quaker can eventually show that some or all of the statements in issue are too general or vague to be actionable. For the same reasons discussed in the prior order, however, the question cannot be resolved at the pleading stage.

### VI. CONCLUSION

The motion to dismiss is granted with respect to those aspects of plaintiffs claims that are preempted, as set forth above. The motion is otherwise denied.

IT IS SO ORDERED.

Dated: 3/28/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE