**THE WESTON FIRM**
JACK FITZGERALD (257370)
*jack@westonfirm.com*
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
San Diego, CA 92110
1405 Morena Blvd., Suite 201
Telephone: (619) 798 2006
Facsimile: (480) 247 4553

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron.marron@gmail.com*
3636 4th Avenue, Suite 202
San Diego, CA 92103
Tel.: (619) 696-9006
Facsimile: (619) 564-6665

*Interim Class Counsel*

**GIBSON, DUNN & CRUTCHER LLP**
DANIEL W. NELSON (*pro hac vice*)
*DNelson@gibsondunn.com*
ANDREW S. TULUMELLO (*pro hac vice*)
*ATulumello@gibsondunn.com*
SCOTT P. MARTIN (*pro hac vice*)
*SMartin@gibsondunn.com*
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 530-4238

Christopher Chorba (216692)
*CChorba@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE QUAKER OATS LABELING LITIGATION | Case No: C 10-0502 RS<br>Pleading Type: Class Action<br>**JOINT CASE MANAGEMENT STATEMENT**<br>Judge: The Honorable Richard Seeborg |

Plaintiffs Victor Guttmann, Kelley Bruno, Sonya Yrene and Rebecca Yumul ("Plaintiffs"), and Defendant The Quaker Oats Company ("Quaker"), having by their counsel met and conferred on April 9, 2012 regarding the matters set forth herein, hereby provide this Joint Case Management Statement.

### A.   Jurisdiction and Service

The court has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) No parties remain to be served. Quaker does not dispute personal jurisdiction.

### B.   Facts

**Plaintiffs' Statement**

Plaintiffs allege that Quaker has sold Chewy Granola Bars, Instant Oatmeal and Oatmeal to Go Bars in packaging that misleadingly suggests—through affirmative misrepresentations and omissions—that the products are healthy despite that they contain artificial trans fat, a substance that causes cancer, diabetes, Alzheimer's, heart disease, and premature death for tens of thousands of Americans each year. Plaintiffs purchased the products in reliance on these misrepresentations and omissions, losing money as a result. In addition, some of Quaker's statements violated FDA regulations rendering them misbranded under the Federal Food, Drug and Cosmetic Act.

**Quaker's Statement**

For almost a decade, the Food and Drug Administration ("FDA") has required food companies to label the amount of *trans* fat in their products as zero if those products contain less than 0.5 grams of *trans* fat per serving. Quaker's position is that the FDA has done so, among other reasons, because there is no evidence that the consumption of such small amounts of *trans* fat has any adverse health consequences. Plaintiffs nonetheless maintain that the packaging for Quaker's Chewy granola bars, Instant Quaker Oatmeal, and Oatmeal To Go bars, including statements that the products are "wholesome," "quality," or "will help you feel your best," is rendered misleading because certain of those products contained less than 0.5 grams of *trans* fat per serving. Plaintiffs' theory would require the trier of fact to view as "toxic" an ingredient present in amounts that the expert federal regulatory agency has deemed to be equivalent to zero. It also would ignore that the health effects of any nutrient depend on a variety of factors, including the amount and duration of consumption, the remainder of the

individual's diet, and the individual's lifestyle and history. Particularly considering the documented health benefits of many ingredients in Quaker's products, there is no basis for dismissing those products as unhealthy alternatives in the American diet simply because they contained small amounts of *trans* fat.

C. **Legal Issues**

Legal issues include:

- Whether Quaker's alleged statements and omissions violate California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, False Advertising Law, *id.* §§ 17500 *et seq.*, and Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

- Whether class treatment is appropriate pursuant to Federal Rule of Civil Procedure 23.

- Whether Plaintiffs or Quaker are entitled to summary judgment on any of Plaintiffs' claims or Quaker's defenses.

D. **Motions**

Quaker filed a Motion to Dismiss Plaintiffs' First Amended Consolidated Complaint on October 14, 2011 (Dkt. No. 118). Plaintiffs opposed (Dkt. No. 121), and the Court held a hearing on January 12, 2012. On March 28, 2012, the Court issued its Order Granting in Part and Denying in Part Quaker's Motion to Dismiss (Dkt. No. 131).

The parties agree that, to the extent either seeks to submit expert testimony in connection with the class certification motion, such testimony should be submitted along with the appropriate party's initial briefing. The parties further agree, however, that such expert testimony is without prejudice to serving and relying upon additional, modified, or supplemented expert discovery on merits issues following class certification, if any, and that reliance upon such expert testimony for class certification purposes shall not prejudice any party with respect to more formal expert discovery relating to the merits.

**Plaintiffs' Statement**

Plaintiffs may file a motion for partial summary judgment with respect to the representation that Oatmeal to Go Bars "Help[] Reduce Cholesterol!" on the basis that the representation violated the

FDCA rendering Oatmeal to Go Bars misbranded and Quaker liable for violating the UCL's "unlawful" prong. Plaintiffs may also file a broader summary judgment motion after discovery has started.

Plaintiffs will also file a motion for class certification.

**Quaker's Statement**

Quaker intends to oppose any motion for summary judgment filed by Plaintiffs regarding the claim that its Oatmeal to Go bars help reduce cholesterol. Depending on the content of any further motion for summary judgment and motion for class certification, Quaker also anticipates opposing those motions. Depending on the course of discovery, Quaker may file a motion for summary judgment as to the individual claims of one or more of the named plaintiffs. In addition, following this Court's class-certification decision and the parties' additional discovery on merits issues, Quaker may move for summary judgment on Plaintiffs' claims.

**E. Amendment of Pleadings**

Plaintiffs may seek stipulation or leave to amend their Complaint based upon their ongoing investigation of Quaker's conduct. Plaintiffs discussed the possibility of a future amendment with Quaker during their April 9, 2012 meet and confer conference. Quaker reserved its position on any future amendment until such time as Plaintiffs actually propose an amendment.

**F. Evidence Preservation**

Plaintiffs' counsel have advised Quaker to preserve documents that may relate to the action. Quaker has issued a litigation hold notice to potential custodians of relevant documents, instructing them to preserve potentially relevant documents.

**G. Disclosures**

Plaintiff Victor Guttmann, together with former Plaintiff Robert Chacanaca, served initial disclosures on March 22, 2010. In light of the consolidation of several actions and the replacement of Mr. Chacanaca, Plaintiffs served amended initial disclosures on April 10, 2012. Quaker served initial disclosures on May 6, 2010.

**H.    Discovery**

**Initial Discovery**

This Court stayed discovery on April 27, 2010. Before then, Plaintiffs served 33 requests for production upon Quaker. Quaker objected to all of the requests, but without waiver of the objections agreed to produce responsive documents in response to sixteen of the 33 requests. In one additional response, Quaker stated that, "after a reasonably diligent search," it was unable to locate responsive documents. Plaintiffs also served thirteen interrogatories before discovery was stayed, and Quaker provided answers to six of these interrogatories. At the time of the discovery stay, Quaker had produced 369 pages of documents.

**Plaintiffs' Position on Discovery Phasing or Bifurcation**

Plaintiffs oppose further partial stays of discovery, in particular Quaker's proposal that "merits" discovery be stayed until Plaintiffs' motion for class certification is resolved. Plaintiffs offer the following reasons for their position:

First, Defendant sought and obtained a stay of discovery that has now lasted two years. Having obtained the benefit of such a long stay, it would be unfair to further partially stay discovery. Plaintiffs allege ongoing inequitable conduct: the use of an industrially modified fat that is strongly linked to disease, is illegal to use in California schools and restaurants, and completely illegal in several parts of Europe. Dr. Julie Louise Gerberding, who served for seven years as the head of the CDC and is now Professor of Medicine at UCSF, summarized the equities of the issue as follows:

> The scientific rationale for eliminating exposure to artificial trans fatty acids in foods is rock solid. There is no evidence that they provide any health benefit, and they are certainly harmful. These compounds adversely affect both low- and high-density lipoprotein cholesterol levels and increase the risk for coronary heart disease, even at relatively low levels of dietary intake. … Eliminating exposure to these dangerous fats could have a powerful population impact—potentially protecting 30,000 to 100,000 Americans from death related to heart disease each year.[1]

---

[1] *Safer Fats for Healthier Hearts: The Case for Eliminating Dietary Artificial Trans Fat Intake*, 151 Ann Intern Med. 137-138 (July 21, 2009).

Plaintiffs allege that Quaker not only exposes the public to these "certainly harmful" "dangerous fats," but markets its trans fat products using aggressive and deceptive health claims. Even if class certification is denied, Plaintiffs would continue to prosecute this action on an individual basis. Thus, the potential economy of not engaging in merits discovery that sometimes exists when plaintiffs are only willing to pursue their claims on a class basis does not occur in this action.

Second, a division of discovery into "class" and "merits" phases, in the experience of counsel, inevitably results in disputes and motion practice as to what is, and is not, relevant to class certification. "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. … The necessity of touching aspects of the merits in order to resolve preliminary matters [] is a familiar feature of litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011) (internal citations omitted). The Court should not be burdened with resolving such disputes, which grow more complicated by the year as evidentiary requirements placed on motions for class certification gradually become more onerous.

Third, if Plaintiffs are unable to conduct discovery into the merits of their case and Quaker's defenses, it will be difficult for them to engage in settlement discussions, and Quaker will be all the more tempted to wait until after a decision on class certification before seriously entertaining proposals of settlement.

Finally, Plaintiffs do not believe Quaker's argument that discovery should be bifurcated because of the existence of a stayed case, filed two years after this one, in Illinois. Even if Plaintiffs are unable to obtain a nationwide class, they will move and may be able to obtain a multi-state class comprised of states whose relevant laws do not materially conflict with California, which may also obviate the Illinois action. *See Bruno v. Eckhart Corp.*, 2012 U.S. Dist. LEXIS 30873, at * (C.D. Cal. Mar. 6, 2012) (rejecting motion to decertify nationwide class in light of *Mazza* and finding that "Defendants' interpretation of *Mazza* contradicts the express purpose of CAFA" to the extent Defendants argued *Mazza* "would preclude the certification of nationwide classes in CAFA class actions," and further noting that "the United States Supreme Court has instructed that 'multi-state, and even nationwide class actions can be, and are, maintained in many instances.'" (citation omitted)). Moreover, this Court selected current counsel as Interim Counsel over Mr. Askin's counsel, and Askin's case has been

5

stayed. Plaintiffs in this action should not be deprived of discovery just because of a hypothetical concern that Askin may later seek to "double dip." Rather, if necessary, Quaker can later provide Askin with the discovery obtained in this matter, including any deposition transcripts, and to the extent Askin seeks additional or duplicative discovery, ask for relief from the court in that action. In sum, this Court is not under an obligation to ensure a plaintiff in a late-filed, stayed action behaves reasonably vis-à-vis Quaker under some possible future circumstances over which this Court has no interest or jurisdiction, and it should not do so by prejudicing Plaintiffs' rights to discovery in this long-standing consolidated action.

**Quaker's Position on Discovery Phasing or Bifurcation**

Quaker respectfully submits that the interests of the parties and judicial economy are best served by phased discovery in which the first phase focuses on the issues necessary for class certification.

While the case has been pending in this Court, a different plaintiff has filed a lawsuit against Quaker in Illinois federal court raising similar challenges to Quaker's packaging under New York law. *See Askin v. Quaker Oats Co.*, No. 11-cv-00111 (N.D. Ill.). The plaintiff in the Illinois litigation sought to pursue coordinated pretrial proceedings in a single forum; both Plaintiffs and Quaker opposed this request. For their part, Plaintiffs invoked a prior decision by the Judicial Panel on Multidistrict Litigation "discussing alternative ways to deal with coordination," "including voluntarily coordinating discovery." MDL No. 2230, D.E. 13, at 6. The JPML ultimately denied transfer, citing the authority invoked by Plaintiffs and noting that "[t]he parties have every ability to cooperate and minimize the possibilities of duplicative discovery and inconsistent pretrial rulings." MDL D.E. 23, at 1.

Quaker filed a motion to dismiss the Illinois action under the first-to-file rule in light of this earlier-filed litigation; Plaintiffs also intervened to file their own motion to dismiss. Both motions emphasized that the Illinois action, like this case, seeks certification of a nationwide class of Quaker purchasers. On February 15, 2012, the district court in Illinois concluded that the allegations in both lawsuits are identical, and that judicial economy would not be served by proceeding with that case if Plaintiffs here ultimately obtain certification of a nationwide class, which would encompass the named plaintiff's claims in Illinois. Accordingly, the Illinois action has been stayed pending resolution of Plaintiffs' motion for class certification in this lawsuit. *See Askin* D.E. 87-88.

6
*In re Quaker Oates Labeling Litigation*, Case No. C 10-0502 RS
JOINT CASE MANAGEMENT STATEMENT

In Quaker's view, the Court's and parties' resources would be best served by focusing initially on the class-certification issue. If Plaintiffs are unable to obtain certification of a nationwide class, and thus the Illinois litigation resumes, it would be appropriate—as both the JPML and Plaintiffs themselves acknowledged—to coordinate discovery between this case and the Illinois action. At that point, the designation of Plaintiffs' counsel as interim class counsel would no longer be relevant as to individuals outside of any certified class. Indeed, discovery coordination appears to be the only way to avoid the possibility that Quaker would be forced to engage in, and two separate district courts would be forced to oversee, duplicative discovery between the two actions, for example if the plaintiff in Illinois were to take the position that he is entitled to conduct his own depositions of Quaker employees previously deposed by Plaintiffs here. Quaker therefore submits that the first phase of discovery should be focused on the issues necessary for determination of the class-certification motion, and further fact discovery on aspects of the case not necessary for certification should be deferred until after the Court's certification decision.

Quaker understands that, as the Supreme Court noted in *Wal-Mart Stores, Inc. v. Dukes*, some issues bearing on the merits may also be relevant to class certification, *see* 131 S. Ct. 2541, 2551-52 (2011), but anticipates that the parties and court will be able to distinguish those issues from others that relate only to the merits, just as parties and courts routinely evaluate whether evidence is relevant for a particular purpose. Although Plaintiffs claim that the "evidentiary requirements placed on motions for class certification" have "become more onerous," the *quantum* of evidence they are required to adduce does not bear on whether specific evidence they seek in discovery is *relevant* to the prerequisites for obtaining class certification. Moreover, as Quaker has explained to Plaintiffs, Quaker is not attempting to advance a narrow definition of "class" discovery, but only to defer discovery that is unnecessary for the parties to brief, and this Court to resolve, the class-certification issue. For example, the ultimate question whether *trans* fat is toxic in any amount will likely be a subject for discovery on the merits of Plaintiffs' claims, but it does not bear on any of the issues at the certification stage—whether there are common issues of law or fact, whether those issues predominate over individual issues, and so forth— and it would obviously be of interest to the plaintiff in *Askin* as well. Quaker's approach is a reasonable

attempt to provide Plaintiffs with the information they need to seek class certification without unnecessarily creating the risk of duplicative discovery.

Finally, Quaker strongly disagrees with Plaintiffs' apparent belief that its self-serving prediction of likelihood of success on the merits should be a relevant consideration in planning discovery. Quaker, of course, does not believe that its products are harmful and denies that they are illegal. But more importantly, *any* plaintiff could assert—as a basis for altering discovery schedules in his favor—that he should be proven "right" sooner rather than later. Plaintiffs have not sought, and could not obtain, a preliminary injunction barring the sale of Quaker's products. And they cannot properly leverage the same time-is-of-the-essence arguments to override the clear interest of the courts and parties in proceeding in the most logical manner given the stay in *Askin* and in avoiding potentially duplicative discovery.

### I. <u>Class Actions</u>

The FACC alleges two nationwide classes. The first is a "Restitution and Damages Class," defined as: "All persons (excluding officers, directors and employees of Quaker) who purchased, on or after February 3, 2006, one or more of the Quaker PHVO Products in the United States for their own use rather than resale or distribution." FACC ¶ 132. The second is an "Injunctive Relief Class," defined as: "All persons (excluding officers, directors, and employees of Quaker) who commonly purchase or are in the market for the Quaker PHVO Products in the United States for their own use rather than resale" *Id.* Depending upon the information Plaintiffs obtain through discovery, Plaintiffs may modify, revise, conglomerate or further divide the proposed class(es) as part of their class certification motion (and may seek to amend the Complaint accordingly prior to filing the motion). To the extent Plaintiffs anticipate doing so, they will meet and confer with Quaker.

After meeting and conferring, the parties have agreed that there should be sufficient time to effect the necessary discovery prior to the filing of any class certification motion, with the parties anticipating a hearing date on such a motion at the Court's convenience within twelve months after the Case Management Conference, as further discussed in Section Q, below.

Depending on the content of any class-certification motion, Quaker anticipates opposing certification. Among other reasons, class certification is inappropriate because questions of law or fact

common to class members do not predominate over questions affecting only individual members, and because California law is not properly applied to non-resident members of the purported class.

### J. Related Cases

There are no related cases pending in the Northern District of California. As noted above, there is a related case pending in the Northern District of Illinois styled *Askin v. Quaker Oats Co.*, No. 11-cv-00111 (N.D. Ill.). On February 15, 2012, the Honorable Young B. Kim stayed *Askin* pending resolution of the certification motion in this case. *Askin v. Quaker Oats Co.*, 2012 U.S. Dist. LEXIS 18665 (N.D. Ill. Feb. 15, 2012). In addition to *Askin*, a related lawsuit was filed against Quaker in the District of Columbia Superior Court on March 13, 2012, by an incarcerated individual plaintiff proceeding *pro se*. *See Johnson v. Quaker Oats Co.*, No. 2012 CA 002387 B (D.C. Super. Ct.). Quaker removed the lawsuit to federal court on April 13, 2012, *see Johnson v. Quaker Oats Co.*, No. 1:12-cv-00587 CKK (D.D.C.), and intends to file a motion to dismiss. The parties are unaware of any other pending related cases.

### K. Relief

Plaintiffs seek relief including: (1) an order declaring this action to be a proper class action; (2) an order enjoining Quaker from marketing or labeling its products that contain trans fat with the claims challenged in the FACC (except those that the Court has ruled are preempted), or otherwise marketing foods as beneficial to human health and heart health when they contain PHVO; (3) an order compelling Quaker to conduct a corrective advertising campaign to inform the public that its products contain unsafe amounts of trans fat at consumers' actual consumption levels; (4) an order requiring Quaker to disgorge or return all monies, revenues and profits obtained by means of any wrongful act or practice; (5) an order compelling Quaker to destroy all misleading and deceptive advertising materials and products; (6) an order requiring Quaker to pay restitution to restore all funds acquired by means of any unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the UCL, FAL or CLRA, plus pre-judgment and post-judgment interest thereon; (7) actual and punitive damages under the CLRA; (8) costs, expenses and reasonable attorneys' fees; and (9) any other and further relief the Court deems necessary, just or proper.

### L. Settlement and ADR

ADR phone conferences were held on May 10, 2010 and December 13, 2010. Although another ADR phone conference was scheduled for February 14, 2011, it did not take place due to the posture of the case, which was stayed pending a motion for centralization filed with the Judicial Panel on Multidistrict Litigation. The parties believe that informal settlement discussions would be more productive than another ADR phone conference, with the caveat and request that if the parties later decide that ADR or another Court-administered settlement conference (e.g., before the magistrate judge) might assist them in resolving the matter, they be permitted to make such a request to the Court.

### M. Consent to Magistrate Judge for All Purposes

The parties do not consent to have a magistrate judge conduct all further proceedings.

### N. Other References

The parties believe the case is *not* suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

### O. Narrowing of Issues

The issues in the case have been narrowed by the Court's decisions (1) granting in part and denying in part Quaker's Motion for Judgment on the Pleadings with respect to the initial complaint, and (2) granting in part and denying in part Quaker's Motion to Dismiss the FACC. The parties believe they may be able to further narrow the issues, particularly as they concern class certification, through meeting and conferring at the appropriate time and seeking stipulations to undisputed legal and factual issues including, for example, numerosity, the contents of the accused labels, the time periods during which the accused labels were used, and the formulations of the products.

### P. Expedited Schedule

The parties do not believe this is the type of case that can be handled on an expedited basis with streamlined procedures.

### Q. Scheduling

Plaintiffs propose the following schedule for discovery, expert disclosures, pre-trial motions, and trial. As discussed above, Quaker believes that a second phase of discovery, involving issues that are not necessary for the certification decision, should not proceed until this Court has ruled on the

class-certification motion. Quaker proposes that the parties confer and submit a case management statement for the second phase of discovery within 30 days of the Court's certification decision, but has also proposed dates below in case this Court would prefer to set the schedule in advance of the certification decision.

| Event | Plaintiffs' Proposed Dates | Quaker's Proposed Dates |
|---|---|---|
| Opening of Phase 1 discovery | Plaintiff does not believe discovery should be phased/bifurcated. | April 26, 2012 |
| Plaintiffs' Motion for Class Certification, including all evidence and any expert testimony in support, due by | March 1, 2013 | December 17, 2012 |
| Quaker's Opposition to Plaintiffs' Motion for Class Certification, including all evidence and any expert testimony in support, due by | April 1, 2013 | February 15, 2013 |
| Plaintiffs' Reply in Support of Motion for Class Certification due by | May 1, 2013 | March 8, 2013 |
| Hearing on Plaintiffs' Motion for Class Certification | May 30, 2013 | April 4, 2013 |
| Opening of Phase 2 discovery | Plaintiff does not believe discovery should be phased/bifurcated. | Date to be determined after this Court's certification decision or, alternatively, September 1, 2013 |
| Plaintiffs' Expert Disclosure | July 15, 2013 | January 6, 2014 |
| Deposition of Plaintiffs' experts to be completed by | August 15, 2013 | March 7, 2014 |
| Quaker's Expert Disclosure | September 15, 2013 | April 7, 2014 |
| Deposition of Quaker's experts to be completed by | October 15, 2013 | June 6, 2014 |

| Event | Plaintiffs' Proposed Dates | Quaker's Proposed Dates |
|---|---|---|
| Rebuttal expert reports, whose scope will be limited to new issues, due | December 15, 2013 | July 7, 2014 |
| Fact discovery cut-off | October 28, 2013 | December 20, 2013 |
| Expert discovery cut-off | October 28, 2013 | July 7, 2014 |
| Last day to file discovery motions | November 15, 2013 | November 30, 2013 |
| Dispositive motion cut-off | December 16, 2013 | August 6, 2014 |
| Hearing on dispositive motions | February 6, 2014 | September 2014 |
| Final pretrial conference | March 8, 2014 | November 2014 |
| Trial Date | March 31, 2014 | December 2014 |

### R. Trial

Plaintiffs seek a trial by jury on their claim for damages under the Consumer Legal Remedies Act. Plaintiffs assert that their claims under the Unfair Competition Law and False Advertising Law are limited to equitable relief, and are therefore tried to the Court. See, e.g., *Lopez v. United Parcel Service, Inc.*, 2010 WL 3630619 (N.D. Cal. Sept. 14, 2010) (findings of fact and conclusions of law following a bench trial on a UCL claim).

Plaintiffs' trial estimate is five days. Quaker's estimate is eight days.

### S. Disclosure to Non-party Interested Entities or Persons

Plaintiffs filed their Certification of Interested Entities or Persons on April 29, 2010 (Dkt. No. 16). Plaintiffs filed a further Certification reflecting consolidation and changes to the proposed class representatives on April 10, 2012. Quaker filed its Certification on March 15, 2010 (Dkt. No. 12), stating: "The Quaker Oats Company is a wholly owned subsidiary of PepsiCo, Inc."

T.     **Other Matters**

The parties request that attorneys who do not represent the proposed class representatives be removed from the service list as counsel for Plaintiffs, including the CM/ECF system and for documents served manually.

Dated: April 19, 2012                    By: /s/ Jack Fitzgerald

**THE WESTON FIRM**
JACK FITZGERALD
2811 Sykes Court
Santa Clara, CA 95051
Telephone: (408) 459-0305

GREGORY S. WESTON
MELANIE PERSINGER
COURTLAND CREEKMORE
1405 Morena Blvd, Suite 102
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
3636 4th Avenue, Suite 202
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Interim Class Counsel*

By: /s/ Daniel W. Nelson

**GIBSON, DUNN & CRUTCHER LLP**
DANIEL W. NELSON (*pro hac vice*)
*DNelson@gibsondunn.com*
ANDREW S. TULUMELLO (*pro hac vice*)
*ATulumello@gibsondunn.com*
SCOTT P. MARTIN (*pro hac vice*)
*SMartin@gibsondunn.com*
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 530-4238

Christopher Chorba (216692)
*CChorba@gibsondunn.com*
333 South Grand Avenue

Los Angeles, CA 90071
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

***Attorneys for The Quaker Oats Company***