**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:   (480) 247 4553

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS WOOD (270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone:   (619) 696-9006
Facsimile:   (619) 564-6665

***Interim Class Counsel***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re QUAKER OATS LABELING LITIGATION | Case No: 5:10-cv-0502-RS<br>Pleading Type: Class Action<br>Action Filed: February 3, 2010<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:      The Honorable Richard Seeborg<br>Date:       January 16, 2014<br>Time:       1:30 p.m.<br>Location:   Courtroom 3 |

## NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

**PLEASE TAKE NOTICE** that on January 16, 2014 at 1:30 p.m., or as soon thereafter as the case may be heard, in Courtroom 3, 17th Floor, of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, plaintiffs Victor Guttmann, Sonya Yrene, and Rebecca Yumul will and hereby do move this Court for an Order granting preliminary approval of their Class Action Settlement Agreement.

This motion is made pursuant to Federal Rule of Civil Procedure 23(b)(2) and is based on this Notice, the accompanying Memorandum of Points and Authorities, the attached declarations of Gregory S. Weston and Maria Velissariou, the [Proposed] Preliminary Approval Order, the pleadings and papers on file herein, and such other matters as may be presented to the Court at the time of the hearing.

Dated: December 23, 2013   /s/ Ronald A. Marron
             Ronald A. Marron
             LAW OFFICES OF RONALD MARRON, APLC
             *Attorney for Plaintiffs and the Settlement Class*

Dated: December 23, 2013   /s/ Gregory S. Weston
             Gregory Weston
             Jack Fitzgerald
             THE WESTON FIRM
             *Attorney for Plaintiffs and the Settlement Class*

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 1

II.   STATEMENT OF FACTS ..................................................... 2

III.  TERMS OF THE SETTLEMENT AGREEMENT ..................................... 3

  A.  The Settlement Class ..................................................... 3

  B.  Injunctive Relief ......................................................... 4

  C.  Class Notice .............................................................. 4

  D.  Attorneys' Fees and Costs and Incentive Award to Class Representatives .......... 5

  E.  Release .................................................................... 5

  F.  Opportunity to Opt Out and Object ...................................... 5

IV.   ARGUMENT .................................................................... 6

  A.  The Settlement Agreement Satisfies The Standard for Preliminary Approval. .......... 6

    1.  The Strength of Plaintiffs' Case ...................................... 6

    2.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation .......... 7

    3.  The Amount Offered in Settlement ................................... 7

    4.  The Extent of Discovery Completed and the State of the Proceedings ............ 8

    5.  The Experience and Views of Counsel ............................... 9

    6.  The Settlement Negotiations Were At Arms'-Length. .................. 9

  B.  Provisional Certification of the Settlement Class Is Proper. ............. 9

    1.  The Settlement Class Satisfies the Numerosity Requirement. ............ 9

    2.  The Settlement Class Satisfies the Commonality Requirement. ........... 10

    3.  The Settlement Class Satisfies the Typicality Requirement. ............ 10

    4.  The Settlement Class Satisfies the Adequacy of Representation Requirement ........ 10

    5.  The Settlement Class Satisfies the Requirements of Rule 23(b)(2). ......... 11

  C.  The Proposed Form and Method of Class Notice Is Adequate and Satisfies the Requirements of Rule 23. ........................................ 12

V.    PROPOSED SCHEDULE OF EVENTS ........................................ 13

VI.   CONCLUSION .................................................................. 13

ii

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys. Inc.*,
    2007 U.S,. Dist. LEXIS 83147 (N.D. Cal. Oct. 30, 2007) ............................................. 9

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................... 9

*Brown v. Ticor Title Ins. Co.*,
    982 F.2d 386 (9th Cir. 1992) ..................................................................................... 5

*Chacanaca v. Quaker Oats Co.*,
    2011 U.S. Dist. LEXIS 65023 (N.D. Cal. June 14, 2011) ......................................... 11

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ..................................................................................... 7

*Class Plaintiffs v. City of Seattle*,
    995 F.2d 1268 (9th Cir. 1992) ................................................................................... 6

*Connor v. Automated Accounts, Inc.*,
    202 F.R.D. 265 (E.D. Wash. 2001) ........................................................................... 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................... 10

*In re Indep. Energy Holdings PLC*,
    2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003) ......................................... 9

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..................................................................................... 6

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................. 2, 12

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................................... 6

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................................................... 12

*Nat'l Rural Telecomms. Coop. v DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................... 7

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ..................................................................................... 6

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .................................................................. 6
*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................. 10

**Statutes**
21 C.F.R. § 101.9(c)(2)(ii) ............................................................................. 2
21 C.F.R. § 101.9(f)(1) ................................................................................... 3
Cal. Bus. & Prof. Code § 17200 *et seq.* ...................................................... 3
Cal. Bus. & Prof. Code § 17500 *et seq.* ...................................................... 3
Cal. Civ. Code § 1750 *et seq* ....................................................................... 3

**Other Authorities**
64 Fed. Reg. 62746 (Nov. 17, 1999) ............................................................. 8
68 Fed. Reg. 4134 (July 11, 2003) ................................................................ 8
68 Fed. Reg. 41434 (July 11, 2003, effective January 1, 2006) ................... 2
78 Fed. Reg. 67169 (proposed Nov. 8, 2013) ............................................... 8
*Newberg on Class Actions* § 11.41 (4th ed. 2002) ................................. 6, 9

**Rules**
Fed. R. Civ. P. 23(a)(1) .................................................................................. 9
Fed. R. Civ. P. 23(a)(2) ................................................................................ 10
Fed. R. Civ. P. 23(a)(3) ................................................................................ 10
Fed. R. Civ. P. 23(a)(4) ................................................................................ 10
Fed. R. Civ. P. 23(b)(2) ................................................................................ 11
Fed. R. Civ. P. 23(c)(2)(b) ........................................................................... 12
Fed. R. Civ. P. 23(e)(1) ................................................................................ 12

*In re Quaker Oats Labeling Litigation*, Case No: 5:10-cv-0502 RS
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

After more than three years of litigation and protracted negotiations over the course of several months, including with the assistance of a mediator, the Honorable Leo S. Papas (Ret.), Plaintiffs Victor Guttmann, Sonya Yrene, and Rebecca Yumul ("Representative Plaintiffs") and Interim Class Counsel ("Class Counsel") are pleased to inform the Court that they have reached a settlement agreement with Defendant The Quaker Oats Company ("Defendant"). The settlement is memorialized in the Class Action Settlement Agreement ("Settlement Agreement") and resolves all claims in the Litigation.[1]

The Settlement provides substantial injunctive relief to the Class and benefits the public at large. Although Defendant vigorously denies the material factual allegations and legal claims asserted in the Litigation and stands by its products and marketing, Defendant agrees to remove partially hydrogenated oil ingredients ("PHOs") by December 31, 2015, from the Products that contain them. Settlement Agreement ¶ 4.1.1. Defendant also agrees not to introduce PHOs into those Products or any other Products at issue in the Litigation for a period of ten years. Settlement Agreement ¶¶ 4.1.1, 4.1.2. As additional interim relief, Defendant further agrees that, if PHOs remain in any of the Products on or after December 31, 2014, it will cease making the statement "contains a dietarily insignificant amount of *trans* fat" on the label of any Product containing 0.2 grams or more of artificial *trans* fat per serving. ¶ 4.1.3. Defendant estimates that it will expend approximately $1.4 million to reformulate the Products that currently contain PHOs. *See* Velissariou Decl. ¶¶1-4.

Representative Plaintiffs and Class Counsel respectfully request that the Court enter an order: (1) granting preliminary approval of the Settlement Agreement; (2) provisionally certifying a Class under Federal Rule of Civil Procedure 23(b)(2) for settlement purposes only, appointing the Plaintiffs as representatives of the Class, and appointing Class Counsel as counsel to the Class; (3) approving the parties' Notice Plan and forms of Notice; (4) directing that Notice be disseminated to the Class; (5) providing that all Class Members will be bound by the Final Judgment and Order unless such Class Members timely file a valid written Request for Exclusion; (6) providing that any objection by any Class

---

[1]    Unless otherwise stated, capitalized terms have the same meaning as in the Settlement Agreement, filed concurrently with this motion as Exhibit 1 to the Declaration of Gregory S. Weston.

Member shall be submitted in the manner set forth in the Settlement Agreement and Notice; (7) setting a Fairness Hearing to determine whether the Settlement is fair, reasonable, and adequate, and whether the separately filed application for attorneys' fees, expenses, and a Representative Plaintiff incentive award should be approved; (8) staying all proceedings in the Litigation, other than the proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement and the Preliminary Approval Order; (9) appointing the proposed Class Action Administrator, Gajan Retnasaba of Classaura; and (10) setting forth all relevant deadlines.

As set forth below, the proposed Settlement is well "within the range of possible approval," such that the Court should grant preliminary approval, authorize Notice to the Class, and schedule a Fairness Hearing. *See*, *e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks omitted). Before engaging in settlement negotiations, the Parties engaged in substantial investigation and discovery, and Plaintiffs understood the strengths, weaknesses, and risks of proceeding through class certification and trial. The settlement discussions were at arms'-length and were aided by a mediator. Plaintiffs are represented by counsel experienced in class action litigation and believe the Settlement is more than fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request that the Court grant this motion.

## II.    STATEMENT OF FACTS

In this Litigation, Plaintiffs allege that the labels of certain of Defendant's Products are misleading because they imply that the Products are healthy, even though they contain or contained during the class period artificial *trans*-isomer fatty acids—commonly known as *trans* fat—from PHOs. Since 2006, the FDA has required food labels to disclose nutrient information for *trans* fat. *See Food Labeling: Trans Fatty Acids in Nutrition Labeling, Nutrient Content Claims, and Health Claims*, 68 Fed. Reg. 41434 (July 11, 2003, effective January 1, 2006). The relevant FDA regulation requires the *trans* fat content be disclosed on the Nutrition Facts Panel of packaged food and be "expressed as grams per serving to the nearest 0.5 (1/2)-gram increment below 5 grams and to the nearest gram increment above 5 grams. If the serving contains less than 0.5 gram, the content, when declared, shall be expressed as zero." 21 C.F.R. § 101.9(c)(2)(ii). For purposes of the Nutrition Facts Panel, the FDA defines as an "insignificant amount" any nutrient present in an "amount that allows a declaration of zero in nutrition

2

labeling." *Id.* § 101.9(f)(1). Defendant asserts that the Products at issue here have, at all relevant times, contained either no *trans* fat or less than 0.5 grams per serving.

The First Amended Consolidated Complaint alleges that Plaintiffs are repeat purchasers of the Products. *See* Doc. 102 ("Am. Compl.") ¶ 4. Plaintiffs allege that, in purchasing the Products, they were "seeking, for themselves and their families, products of particular qualities." *Id.* ¶ 115. In pursuit of this goal, Plaintiffs assert that they read and relied on various statements made on Defendant's packaging that they claim were rendered misleading by the presence of PHOs. *Id.* ¶ 116 & App'x A. Based on these purportedly false and misleading statements, Plaintiffs assert causes of action for alleged violations of California's consumer protection laws—in particular, the Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*), the False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*), and the Unfair Competition Law (*id.* § 17200 *et seq.*).

On March 28, 2012, this Court granted in part and denied in part Defendant's motion to dismiss the First Amended Consolidated Complaint. *See* Doc. 131. The Court held that certain of Plaintiffs' claims were preempted by federal law. The Court permitted Plaintiffs to pursue their challenges as to other statements and images. Since then, the Parties have engaged in discovery. The Parties each made initial document productions and the Parties continued to engage in an extensive meet-and-confer process.

In addition, the Parties have engaged in protracted arms'-length settlement negotiations over the course of approximately six months. These negotiations included a lengthy mediation session with Judge Leo S. Papas (Ret.), who served as a magistrate judge for the Southern District of California for 18 years before his retirement.

## III.   TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement Agreement filed concurrently with this motion are summarized below.

### A.   The Settlement Class

The proposed Settlement Class ("Class") includes all persons and entities who purchased one or more of the Products in the United States during the period from February 3, 2006 through the Opt-Out Date. Excluded from the Class are (a) persons or entities who purchased the Products for the purpose of

3

resale or distribution; (b) persons who are employees, directors, officers, or agents of Defendant or its parent or subsidiary companies; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class, as provided in the Settlement Agreement; and (e) any judicial officer hearing this Litigation, as well as their immediate family members and employees.

**B.    Injunctive Relief**

The Settlement Agreement provides substantial injunctive relief to the Class. Defendant agrees to remove PHOs by December 31, 2015 from the Oatmeal to Go and Instant Quaker Oatmeal Products that currently contain PHOs, and not to reintroduce PHOs into those products for a period of ten years. Settlement Agreement ¶ 4.1.1. Defendant has informed us that the cost of reformatting these products is approximately $1.4 million. With respect to the other Products at issue in the Litigation, Defendant agrees not to introduce PHOs for a period of ten years into Quaker Chewy Bars (which do not currently contain PHOs), as well as the Instant Quaker Oatmeal Products that do not currently contain PHOs. Settlement Agreement ¶ 4.1.2. Finally, Defendant agrees, that unless it is in early compliance with the provision requiring removal of PHOs from the Products that currently contain them, by December 31, 2014, it will cease making the statement "contains a dietarily insignificant amount of *trans* fat" on the label of any Product containing 0.2 grams or more of artificial *trans* fat per serving. Settlement Agreement ¶ 4.1.3.

**C.    Class Notice**

Defendant has agreed to pay notice costs up to $120,000. Settlement Agreement ¶ 6.1. To the extent that the cost of providing notice to the Class exceeds $120,000, Defendant and Plaintiffs shall divide any additional costs evenly. *Id.* Class Members' contact information is not available for direct, individual notice because Defendant sells its products to consumers through third-party retailers. The Parties have, however, worked diligently to complete the proposed Notice Plan reasonably designed to reach consumers. Settlement Agreement ¶ 6.5 & Ex. C. As part of the Notice Plan, the Long Form Notice will be posted on the Class Settlement Website, www.quakerlawsuit.com, and will also be available upon request by mail or by calling a toll-free number. Settlement Agreement ¶ 6.3 & Ex. C. Summary Notice will also be published in a combination of publications designed to reach Class

Members and will direct readers to the Class Settlement Website containing the Long Form Notice. Settlement Agreement Ex. C.

### D.    Attorneys' Fees and Costs and Incentive Award to Class Representatives

The Settlement Agreement permits Plaintiffs to apply for incentive awards of $750 per Representative Plaintiff. Settlement Agreement ¶ 10.1. Defendant agrees not to oppose such an application, provided that the request does not exceed the agreed-upon amount. The Settlement Agreement also permits Plaintiffs to apply for attorneys' fees and costs up to $760,000 and provides that Defendant will not object to such a request.

### E.    Release

Upon entry of a final order approving the Settlement Agreement and the favorable resolution of any subsequent appeals, every Class Member who has not filed a Request for Exclusion from the Settlement Class shall be deemed to have released and forever discharged Defendant and the other Released Parties, as defined in the Settlement Agreement, from any and all Released Claims as set forth in Section 7 of the Settlement Agreement.

### F.    Opportunity to Opt Out and Object

Although the Parties request that the Class be provisionally certified under Rule 23(b)(2), Class Members will be afforded the opportunity to opt out of the settlement. Settlement Agreement ¶ 9.3. By providing the parties Notice and the opportunity to opt out, Class Members will be precluded from bringing future actions for equitable relief and monetary damages that could have been brought in this suit. *See Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992) (noting that a Rule 23(b)(2) settlement may "bind an absent plaintiff concerning a claim for monetary damages" where the absent class members are provided the opportunity to opt out). Class Members will also be given the opportunity to object to the Settlement Agreement, and those who object may also appear at the Fairness Hearing if they separately file a notice of intent to appear under the procedure set forth in the Long Form Notice and Section 9.1 of the Settlement Agreement. Class Counsel will submit their request for attorneys' fees and expenses forty-five days before the Fairness Hearing, allowing Class Members sufficient time to review the application and, if they choose to do so, object under the procedure set forth in the Long Form Notice and Settlement Agreement Section 9.1.

**IV.    ARGUMENT**

    **A.    The Settlement Agreement Satisfies The Standard for Preliminary Approval.**

        Federal Rule of Civil Procedure 23(e) requires court approval for all actions settled on behalf of a class. In determining whether to approve this proposed Settlement for the Class, this Court must consider whether the settlement is fair, reasonable, and adequate. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Ninth Circuit has a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). There is an "overriding public interest in settling and quieting litigation." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

        The Court may consider a variety of factors in determining the reasonableness of a settlement, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *See Linney*, 151 F.3d at 1242. Courts also afford great weight to arms'-length negotiations. *See* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("*Newberg*"). Consideration of these factors leads to the conclusion that preliminary approval of the Settlement Agreement should be granted.

    **1.    The Strength of Plaintiffs' Case**

        While Plaintiffs maintain that their claims are valid and that they would prevail at trial, they acknowledge that they would face challenges at both the class certification stage and on the merits. *First*, the Court has already dismissed a number of their claims, first in their initial complaint from 2010, and later from their Consolidated Complaint, holding that several of the challenged labeling statements are not actionable as a result of federal preemption. *Second*, Plaintiffs are mindful of the challenges they would face in obtaining and maintaining class certification. These challenges include, by way of example, potential difficulties arising from Defendant's use of different Product packaging over the course of the Class Period, as well as across sales channels and regions, and that the Class Members did

6

not pay a uniform price for the Products. These challenges would be particularly problematic if Plaintiffs were to seek certification of a damages class under Rule 23(b)(3), rather than the Rule 23(b)(2) injunctive-relief certification sought by the Settlement Agreement, given Rule 23(b)(3)'s requirement that questions common to the class predominate over individualized questions. *Third*, Plaintiffs are mindful of the potential problems of proof bearing on the claims asserted in the Litigation, and that Representative Plaintiffs did not retain proof of their purchases of Defendant's Products.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Settlement provides relief to the Class without the risks, costs, and delays inherent in continued litigation, all of which are important factors in considering the reasonableness of the Settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004); *see also Nat'l Rural Telecomms. Coop. v DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (internal quotation marks omitted).

Here, the parties have already invested more than three years in costly and time-consuming pretrial litigation. The discovery obtained thus far makes clear that Plaintiffs face substantial challenges at each remaining stage of litigation, including class certification, summary judgment, trial, and appeal, and at each stage Plaintiffs risk receiving no compensation and losing the opportunity to obtain the injunctive relief provided by the Settlement. The Settlement eliminates these costs and risks, while securing a favorable outcome for the Class.

### 3. The Amount Offered in Settlement

Although the absent Class Members will not receive direct compensation as a result of the Settlement, Defendant has agreed to address and resolve the issues raised by the lawsuit to the benefit of the Class. The injunction embodied in the settlement represents the principal relief sought in the operative complaint. *See* Am. Compl. Prayer for Relief ¶¶ A-B. Defendant will bear the expense of reformulating the Products that currently contain PHOs, at a cost of approximately $1.4 million. The Class Members will also receive assurances that PHOs will not be introduced or reintroduced into the Products, including those that have already been reformulated, for a period of ten years. Settlement Agreement ¶¶ 4.1.1, 4.1.2.

After an agreement in principal was reached, but before the Settlement Agreement was signed, the United States Food and Drug Administration proposed a rule that would require the removal of *trans* fats from the Products. *See* Tentative Determination Regarding Partially Hydrogenated Oils; Request for Comments and for Scientific Data and Information, 78 Fed. Reg. 67169 (proposed Nov. 8, 2013). If finalized, the rule would prohibit food manufacturers from selling PHOs, either directly or as ingredients in another food product. That rule remains only a proposal as of the filing of this motion, and even if it becomes a rule it is unknown when that would occur. In addition, it has not yet been determined what the timing for compliance would be if the rule does become final. In its tentative determination, the FDA also contemplated and requested comments on exceptions to its proposed rule for particular foods, and also considered several phase-in timelines, as well as requested comments on possible methods to limit PHO short of a complete ban. *Id.*

Contrasted with the uncertainty of relying on the rulemaking process and the unknown time it would allow for Defendant to come into compliance if the rule were made final, the Settlement Agreement provides the Class with certainty that the Products will be free of PHOs by December 31, 2015 and that PHOs will not be introduced or reintroduced into the Products for a period of ten years, regardless of the fate of the FDA proposed rule. Indeed, when the FDA last took action on trans fat, it began the process to require their labeling in 1999, but did not actually impose such a requirement until 2006, and only in a form less stringent than in Canada and other countries in Europe. *See* 64 Fed. Reg. 62746 (Nov. 17, 1999)(proposed rule requiring trans fat labeling); 68 Fed. Reg. 4134 (July 11, 2003)(final rule requiring trans fat labeling starting on January 1, 2006).

### 4.    The Extent of Discovery Completed and the State of the Proceedings

Before engaging in settlement negotiations, the Parties engaged in substantial factual discovery, which has informed Class Counsel's view of the benefits of the Settlement. The Parties have been engaged in discovery following the Court's March 28, 2012 order granting in part and denying in part Defendant's motion to dismiss the First Amended Consolidated Complaint. The Parties have made initial document productions and engaged in an extensive meet-and-confer process. Class Counsel has done additional research outside of the discovery process to effectively negotiate the Settlement on behalf of the Class.

### 5.    The Experience and Views of Counsel

The Class is represented by Gregory Weston and Jack Fitzgerald of The Weston Firm and Ronald Marron and Skye Resendes of the Law Offices of Ronald Marron, APLC, all of whom have extensive experience in the litigation of class actions. Their experience is described in their concurrently filed declarations. *See* Weston Decl. ¶¶ 2-6, Ex. 2. In their view, the Settlement provides substantial benefits to the Class, particularly in light of the risks and expenses of continued litigation.

### 6.    The Settlement Negotiations Were At Arms'-Length.

"There is usually an initial  presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for approval." *Newberg* § 11.41. The Settlement Agreement was reached by arms'-length negotiations. The parties engaged in discovery, involving extensive meet-and-confer sessions and the production of documents, for more than a year before the Settlement was reached following months of negotiations, including with the help of a respected mediator, Judge Leo S. Papas (Ret.). The oversight of an experienced mediator further supports that the negotiations were conducted at arms'-length. *See*, *e.g.*, *Adams v. Inter-Con Sec. Sys. Inc.*, 2007 U.S,. Dist. LEXIS 83147, at *9 (N.D. Cal. Oct. 30, 2007); *In re Indep. Energy Holdings PLC*, 2003 U.S. Dist. LEXIS 17090, at *13 (S.D.N.Y. Sept. 29, 2003).

### B.    Provisional Certification of the Settlement Class Is Proper.[2]

The Settlement Agreement meets the standard for provisional certification of a settlement class. In order for a class to be certified, all four requirements of Rule 23(a) must be satisfied, along with one of the three categories in Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). The Settlement Agreement sets forth an identifiable class, as defined above.

### 1.    The Settlement Class Satisfies the Numerosity Requirement.

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Numerosity is easily satisfied here. Defendant is one of the largest consumer packaged goods companies in the world, and the Products at issue in the Litigation were sold in retail establishments throughout the United States and throughout the proposed Class Period. The proposed

---

[2]    Defendant supports certification for settlement purposes only. *See* Settlement Agreement § 8.1.1.

9

Class consists of potentially hundreds of thousands of consumers, or more, who purchased the Products during the Class Period.

### 2.   The Settlement Class Satisfies the Commonality Requirement.

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." "Commonality requires the plaintiffs to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotation omitted). This means that the Class Members' claims "must depend on a common contention." *Id.* This requirement is also satisfied. All of the Class Members purchased Products manufactured by Defendant. While there were variations in the labels and packaging, the Class Members were all exposed to labels during the Class Period containing the allegedly misleading statements. These facts are common to all Class Members. All of the Class Members allege injury in violation of California's consumer protections laws, and the question whether Defendant's labeling was misleading will resolve a central issue on a class-wide basis.

### 3.   The Settlement Class Satisfies the Typicality Requirement.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is also satisfied. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The Representative Plaintiffs, like the absent Class Members, are all purchasers of the Products during the Class Period, and the claims made by the Representative Plaintiffs are typical of the Class they seek to represent. All claims in this case require proof that Defendant's labeling was misleading.

### 4.   The Settlement Class Satisfies the Adequacy of Representation Requirement.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.2d at 1020. Class Counsel must be qualified, experienced, and generally able to conduct the proposed litigation. *Connor v. Automated Accounts, Inc.*, 202 F.R.D. 265, 269-70 (E.D. Wash. 2001).

The Court, in its order appointing Weston and Marron interim class counsel over another law firm, has already recognized that "there is no question . . . the Weston/Marron counsel have ample experience handling class actions and complete litigation. It is also clear that both have particular familiarity with suits involving issues of mislabeling and the food industry. Even more specifically, both firms seem to have developed a niche expertise in litigation centered on trans fat." *Chacanaca v. Quaker Oats Co.*, 2011 U.S. Dist. LEXIS 65023, at *8-9 (N.D. Cal. June 14, 2011) Class Counsel are experienced class action litigators, whose qualifications are set forth in their accompanying declarations. *See* Weston Decl. ¶¶ 2-6, Ex. 2. Furthermore, the Representative Plaintiffs' interests are aligned with the interests of the Class. They are average consumers who purchased the Products for personal and household use in retail locations.

### 5.    The Settlement Class Satisfies the Requirements of Rule 23(b)(2).

Rule 23(b)(2) requires that (1) "the party opposing the class has acted or refused to act on grounds that apply generally to the class," and (2) "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

This case meets both of these requirements. *First*, Defendant is alleged to have labeled its Products in a false and misleading manner that affected all Class Members in the same way. All Class Members purchased Products containing the allegedly misleading statements from third-party retailers. *Second*, the injunctive relief provided by the Settlement Agreement is appropriate for all Class Members. The Parties have agreed, after extensive negotiations and with the help of a mediator, that forward-looking relief that will provide all Class Members—and the general public—with PHO-free versions of the Products for at least ten years is desirable and reasonable under the circumstances.

Courts have held that class certification was proper under Rule 23(b)(2) in similar cases. *See, e.g.*, *Red v. Unilever United States*, Doc. 163, No. 10-cv-387 (N.D. Cal.) (certifying Rule 23(b)(2) class where defendant agreed to eliminate *trans* fats in product as injunctive relief, in exchange for release of all claims).

---

11

C.     **The Proposed Form and Method of Class Notice Is Adequate and Satisfies the Requirements of Rule 23.**

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also* Fed. R. Civ. P. 23(e)(1). Class notice also must satisfy Rule 23(c)(2)(b), which provides that the notice must clearly and concisely state the following in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed notice program in this case is designed to reach the Class Members by publication in USA Today (twice) and Prevention Magazine. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 ("the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action and the [settlement]" (citing Fed. R. Civ. P. R. 23(c)(2)(B)'s requirement that class members are entitled to the "best notice practicable under the circumstances")); *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 114451, at *6-7 (S.D. Cal. Sept. 5, 2008) (summary notice in *USA Today*, with national distribution further directing class members to a settlement website, was the best notice practicable under the circumstances); *see also Manual* § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort."). In addition, the notice plan is comparable to those used in other cases involving PHOs. *See Yoo v. Wendy's Int'l, Inc.*, Doc. 69, No. 2:07-cv-04515 (C.D. Cal.) (notice in *USA Today* accompanied by downloadable notice); *Red v. Unilever United States*, No. 10-cv-387, Doc. 146 (N.D. Cal.) (same); *see also In re Nucoa Real Margerine Litig.*, No. 10-cv-927, Docs. 132, 139 (C.D. Cal.) (English-language notice only in *USA Today*, additional notice in Spanish in Spanish-language newspapers). The Summary Notice and Long Form Notice are written in plain, easily understood language and contain the information required by Rule 23(c)(2)(B). *See* Settlement Agreement Exs. A & B. Accordingly, the Notice and Notice Plan should be approved.

12

## V.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement Agreement, the following is the proposed schedule for key events:

| Event | Date |
|---|---|
| Publication of Summary Notice | Publication of the Summary Notice pursuant to the Notice Plan must be completed within 30 days of the Preliminary Approval Order. |
| Publication of Long Form Notice | The Long Form Notice will be made available on the Class Settlement Website no later than the first date of publication of the Summary Notice. |
| Deadline for Class Counsel to file Fee Application and Request for Incentive Awards | 45 Days prior to the Fairness Hearing |
| Deadline for Class Members to file Requests for Exclusion or Objections | 30 Days prior to the Fairness Hearing |
| Deadline for objecting Class Members to file notice of intent to appear at the Fairness Hearing | 30 Days prior to the Fairness Hearing |
| Deadline for the Parties to file responses to Objections | 7 Days prior to the Fairness Hearing |
| Deadline for Class Action Administrator to file list of timely Requests for Exclusion | 7 Days prior to the Fairness Hearing |
| Deadline for Defendant to file certification that notice was provided pursuant to the Class Action Fairness Act | Prior to the Fairness Hearing |
| Deadline for Plaintiffs to file Motion for Final Approval | Date set by Court |
| Final Approval Hearing | Date set by Court |

## VI.    CONCLUSION

The proposed Settlement is fair, reasonable, and adequate, and falls well within the range for possible approval. Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an order substantially in the form of the accompanying [Proposed] Preliminary Approval Order.

Dated: December 23, 2013

Respectfully submitted,

*/s/ Gregory S. Weston*
Gregory S. Weston
greg@westonfirm.com

**THE WESTON FIRM**
GREGORY S. WESTON
JACK FITZGERALD
MELANIE PERSINGER
1405 Morena Blvd, Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
SKYE RESENDES
ALEXIS WOOD
651 Arroyo Drive
San Diego, CA 92103
Telephone:     (619) 696-9006
Facsimile:     (619) 564-6665

*Interim Class Counsel*

*In re Quaker Oats Labeling Litigation*, Case No: 5:10-cv-0502 RS
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT