1  Amy X. Yang
   6005 Ridge View Drive
2  Alexandria, VA 22310
3  Voice: (410) 207-8745

4  *Pro Se*

5                        UNITED STATES DISTRICT COURT
6
                      NORTHERN DISTRICT OF CALIFORNIA
7
                          SAN FRANCISCO DIVISION
8

9  IN RE QUAKER OATS LABELING            Case No. 5:10-cv-00502-RS
   LITIGATION
10                                       **OBJECTION OF AMY X. YANG**

11
                                         Date:       June 26, 2014
12                                       Time:       1:30 p.m.
                                         Courtroom:  3
13 AMY X. YANG,                          Judge:      Hon. Richard Seeborg

14            Objector.

15

16

17

18

19

20

21

22

23

24

25

26

27      ○

28

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................II

TABLE OF AUTHORITIES......................................................................................................... III

INTRODUCTION ...........................................................................................................................1

I.     I AM A MEMBER OF THE CLASS. ............................................................................... 2

II.    THE CLASS CANNOT BE CERTIFIED UNDER RULE 23(B)(2)...................................2

       A.     This class cannot be certified under (b)(2) because of the monetary components at
              stake.......................................................................................................................... 4

              1.     Monetary claims predominate from the perspective of the class and its
                     representatives.............................................................................................. 6

              2.     Monetary claims predominate from the perspective of the claims asserted in
                     the complaint. ............................................................................................... 9

              3.     Monetary claims predominate from the perspective of the release. ............11

              4.     Predominance is not a matter of class counsel's subjective preferences; they
                     cannot circumvent (b)(2)'s prerequisites by settling for injunctive relief......11

       B.     Allowing a right of opt-out does not cure the certification defect. ............................12

III.   EVEN IF THE PROPOSED CERTIFICATION COMPLIED WITH RULE 23(B)(2),
       THIS SETTLEMENT IS NOT FAIR. ..............................................................................13

       A.     The ensemble of attorneys' fees and incentive award provisions signal a self-dealing
              settlement .................................................................................................................16

       B.     The release is overbroad. ..........................................................................................25

CONCLUSION .............................................................................................................................27

**TABLE OF AUTHORITIES**

**Cases**

*Aho v. Americredit Fin. Servs.*, No. 10-cv-1373, 2011 WL 3047677, 2011 U.S. Dist. LEXIS 80426 (S.D. Cal. Jul. 25, 2011)..................................................................................................10

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998).............................................4, 10

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..............................................................3, 13

*Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828 (9th Cir. 2011) .................................19

*Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466 (S.D. Ohio. 2001) ....................................11

*Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2012).............................................13

*Blackman v. District of Columbia*, 633 F.3d 1088 (D.C. Cir. 2011) .......................................4, 8

*Bohn v. Boiron, Inc.*, 2013 WL 3975126, 2013 U.S. Dist. LEXIS 107928 (N.D. Ill. Aug. 1, 2013) .......................8

*Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000) .................................... 7, 11, 12

*Bond v. Ferguson.*, 2011 WL 284962 (E.D. Cal. Jan. 25, 2011)...............................................26

*Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331 (4th Cir. 1998) ...............................25

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)...............................................................................7

*Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000) ...................................................7

*Casa Orlando Apts., Ltd. v. Fannie Mae*, 624 F.3d 185 (5th Cir. 2010)...................................8

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007) ...................................8

*Charrons v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221 (S.D.N.Y. 2010)...............................7

*Cholakyan v. Mercedes-Benz USA, LLC.*, 281 F.R.D. 534 (C.D. Cal. 2012)............................7

*Christ v. Beneficial Corp.*, 547 F.3d 1292 (11th Cir. 2008) ......................................................9

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)...................................14-15

*Crawford v. Equifax Payment Servs.*, 201 F.3d 877 (7th Cir. 2000). ................... 9, 11, 20-21, 24

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011) ...........................25

*Custom LED, LLC v. eBay, Inc.*, 2013 WL 4552789, 2013 U.S. Dist. LEXIS 122022 (N.D. Cal. Aug. 27, 2013) ...........................................................................................................27

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)........................................18

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012).......................................................14, 17, 20

| | |
|---|---|
| 1 | *Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401 (9th Cir. 1989). ........................................................3 |
| 2 | *Doninger v. Pacific Northwell Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977).........................................................10 |
| 3 | *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011). ......................................................................11 |
| 4 | *Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995) ...........................................................................................12 |
| 5 | *Felix v. Northstar Location Servs.*, 290 F.R.D. 397 (W.D.N.Y. 2013) ..........................................................7, 21 |
| 6 | *Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2012 U.S. Dist. LEXIS 116526 (N.D. Cal. Aug. 17, 2012).......................................................................................................................................................... 20, 21, 26 |
| 7 | |
| 8 | *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825 (9th Cir. 2001).................................................................19 |
| 9 | *Gunnells v. Healthplan Servs.*, 348 F.3d 417 (4th Cir. 2003)..............................................................................3 |
| 10 | *Haggart v. Endogastric Solutions Inc.*, No. 10-cv-346, 2012 U.S. Dist. LEXIS 89767 (W.D. Pa. Jun. 28, 2012) .................................................................................................................................................7 |
| 11 | *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..........................................................................14, 21 |
| 12 | *Hecht v. United Collection Bureau*, 691 F.3d 218 (2d Cir. 2012)............................................................ 6, 8, 9, 11 |
| 13 | *Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010)...........................................................................................26 |
| 14 | *Hodgers-Durgin v. de la Vina*, 199 F.3d 1045 (9th Cir. 1999) ...........................................................................8 |
| 15 | *Holmes v. Continental Can Co.*, 706 F.3d 1144 (11th Cir. 1983) ......................................................................4 |
| 16 | *Huber v. Taylor*, No. No. 002-304, 2011 WL 4553154, 2011 U.S. Dist. LEXIS 111704 (W.D. Pa. Sept. 29, 2011) ...........................................................................................................................................10 |
| 17 | |
| 18 | *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ......................................................................22 |
| 19 | *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)..............................................*passim* |
| 20 | *In re Cmty. Bank of N. Va. & Nat'l Bank of Tallahassee Second Morg. Litig.*, 418 F.3d 277 (3d Cir. 2005)...........................................................................................................................................................16 |
| 21 | *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ...................................................................*passim* |
| 22 | *In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d. Cir. 1995) .....................................5, 12, 17 |
| 23 | *In re Hotel Tel. Charges*, 500 F.2d 86 (9th Cir. 1974)........................................................................................13 |
| 24 | *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ...........................................................14, 17, 22 |
| 25 | *In re Katrina Canal Breaches Litig*, 628 F.3d 185 (5th Cir. 2010) ..................................................................18 |
| 26 | *In re Livingsocial Mktg. and Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059 (D.D.C. Mar. 22, 2013)...................................................................................................20 |
| 27 | |
| 28 | *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).........................................................2 |
| | *In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004) ..................................................................11-12 |

Case No. 5:10-cv-00502-RS          iv

OBJECTION OF AMY X. YANG

*In re Oracle Secs. Litig.*, 132 F.R.D. 538 (N.D. Cal. 1990) ............................................................ 20

*In re Teletronics Pacing Sys. Inc.*, 221 F.3d 870 (6th Cir. 2000) ...................................................... 12

*Janes v. Triborough Bridge & Tunnel Auth.*, No. 06 Civ. 1427, 2011 U.S. Dist. LEXIS 115831
(S.D.N.Y. Oct. 4, 2011) ............................................................................................................ 10

*Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774, 2007 U.S. Dist. LEXIS
47515 (N.D. Cal. Jun. 19, 2007) .......................................................................................... 15, 26

*Keirsey v. Ebay, Inc.*, No. 12-cv-01200-JST, 2014 U.S. Dist. LEXIS 21371 (N.D. Cal. Feb. 18,
2014) ........................................................................................................................................... 22

*Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16 (D.D.C. 2012) ................................................. 11

*Kumho Tire Co. v. Carmichael.*, 526 F.3d 137 (1999) ....................................................................... 18

*Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) ...................................... 25

*Lusby v. Gamestop, Inc.*, 2013 WL 1210293, 2013 U.S. Dist. LEXIS 41794 (N.D. Cal. Mar. 25,
2013) ........................................................................................................................................... 26

*Manchouck v. Mondelez Int'l Inc.*, No. C 13-02148 WHA, 2013 U.S. Dist. LEXIS 80132 (N.D.
Cal. Jun. 3, 2013) ...................................................................................................................... 26

*Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832 (9th Cir. 1976) ....................................... 1

*Martinez v. Realogy Corp.*, No. 3:10-cv-00755-RCJ-VPC, 2013 U.S. Dist. LEXIS 155659 (D.
Nev. Oct. 29, 2013) ................................................................................................................... 26

*Mazza v. Am. Honda Co.*, 666 F.3d 581 (9th Cir. 2012) ................................................................. 13

*McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545 (5th Cir. 2003) ................................................... 7

*McNair v. Synapse Group, Inc.*, 672 F.3d 213 (3d Cir. 2012) ........................................................... 8

*Mogel v. UNUM Life Ins. Co. of Am.*, 646 F. Supp. 2d 177 (D. Mass. 2009) .................................. 7

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ............................................................... 3, 11, 14, 17

*Monreal v. Potter*, 367 F.3d 1224 (10th Cir. 2004) ........................................................................... 9

*Morgan v. Wallaby Yogurt Co.*, 2014 U.S. Dist. LEXIS 34548 (N.D. Cal. Mar. 13, 2014) ............ 8

*Morrow v. Washington*, 277 F.R.D. 172 (E.D. Tex. 2011) .............................................................. 10

*Murray v. GMAC*, 434 F.3d 648 (7th Cir. 2006) ............................................................................ 24

*Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357 (N.D. Ill. Jan. 3, 2014) ......... 20

*Pileggi v. Wells Fargo Bank, N.A.*, No. C 12-01333 WHA, 2013 U.S. Dist. LEXIS 115817 (N.D.
Cal. Aug. 14, 2013) ..................................................................................................................... 7

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) ........................................ 2, 13

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ............................................................................... 9

*Otey v. Crowdflower, Inc.*, No. 12-cv-05524-JST, 2014 U.S. Dist. LEXIS 52192 (N.D. Cal. Apr. 15, 2014)............................................................................................................................................26

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013)................................................24

*Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639 (6th Cir. 2006).............................................4, 9

*Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006) .........................................................9

*Richardson v. L'Oreal USA, Inc.*, __F. Supp. 2d__, 2013 WL 5941486 (D.D.C. Nov. 6, 2013)....................*passim*

*Ries v. Ariz. Bevs. United States LLC, Hornell Brewing Co..*, 287 F.R.D. 523 (N.D. Cal. 2012) ...............4, 5, 10, 12

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013) ...................................................................3

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .........................................................25

*Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................9

*Shook v. Bd. of Cnty. Comm'rs.*, 543 F.3d 597 (10th Cir. 2008) ........................................................4

*Silber v. Mabon*, 957 F.2d 697 (9th Cir. 1992) .....................................................................................3

*Sobel v. Hertz*, No. 3:06-CV-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011)..........................................................................................22, 23

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003). .............................................................15, 16, 20, 24

*Stoneback v. ArtsQuest.*, 2013 WL 3090714, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. Jun. 19, 2013)..........................................................................................................................................7

*Synfuel Tech. Inc. v. DHL Express*, 463 F.3d 646 (7th Cir. 2006) .................................................20-21

*Toomey v. Nextel Communs., Inc.*, 2004 WL 5512967, 2004 U.S. Dist. LEXIS 30793 (N.D. Cal. Sept. 23, 2004)........................................................................................................................19

*True v. American Honda Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010)........................................14, 20

*United States v. Artero*, 121 F.3d 1256 (9th Cir. 1997).......................................................................19

*United States v. City of New York*, 276 F.R.D. 22 (E.D.N.Y. 2011)....................................................12

*Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071 (C.D. Ill. 2012) ................................................21

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) .......................................12-13

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .............................................................*passim*

*Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991).....................................22

*Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 U.S. Dist. LEXIS 151180 (N.D. Cal. Oct. 21, 2013)...........................................................................................................................22

*Zapeda v. Paypal.*, No. C 10-2500 SBA, 2014 U.S. Dist. LEXIS 24388 (N.D. Cal. Feb. 24, 2014) .........................................................................................................................................9, 27

## Rules and Statutes

Fed. R. Civ. P. 23.................................................................................................................................*passim*

Fed. R. Civ. P. 23(a)(4) ...............................................................................................................25, 27

Fed. R. Civ. P. 23(b)(2)...............................................................................................................*passim*

Fed. R. Civ. P. 23(b)(3) .............................................................................. 2, 3, 9, 11, 12, 13

Fed. R. Civ. P. 23(e) ...................................................................................................................*passim*

Fed. R. Civ. P. 23(e)(2) ...............................................................................................................13, 16

Fed. R. Civ. P. 23(g)(4) ...............................................................................................................25, 27

## Other Authorities

Adivsory Committee Notes, 39 F.R.D. 98 (1966)................................................................................. 8

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(c) (2010)...................... 14

Brickman, Lester, LAWYER BARONS (2011) ...................................................................................... 23

*Comments of the Competitive Enterprise Instiute Regarding the Tentative Determination Regarding Partially Hydrogenated Oils, available at* http://cei.org/regulatory-comments-and-testimony/comments-fda-trans-fats (Mar. 11, 2014) ................................................................... 18-19

Decker, Eric, *Impact and Consequences of Banning Trans Fatty Acids,* http://foodtecheperspective.wordpress.com/2013/11/13/the-impact-and-consequences-of-banning-trans-fatty-acids/ (Nov. 13, 2013). ................................................................ 18

Federal Judicial Center, *Manual v. Complex Litigation* §21.612 (4th ed. 2004) ......................................5, 14

http://www.heart.org/HEARTORG/GettingHealthy/FatsAndOils/Fats101/Fats-and-Oils-AHA-Recommendation_UCM_316375_Article.jsp .................................................................. 19

Issacharoff, Samuel, *Preclusion, Due Process, and the Right ot Opt Out of Class Actions,* 77 NOTRE DAME L. REV. 1057 (2002)..............................................................................................................5, 11

Eisenberg, Theodore & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class ACtion Litigation: Theoretical and Empirical Issues,* 57 VAND. L. REV. 1529 (2004). ........................................... 12

Lahav, Alexandra D., *Symmetry and Class Action Litigation,* 60 UCLA. L. REV. 1494 (2013)................................ 12

Leslie, Christopher R., *The Significance of Silence: Collective Action Problems and Class Action Settlements,* 59 FLA L. REV. 71(2007) .............................................................................................. 15

Silver, Charles, *Due Process and the Lodestar Method,* 74 TUL. L. REV. 1809 (2000) ...................................... 23

Wolfman, Brian, *Judges! Stop Deferring to Class-Action Lawyers,* 2 U. MICH J. L. REFORM 80 (2013)...................... 15

# INTRODUCTION

In structure and design, the proposed settlement is a close cousin of those that have been forcefully repudiated by the Ninth Circuit in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ("*Bluetooth*"), by the Sixth Circuit in *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ("*Pampers*"), and by the District Court for the District of Columbia in *Richardson v. L'Oreal USA, Inc.*, __F. Supp. 2d__, 2013 WL 5941486 (D.D.C. Nov. 6, 2013) (Bates, J.). As in *Bluetooth*, *Pampers*, and *Richardson*, the settlement's provisions sustain class counsel, the named representatives and the defendant, but disserve class members by waiving their claims in exchange for valueless labeling and other injunctive changes that only benefit *future* customers. The settling parties appear to subscribe to the core "fictive" premises rejected by *Pampers*:

(1) a belief that class counsel's "fiduciary obligations" run to the public rather than to the actual class members. *Contrast* Plaintiffs' Corrected Mem. of Points and Authorities in Support of Motion for Attorneys' Fees "Fee Memo" (Dkt. 189) at 4-7 (designating class counsel as "true attorney (sic) generals (sic)") *with Pampers*, 724 F.3d at 718; *and Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976) ("The class [as an entity] is not the client. The class attorney continues to have responsibilities to each individual member of the class even when negotiating a settlement.");

(2) a belief that former purchasers care about "every square centimeter" of the defendant's prospective labeling and other alterations to Quaker's future business practices. *Contrast* Fee Memo at 15 (touting an "excellent result for the Class"); *with Pampers*, 724 F.3d at 720; *and Richardson*, 2013 WL 5941486, at *13 (referring to prospective labeling changes, that removed any possibility of continued deception, as a class benefit of "precisely nothing"); and

(3) an ignorance of the "economic reality" that fees cannot be divorced from settlement fairness simply by segregating the fee fund and the negotiation. *Contrast* Fee Memo 7-8 *with Pampers*, 724 F.3d at 717-18; *Bluetooth*, 654 F.3d at 948-49; *and Richardson*, 2013 WL 5941486, at *13.

To compound the substantive unfairness of the settlement itself, the agreement proposes an improper Rule 23(b)(2) certification, under which class members' monetary claims are released without the

full panoply of Rule 23(b)(3)'s safeguards.[1] Where a class of past purchasers assert individualized consumer protection claims for monetary relief, "Rule 23(b)(3) [is] the only conceivable vehicle." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011). Even measuring the propriety of the certification by the relief obtained in the settlement agreement, the (b)(2) certification still fails because the relief does not "perforce affect the entire class at once." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011). Rather, as the settlement self-consciously acknowledges, certain members of the class purchased products that "no longer contain or never contained [partially hydrogenated oil ingredients]." Settlement ¶4.1.2. This intra-class conflict is fatal to the necessary cohesiveness of a (b)(2) class. *See Richardson*, 2013 WL 5941486, at *12.

## I.    I am a member of the class.

I am a United States resident. Declaration of Amy X. Yang ("Yang Decl.") ¶3. Over the last eight years, I have purchased multiple Quaker Products covered by this settlement agreement. *Id.* I am therefore a member of the settlement class with standing to object to the settlement. Fed. R. Civ. P. 23(e)(5).

My address is 6005 Ridge View Drive, Alexandria, VA and my phone number is (410) 207-8745. My email address is axyang@gmail.com. Yang Decl. ¶ 2. Because of the expense of flying cross country, I currently do not intend to appear at the fairness hearing. I join the objections of any other objectors or *amici* to the extent those objections are consistent with this one.

## II.    The class cannot be certified under Rule 23(b)(2).

"Class-action settlements are different from other settlements." *Pampers*, 724 F.3d at 715. "[I]n class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class. Instead, the law relies upon the fiduciary obligations of the class representatives and, especially, class counsel, to protect those interests. And that means the courts must carefully scrutinize whether those fiduciary obligations have been met." *Id.* at 718. (internal quotation omitted). Thus, through its oversight responsibility, the court itself assumes a derivative fiduciary obligation to the class. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994–95 (9th Cir. 2010) (A district court must act as a "fiduciary for the class," "with a jealous regard" for the rights and interests of

---

[1] I recognize that the settlement affords class members the right of exclusion. *See* Settlement (Dkt. 168-1) ¶9.3. While this is a vital component of Rule 23's procedural protections, it is not alone sufficient when monetary claims are at stake. *See infra* § II.

absent class members.) (internal quotation and citation omitted); *accord Silber v. Mabon,* 957 F.2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a duty to protect the interests of absent class members."); *Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members"); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 623 (1997) ("Rule 23(e) protects unnamed class members from 'unjust or unfair settlements' agreed to by 'fainthearted' or self-interested class 'representatives.'")).

This judicial duty to vouchsafe the rights of the absent plaintiffs extends to the decision to grant class certification, obliging district courts to conduct a "rigorous analysis" to ensure compliance with the Rule 23 certification prerequisites. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). A proponent of class certification "must affirmatively demonstrate his compliance with the Rule." *Id.*

Aside from trial manageability concerns, that burden is no lighter when the Court is confronted with a settlement-only class certification. In fact, the specifications of rules Rule 23(a) and (b)(2) are "designed to protect absentees by blocking unwarranted or overbroad class definition" and "demand undiluted, even heightened, attention in the settlement context." *Amchem,* 521 U.S. at 620; *Pampers,* 724 F.3d at 721 ("These requirements are scrutinized more closely, not less, in cases involving a settlement class"); *Molski v. Gleich,* 318 F.3d 937, 953 (9th Cir. 2003) (similar); *Rodriguez v. Nat'l City Bank,* 726 F.3d 372, 380 (3d Cir. 2013) (the "policy in favor of voluntary settlement does not alter the 'rigorous analysis' needed to ensure that the Rule 23 requirements are satisfied."). Put another way, "it is not the mission of Rule 23(e) to supply the cohesion that legitimizes a settlement-only class action." *Gunnells v. Healthplan Servs.,* 348 F.3d 417, 451 (4th Cir. 2003) (Niemeyer, J., concurring in part and dissenting in part).

Fed. R. Civ. P. 23(b)(2) allows a class action to be maintained if 23(a)(1)-(4) are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2), however, lacks several vital protections attending class members in a (b)(3) class including judicial inquiries into whether common questions predominate over individual ones (*i.e.* the "predominance" requirement) and whether the class action device is superior to other available methods of resolution (*i.e.* the "superiority" requirement). Given this state of affairs, courts should be even more vigilant in their

OBJECTION OF AMY X. YANG

enforcement of the boundaries of (b)(2) classes. The most potent textual limitation is the requirement that "final injunctive or corresponding declaratory relief [be] appropriate with respect to the class as a whole." Fed R. Civ. P. 23(b)(2); *Wal-Mart*, 131 S. Ct. at 2560 ("[T]he validity of a (b)(2) class depends on whether final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole*.") (quoting Rule 23(b)(2) and adding emphasis).

Two notable consequences follow from this textual prescription. First, (b)(2) classes are not suitable for asserting monetary claims that accrue on an individual basis. *Wal-Mart*, 131 S. Ct. at 2557 ((b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."). Second, the text entails that "cohesiveness is a significant touchstone of a (b)(2) class."[2] The putative class here lacks cohesiveness and asserts individualized monetary claims, each of which precludes (b)(2) certification.

## A.   This class cannot be certified under (b)(2) because of the monetary components at stake

Although *Wal-Mart* disclaimed the significance of "predominating" injunctive claims,[3] even if the opinion is read most narrowly—to adopt the *Allison*[4] standard and permit non-individualized, incidental

---

[2] *Blackman v. District of Columbia*, 633 F.3d 1088, 1094 (D.C. Cir. 2011) (Brown, J., concurring) (citing *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 & n.18 (3d Cir. 1998)); *Accord Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 n.8 (11th Cir. 1983) ("At base, the (b)(2) class is distinguished from the (b)(3) class by class cohesiveness. . . . Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries. The members of a (b)(2) class are generally bound together through 'preexisting or continuing legal relationships' or by some significant common trait such as race or gender") (internal quotation omitted); *Shook v. Bd. of Cnty. Comm'rs*, 543 F.3d 597, 604 (10th Cir. 2008) ("Rule 23(b)(2) demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification."); *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639 (6th Cir. 2006) ("homogeneity of interests" is what justifies (b)(2) class treatment); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998) ("Because of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group ... ."). *But see Ries v. Ariz. Bevs. United States LLC, Hornell Brewing Co.*, 287 F.R.D. 523, 541 (N.D. Cal. 2012) (expressing doubt about whether there is a cohesiveness requirement inherent in (b)(2)).

[3] *See Wal-Mart*, 131 S. Ct. at 2559 ("The mere "predominance" of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protections: It neither establishes the superiority of *class* adjudication over *individual* adjudication nor cures the notice and opt-out problems. We fail to see why the Rule should be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request—even a "predominating request"—for an injunction.")

1  monetary relief within a constitutionally-viable (b)(2) class—this settlement cannot meet that standard.[5] "At
2  a minimum" *Wal-Mart* affirmatively commands courts to avoid certifying "claims for individualized relief"
3  within (b)(2) classes. 131 S. Ct. at 2557; *Ries*, 287 F.R.D. at 541 ((b)(2) certification cannot lie where class
4  members "would be entitled to an individualized award of monetary damages.") (quoting *Wal-Mart*, 131 S.
5  Ct. at 2557). As such, it makes sense to evaluate the nature of the money damages claims at stake in this
6  settlement under the minimum threshold test of *Wal-Mart*. Do the monetary claims accrue to the class as a
7  whole (*i.e.* are they incidental?) or do they accrue to individual class members (*i.e.* are they predominating?)?

8  The predominance inquiry is made less tractable by the fact that the plaintiffs and defendants seek
9  certification of a settlement-only class. Delaying certification until settlement poses various problems, *see In re*
10 *Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786-800 (3d Cir. 1995) ("*GM*
11 *Trucks*"), and calls for heightened judicial scrutiny of the settlement and certification. *Id.* at 807; *accord Pampers*,
12 724 F.3d at 721; *Bluetooth*, 654 F.3d at 946-47; Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION §
13 21.612 (4th ed. 2004).

14 In the context of a 23(b)(2) settlement, however, the analytical problems are all the more
15 pronounced, because of the added difficulty in determining whether monetary relief is incidental. If this class
16 was being certified for trial, the (b)(2) analysis would be a comparatively easy matter of two steps: (1) look to
17 the complaint and determine whether any monetary relief sought is incidental and thus non-predominant;
18 and (2) make sure that the class has the requisite cohesiveness and homogeneity. Alternatively, this second
19 inquiry can be conceived of as asking whether the injunctive relief predominates from the perspective of the
20 class and whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the

21

22  [4] 151 F.3d 402 (5th Cir. 1998). *Allison* announced the renowned "incidental damages" formulation of
    when monetary claims could be encompassed within a (b)(2) certification. Incidental damages are those "that
23  flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or
24  declaratory relief." *Wal-Mart*, 131 S. Ct. at 2560 (quoting *Allison*, 151 F.3d at 415).

25  [5] It suffices to say that the claims here are not group-based, but are compensatory ones that accrued
    to individuals under the laws of various states upon the purchase of goods. *See* Samuel Issacharoff, *Preclusion,*
26  *Due Process, and the Right to Opt Out of Class Actions*, 77 NOTRE DAME L. REV. 1057, 1073 (2002) (noting "an
    important distinction in the nature of the claim between those that truly inhere in the collective entity of the
27  class and those that are merely an aggregation of what might otherwise be self-sustaining individual causes of
28  action."). For the sake of completeness, however, see the remainder of this section.

class as a whole."[6] But because this is a settlement class, two new factors complicate the equation: (3) the actual relief obtained in the settlement; and (4) the claims released in the settlement. *See Hecht v. United Collection Bureau*, 691 F.3d 218, 223-24 (2d Cir. 2012) (explaining how to discern "predominance" in a (b)(2) settlement class and focusing on the "retrospective" class definition to find that certification was improper).

This Court should not certify the class if any of the above factors weigh against (b)(2) certification. From the perspective of due process, however, it is the settlement's release that is the vehicle for deprivation of an absent class member's right to sue. Thus, it stands to reason that when certifying a (b)(2) settlement class, the court should ensure that the release does not burden non-incidental monetary claims.

Ultimately here, the composition of the class, the type of claims class members possess, and the claims they will release, all lead to the inescapable conclusion that monetary claims predominate. The parties may not end-run this conclusion by settling for non-compensatory injunctive relief.

### 1. Monetary claims predominate from the perspective of the class and its representatives.

The fact that monetary claims predominate (and (b)(2) certification is inappropriate) is apparent from the class definition. The class is defined as "all persons...who *purchased* one or more of the Products...during the period February 3, 2006 through the Opt-Out Date." Settlement (Dkt. 168-1) ¶8.1 (emphasis added). Cohesive classes coalesce behind a common—usually forward-looking—interest that makes appropriate the granting of final injunctive or corresponding declaratory relief. No such interest exists here. In this case there is a discontinuity between the class definition (former buyers) and the prospective injunctive relief obtained in the settlement. Settlement ¶4.1 *et seq.* All settlement relief at most benefits future purchasers of Quaker products whereas the class comprises past purchasers.

*Hecht* demonstrates how attempting (b)(2) certification is futile: when class members are "victims of a completed harm with no reference to ongoing injury or risk of future harm," when the class definition "ensure[s] that every member would be entitled to damages, but not that every member would have standing to seek injunctive relief," (b)(2) certification is improper. 691 F.3d at 223-24. *Hecht* follows a wide consensus of courts that have rejected past attempts at shoehorning former customers, ex-employees, or any individuals who suffered a discrete harm in the past and who no longer have an ongoing relationship into 23(b)(2)

---

[6] Fed. R. Civ. P. 23(b)(2); *Wal-Mart*, 131 S. Ct. at 2560.

1 classes that offer prospective injunctive relief. *See e.g., Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010);
2 *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 553 (5th Cir. 2003); *Bolin v. Sears, Roebuck & Co.*, 231 F.3d
3 970, 978 (5th Cir. 2000); *Charrons v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010); *Mogel v.*
4 *UNUM Life Ins. Co. of Am.*, 646 F. Supp. 2d 177, 184 (D. Mass 2009) ("[W]eighing the relative predominance
5 of relief sought is unnecessary where class members do not stand to benefit from the injunctive relief sought:
6 Of course, certification under rule 23(b)(2) is appropriate only if members of the proposed class would
7 benefit from the injunctive relief they request.") (quotation omitted).

8 > If any doubt remained, after *Wal-Mart* it cannot:
9 >> "[E]ven though the validity of a (b)(2) class depends on whether "final
>> injunctive relief or corresponding declaratory relief is appropriate respecting
10 >> the class *as a whole*," about half the members of the class approved by the
>> Ninth Circuit have no claim for injunctive or declaratory relief at all. Of
11 >> course, the alternative (and logical) solution of excising plaintiffs from the
>> class as they leave their employment may have struck the Court of Appeals as
12 >> wasteful of the District Court's time." [*Wal-Mart*, 131 S.Ct. at 2560.]

13 Post-*Wal-Mart*, courts frequently deny (b)(2) certifications that are inconsonant by defining classes
14 retrospectively as those who engaged in discrete transactions with the defendant. *See e.g., Pileggi v. Wells Fargo*
15 *Bank, N.A.*, No. C 12-01333 WHA, 2013 U.S. Dist. LEXIS 115817, at *12 (N.D. Cal. Aug. 14, 2013) ("[T]he
16 record does not demonstrate whether there is any likelihood that they will have further interactions with
17 Wells Fargo....Injunctive relief would not provide them with any benefit."); *Stoneback v. ArtsQuest*, 2013 WL
18 3090714, 2013 U.S. Dist. LEXIS 86457, at *37 (E.D. Pa. Jun. 19, 2013) (denying (b)(2) certification for class
19 of past purchasers of beer steins); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 559 (C.D. Cal.
20 2012) ("[N]o single declaration or injunction sought would benefit the class as a whole....[T]he class includes
21 former owners of class vehicles who will not benefit from declaratory or injunctive relief."); *Felix v. Northstar*
22 *Location Servs.*, 290 F.R.D. 397, 406 (W.D.N.Y. 2013) (denying (b)(2) certification where class was defined as
23 those who had "*received*" telephonic messages in the past) (emphasis in original); *Haggart v. Endogastric Solutions,*
24 *Inc.*, No. 10-cv-346, 2012 U.S. Dist. LEXIS 89767, at *20 (W.D. Pa. Jun. 28, 2012) ("Even more essentially
25 fatal to his motion for certification under (b)(2) is that Plaintiff only seeks to enjoin Defendant from making
26 representations to future potential EsophyX procedure patients; i.e., to individuals *who are not members of the*
27 *class* as defined.") (emphasis in original).

28 > Certainly, a 23(b)(2) class is appropriate when the class is composed of individuals who maintain an

ongoing relationship with the defendant. The prototypical example is a desegregation injunction in a civil rights case. *See* Advisory Committee Notes, 39 F.R.D. 98, 102 (1966). "While (b)(2) classes are not exclusively reserved for civil rights disputes, this class type is especially suited for those plaintiffs." *Casa Orlando Apts., Ltd. v. Fannie Mae*, 624 F.3d 185, 200-201 (5th Cir. 2010). But when the only shared characteristic amongst class members is that they have purchased Quaker products on at least one occasion since 2006, the requisite homogeneous interests necessary to cohere a class around injunctive relief are not present. "[A]t some level of abstraction, a degree of cohesion will exist in almost any putative class," but fundamentally "the question is not one of fault but one of remedy." *Blackman*, 633 F.3d at 1094.[7] Some class

---

[7] The problem of mismatch between (b)(2) and the class is compounded here by the fact there's at least an argument that the named plaintiffs themselves have no standing to seek injunctive relief. Regardless of whether the underlying statutes permit injunctive relief, injunctions are "unavailable…where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Hecht*, 691 F.3d at 223-24 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Here, according to the Complaint, all the named plaintffs "purchas*ed*" the defendant's products. Complaint ¶¶18-21 (emphasis added). Like the class, they suffered discrete individuated harms in the past. But, perhaps unlike some putative class members, they are now aware, that the certain of the Quaker products do indeed contain the partially hydrogenated vegetable oils that made the advertising allegedly deceptive. "[T]he law accords people the dignity of assuming that they act rationally, in light of the information they possess." *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 225 (3d Cir. 2012). Thus, in *McNair*, the Third Circuit held that the named plaintiffs had no standing to seek an injunction against deceptive renewal techniques when they were no longer subscribers at risk of being deceived by that technique. *Id.* at 226-27.

The theory applies seamlessly to consumer claims of false advertising on retail products. *See, e.g., Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) (*sua sponte* raising lack of standing to seek injunction on false advertising claim when plaintiffs knew the truth about defendant's products); *Morgan v. Wallaby Yogurt Co.*, 2014 U.S. Dist. LEXIS 34548, at *18-*21 (N.D. Cal. Mar. 13, 2014) (holding that past purchaser who was unlikely to be deceived again had no standing to seek injunctive relief). In *Morgan*, Judge Orrick observed the widening and shifting intra-district split amongst several judges of this Court on the question. *Id.* at *19-*20; *see also Richardson*, 2013 WL 5941486, at *3-*6 (comprehensively cataloguing the case law on this issue and concluding that standing was satisfied there by likelihood of future harm). Unlike in *Ries* and *Richardson*, the record here contains suggestions that the named plaintiffs would not have purchased the products absent the deceptive labeling. *See* Complaint ¶¶117-124.

The end rule of decision is simple: "Unless the named plaintiffs are themselves entitled to seek injunctive relief they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). *See also Bohn v. Boiron, Inc.*, 2013 WL 3975126, 2013 U.S. Dist. LEXIS 107928, at *8 (N.D. Ill. Aug. 1, 2013) ("[The named plaintiff] cannot rely on the prospect that other consumers may be deceived by [defendant's] product to show that she has standing to pursue injunctive relief."). The doubt about named plaintiffs standing to seek injunctive relief further counsels against a (b)(2) certification.

1   members may again purchase these Quaker products, others may not, and therefore the remedy is not a

2   unitary and indivisible injunction "benefitting all its members at once." *Wal-Mart*, 131 S. Ct. at 2558.

3       But there's another crucial reason that the prospective relief doesn't benefit the class uniformly: as

4   the Settlement admits, various class members didn't even purchase products that contains partially-

5   hydrogenated vegetable oils. Settlement ¶4.1.2. This introduces an insurmountable intraclass conflict for a

6   putative (b)(2) class. *See Richardson*, 2013 WL 5941486, at *12. It's possible that this defective overbroad

7   definition would even doom a (b)(3) certification. *Ortiz v. Fibreboard*, 527 U.S. 815, 857-58 (1999) (holding

8   that it violates the requirement of intraclass equity to intermingle claims of divergent legal value); *Zapeda v.*

9   *Paypal*, No. C 10-2500 SBA, 2014 U.S. Dist. LEXIS 24388, at *20-*21 & n.8 (N.D. Cal. Feb. 24, 2014)

10  (eschewing class of all Paypal users when the harm was limited to those who were subject to a specific

11  practice); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (denying certification to an

12  overbroad class that included "individuals who did not purchase their 20-inch Aluminum iMac, individuals

13  who either did not see or were not deceived by advertisements, and individuals who suffered no damages.").

14      For all the foregoing reasons, a (b)(2) certification does not befit the class.

15              **2.    Monetary claims predominate from the perspective of the claims asserted in**
                        **the complaint.**
16
        In determining whether injunctive relief predominates for (b)(2) purposes, assessing the complaint is
17
    customary procedure in courts across the nation. *E.g., Reeb*, 435 F.3d at 642; *Christ v. Beneficial Corp.*, 547 F.3d
18
    1292 (11th Cir. 2008); *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004). "If recovery of damages is at
19
    the heart of the complaint, individual class members must have a chance to opt out of the class and go it
20
    alone—or not at all." *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006).
21
        Even where the court is dealing with a settlement-only class certification, looking to the complaint is
22
    still advisable. *See Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 223 (2d Cir. 2012) ("The…complaint
23
    requested "the maximum statutory damages" under the FDCPA but failed even to mention injunctive
24
    relief"); *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 881 (7th Cir. 2000) ("Crawford's pleadings sought
25
    certification under Rule 23(b)(3), and the switch to Rule 23(b)(2) was a last-minute change.").*Cf. also.*
26
    *Bluetooth*, 654 F.3d 935, 945 n.8 (comparing the injunctive relief obtained in settlement to the economic
27

28

1    damages relief sought in the complaint).

2         And here, in the Complaint, the plaintiffs designated this very same settlement class as the
3    "Restitution and Damages Class." First Amended Consolidated Complaint (Dkt. 102) ¶132.[8] In their Prayer
4    for Relief, plaintiffs sought disgorgement, restitution, actual damages, punitive damages, and pre and post-
5    judgment interest, all monetary remedies. *See* Complaint, Prayer for Relief (D), (F), (G).[9] As in *Ries*,
6    "Plaintiffs clearly state that the crux of their claims is that [they] paid artificially-inflated prices." *Ries*, 287
7    F.R.D at 541-42. Even though they paired requests for monetary relief with ones for injunctive relief, the
8    monetary claims are non-incidental in the *Wal-Mart* sense of the word because they arise out of individual
9    purchases. *See id.* at 541 ("[P]laintiffs seek individualized awards of monetary restitution which would require
10   individualized assessments of damages based on how many products the class member had bought.").

11        These claims are non-incidental because they are "dependent in significant way[s] on the intangible,
12   subjective differences of each class member's circumstances." *Allison*, 151 F.3d at 415. Compensatory
13   damages/restitution amounts vary with the individual purchase prices and quantity. Thus, in the wake of
14   *Wal-Mart*, courts have uniformly found disgorgement and restitution to be non-incidental. *See, e.g., Morrow v.*
15   *Washington*, 277 F.R.D. 172, 203 (E.D. Tex. 2011) (equitable restitution and compensatory damage claims are
16   not incidental); *Huber v. Taylor*, No. 002-304, 2011 WL 4553154, 2011 U.S. Dist. LEXIS 111704, at *21 n.16
17   (W.D. Pa. Sept. 29, 2011) (refusing to certify a (b)(2) class when: disgorgement...is an individual right of each
18   wronged [class member]"); *Aho v. Americredit Fin. Servs.*, No. 10-cv-1373, 2011 WL 3047677, 2011 U.S. Dist.
19   LEXIS 80426, at *20 (S.D. Cal. Jul. 25, 2011) ("[R]estitutionary relief...is not incidental"); *Janes v. Triborough*
20   *Bridge & Tunnel Auth.*, No. 06 Civ. 1427, 2011 U.S. Dist. LEXIS 115831, at *16 (S.D.N.Y. Oct. 4, 2011)
21   (same). In fact, Circuit law actually predates *Wal-Mart* on this point. *See Doninger v. Pacific Northwest Bell, Inc.*,
22   564 F.2d 1304, 1314 (9th Cir. 1977) (Rule 23(b)(2) not amenable to claims for monetary restitution).

23

24
     ───────────────────────
         [8] They also sought certification of a different unascertainable "Injunctive Relief Class." *Id.*
25
         [9] Even if these considered equitable—as opposed to legal—remedies, a 23(b)(2) certification still
26   could not lie. As the Supreme Court recently made clear in *Wal-Mart*, the proper division in the (b)(2)
     analysis is not between "equitable" claims and "legal" remedies but between "injunctive" and "monetary"
27   ones. *Wal-Mart*, 131 S.Ct. at 2560; *Ries*, 287 F.R.D. at 541 ("whether the monetary relief is understood as
28   legal damages or an equitable remedy is irrelevant to this analysis").

     Case No. 5:10-cv-00502-RS                                                                          10
     OBJECTION OF AMY X. YANG

"The injury alleged is a financial loss due to overcharges resulting from [the mislabeling]. This is economic harm." *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 27 (D.D.C. 2012). The status of the class and class representatives in relationship to the defendant and the claims alleged in the complaint dictate that, if anything, this class should be certified as a 23(b)(3) class. "Individualized money damages belong in Rule 23(b)(3)." *Wal-Mart*, 131 S.Ct at 2558.

### 3.    Monetary claims predominate from the perspective of the release.

Next, a thorough (b)(2) analysis entails examining the preclusive effects that the settling parties intend to foist upon absent class members. Samuel Isaacharoff, *Preclusion, Due Process, and the Right to Opt Out of Class Actions*, 77 NOTRE DAME L. REV. 1057, 1068-73 (2002); *Molski*, 318 F.3d at 950-51 (finding (b)(2) certification improper where the settlement released actual and treble damage claims); *Richardson*, 2013 WL 5941486, at *9 ("[T]he focus here is…whether the judgment will bind absent class members as to their damages claims."). Determining the preclusive effects is easier in the settlement context where the agreement and notice should detail the scope of the precluded/released claims. Here, paragraphs 1.24 and 7.1 of the settlement agreement delineate the major contours of the release.

In a (b)(2) class settlement, the release should confine itself to future claims for injunctive relief, without encroaching on absent class members' rights to bring claims for monetary relief in the future. Paragraphs 1.24 and 7.1 unequivocally sweep up and dispatch class members' monetary "damages" claims. Any release of individualized monetary damage claims requires the full providence of (b)(3) protections.

### 4.    Predominance is not a matter of class counsel's subjective preferences; they cannot circumvent (b)(2)'s prerequisites by settling for injunctive relief.

Although it is a necessary precondition to a (b)(2) settlement certification that the class obtain injunctive relief, it is not a sufficient one. As shown by *Hecht, Crawford,* and *Bolin, inter alia,* this Court must also consider the class definition, the injuries alleged, and the claims released.

This case is a perfect instantiation of why "Rule 23(b)(2) certainly cannot be read as requiring the court to accept the plaintiffs' ranking in importance of the various forms of relief they seek in the action." *Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466, 485 (S.D. Ohio 2001), *aff'd* 370 F.3d 565 (6th Cir. 2004); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986-87 (9th Cir. 2011) (citing *Wal-Mart*). Nor can the rule be read to allow the class representatives' subjective intentions to govern the predominance inquiry. *In re Monumental*

*Life Ins. Co.*, 365 F.3d 408, 415 (5th Cir. 2004); *Ries*, 287 F.R.D. at 541 (disavowing any import to plaintiffs' subjective belief that "their pursuit of monetary relief [was] secondary to their desire for corrective advertising and cessation of the allegedly deceptive labeling practices.").

At the time of settlement, defendants' and named plaintiffs' interests will converge on certifying the class as easily as possible, without the (b)(3) hurdles of predominance and superiority. *See In re Telectronics Pacing Sys. Inc.*, 221 F.3d 870, 880 (6th Cir. 2000) ("The bootstrapping of a Rule 23(b)(3) class into a Rule 23(b)(1)(b) class is impermissible and highlights the problem with defining and certifying class actions by reference to a proposed settlement."); *Bolin*, 231 F.3d at 976 (evincing concern that "plaintiffs may attempt to shoehorn damages actions into the Rule 23(b)(2) framework").

Restated, the problem the settling parties encounter is this: "the requirements for certification are not the defendant's to waive; they are intended to protect absent class members." Alexandra D. Lahav, *Symmetry and Class Action Litigation*, 60 UCLA L. Rev. 1494, 1506 (2013).

### B.    Allowing a right of opt-out does not cure the certification defect.

Although I am genuinely pleased that the parties have afforded absent class members the right of excluding themselves, that alone is not enough to reconcile a (b)(2) certification. As "*Wal-Mart* clarified[,] the structure of Rule 23(b) requires that claims for non-incidental monetary relief be certified for class treatment only if all of the (b)(3) requirements are satisfied—notice and opt-out rights alone are insufficient." *United States v. City of New York*, 276 F.R.D. 22, 27 (E.D.N.Y. 2011). In part, this is because the right of opt-out is not a panacea. It is rarely exercised. Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1546 (2004). It "does "not relieve the court of its duty to safeguard the interests of the class and to without approval from any settlement that creates conflicts among class members." *GM Trucks*, 55 F.3d at 809. It does not "diminish the extent to which a class action settlement is an exercise of judicial power." *Epstein v. MCA, Inc.*, 50 F.3d 644, 667 (9th Cir. 1995), *rev'd on other grounds sub. nom. Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996). "Regardless of whether class members are given opt-out rights, the court is still required to ensure that the representation is adequate and that the settlement is fair to class members." *Id.*

Beyond the limitations of the opt-out right, the (b)(3) prerequisites of predominance and superiority are indispensible safeguards for absent class members. They serve to prevent "sacrificing procedural fairness

or bringing about other undesirable results." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Amchem*, 521 U.S. at 615). "When a class seeks an indivisible injunction...[p]redominance and superiority are self-evident. But with respect to each class member's individualized claim for money, that is not so—which is precisely why (b)(3) requires the judge to make findings about predominance and superiority before allowing the class." *Wal-Mart*, 131 S. Ct. at 2558-59.

This is not merely an academic exercise. There are serious doubts here about whether (b)(3) predominance is satisfied here. *See, e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588, 591 (9th Cir. 2012) (nationwide class fails predominance inquiry because of variance between consumer protection and unjust enrichment laws of each state);[10] *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014) (no predominance where not "all of the members of the members of [the] proposed class were exposed to [defendant's] alleged deceptive practices.").[11] Nor is the superiority analysis a foregone conclusion either. *See In re Hotel Tel. Charges*, 500 F.2d 86, 91-92 (9th Cir. 1974) ("Whenever the principal, if not the only, beneficiaries to the class action are to be the attorneys for the plaintiffs and not the individual class members, a costly and time-consuming class action is hardly the superior method for resolving the dispute.").

So perhaps the parties are right that (b)(3) certification would be difficult. *See* Proposed Order of Preliminary Approval, Exhibit F to Settlement Agreement (Dkt. 168-1) ¶5. But that in no way makes a resort to (b)(2) acceptable. Putative class members are better off with no certification and no settlement, than with a bad certification. *See Amchem*, 521 U.S. at 621 ("The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments—checks shorn of utility—in the settlement class context."). And so, questions of predominance and superiority cannot be sidestepped by an artful agreement under (b)(2); "[r]ule 23(b)(3) [is] the only conceivable vehicle for [a nationwide consumer fraud] claim." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

**III.    Even if the proposed certification complied with Rule 23(b)(2), this settlement is not fair.**

Above, I have urged this Court to reject this settlement on the various grounds which demonstrate

---

[10] Although I recognize that the complaint alleges only California consumer protection claims, the release is most certainly not so limited. Nor under a conflict of laws analysis would application of California law be proper for those class members who purchased their products outside of California.

[11] Again, many of the class products here never contained partially hydrogenated vegetable oils.

1   that the underlying class cannot be certified as requested. These arguments can bleed into the corollary
2   23(e)(2) question of whether the settlement is "fair, reasonable and adequate." For instance, if final injunctive
3   relief is not appropriate respecting the class as a whole, any settlement that offers only injunctive relief will be
4   *per se* inadequate. Nonetheless, there are several independent reasons that this Court should reject the
5   settlement under 23(e) even if it accepts that the class itself is viable under (b)(2).

6       First, the basics: the burden of proving settlement fairness lies squarely with the proponents. *Pampers*,
7   724 F.3d at 718 (compiling cases and authorities); *accord True v. American Honda Co.*, 749 F. Supp. 2d 1052,
8   1080 (C.D. Cal. 2010) (*citing* 4 Newberg on Class Actions § 11:42 (4th ed. 2009)); American Law Institute's
9   Principles of the Law of Aggregate Litigation ("*ALI Principles*") § 3.05(c) (2010) ("In reviewing a proposed
10  settlement, a court should not apply any presumption that the settlement is fair and reasonable."). The
11  burden is yet heightened when the parties seek approval of a pre-certification settlement. *Bluetooth*, 654 F.3d
12  at 946-947 (citing cases from Second, Third, Seventh and Ninth Circuits); *Molski*, 318 F.3d at 953; *Richardson*,
13  2013 WL 5941486, at \*2, \*13; *see also* MANUAL FOR COMPLEX LITIG. § 21.612 (4th ed. 2004). "[P]re-
14  certification settlement agreements require that we carefully review the entire settlement, paying special
15  attention to 'terms of the agreement contain[ing] convincing indications that the incentives favoring pursuit
16  of self-interest rather than the class's interest in fact influenced the outcome of the negotiations.'" *Dennis v.*
17  *Kellogg Co.*, 697 F.3d 858, 867 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003)). "These
18  concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when
19  counsel receive a disproportionate distribution of the settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,
20  1021 (9th Cir. 1998); *Bluetooth*, 654 F.3d at 947. "[B]ecause the interests of class members and class counsel
21  nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class
22  settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re*
23  *HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) ("*Inkjet*") (internal quotation omitted).

24       Where the Court confronts a pre-certification settlement, consideration of the eight *Churchill Village*[12]
25  factors "alone is not enough to survive appellate review." *Bluetooth*, 654 F.3d at 946; *Pampers*, 724 F.3d at 718
26  (looking beyond Sixth Circuit's seven-factor test to find settlement unfair when it constitutes "preferential

27

28       [12] *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

1 | treatment" for class counsel).[13]

2 | While it is *necessary* that a settlement is at "arm's length" without express collusion between the
3 | settling parties, it is not *sufficient*. "While the Rule 23(a) adequacy of representation inquiry is designed to
4 | foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e)
5 | reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the
6 | negotiations." *Bluetooth*, 654 F.3d at 948 (quoting *Staton*, 327 F.3d at 960). Courts "must be particularly
7 | vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit
8 | of their own self-interests ... to infect the negotiations." *Pampers*, 724 F.3d at 718 (quoting *Dennis*, 697 F.3d
9 | at 864).

10 | The most common settlement defects are ones of allocation. This is because "the adversarial
11 | process—or 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner
12 | in which that amount is *allocated* between the class representatives, class counsel, and unnamed class
13 | members." *Pampers*, 724 F.3d at 717 (emphasis in original). Because "a defendant is interested only in
14 | disposing of the total claim asserted against it…the allocation between the class payment and the attorneys'
15 | fees is of little or no interest to the defense…." *Staton*, 327 F.3d at 964 (quoting *GM Trucks*, 55 F.3d at 819-
16 | 20).

17 | Allocational issues cannot be waived away simply by structuring the settlement as a constructive
18 | common fund, rather than a traditional common fund. *See Pampers*, 724 F.3d at 717-18; *Bluetooth*, 654 F.3d at

19 | [13] The sixth and eighth factors noted by *Churchill Village* (the "reaction of the class" and the "opinion
20 | experience and views of counsel") should be severely downplayed, if not dispensed with entirely. Inevitably,
21 | the "reaction of the class" prong begets the argument that the silence of absent class members (*i.e.* failure to
   | object) constitutes endorsement of the settlement (even before the objection period has ended). *See, e.g.*, Fee
22 | Memo 8, 19. This argument is empirically impoverished; silence is simply not consent. Christopher R. Leslie,
   | *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007)
23 | ("[S]ilence is a rational response to any proposed settlement even if that settlement is inadequate.");
24 | *Richardson v. L'Oreal USA, Inc.*, 2013 WL 5941486, at *14 (D.D.C. Nov. 6, 2013) (this factor "proves little.").

25 | Likewise, the "experience and views of counsel" factor, is a test that is always passed and therefore, no test at
   | all. *See generally* Brian Wolfman, *Judges! Stop Deferring to Class-Action Lawyers*, 2 U. MICH. J.L. REFORM 80 (2013).
26 | "Once the named parties reach a settlement in a purported class action, they are always solidly in favor of
   | their own proposal." *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774, 2007 U.S. Dist.
27 | LEXIS 47515, at *3 (N.D. Cal. Jun. 19, 2007); *accord ALI Principles* §3.05, *comment a* at 206 ("the lawyers who
28 | negotiated the settlement will rarely offer anything less than a strong, favorable endorsement").

943; *contra* Fee Memo at 8. "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief does not detract from the need carefully to scrutinize the fee award." *Staton*, 327 F.3d at 964. For either way, "the economic reality is that a settling defendant is concerned only with its total liability." *Pampers*, 724 F.3d at 717 (internal quotation omitted). Nor are issues of apportionment resolved by delaying agreement on fees until after the terms of the settlement have been negotiated. *Richardson*, 2013 WL 5941486, at *13. The only apparent way to effectively divorce class relief from fees is to reach an accord on class relief while simultaneously agreeing to litigate the issue of fees. *See In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005). In other words, as long as the defendant willingly foots both bills, there is no way to avoid the "truism that there is no such thing as a free lunch." *Staton*, 327 F.3d at 964.

So, not unexpectedly, the foremost 23(e)(2) deficiency relates to the issue of allocation: class counsel and the named representatives are seizing the entirety of the available cash proceeds and leaving class members with zero recovery.

### A. The ensemble of attorneys' fees and incentive award provisions signal a self-dealing settlement

The settlement agreement permits class counsel to seek, unopposed, an award of fees and costs of $760,000. Settlement ¶10.1. This award is segregated from class relief, such that any excess reverts to the defendant rather than class members. The three class representatives are entitled to seek, unopposed, incentive awards of $750 each. Settlement ¶10.1.

The Ninth Circuit has recently identified three warnings signs of a class action settlement that is inequitable as between class counsel and the class. *Bluetooth*, 654 F.3d at 947. *Accord Pampers*, 724 F.3d 718 ("preferential treatment" for class counsel renders settlements unfair). *Bluetooth* involved a settlement nearly identical to this one. The agreement there provided for prospective injunctive labeling relief and a $100,000 donation to a charity as the only "class relief," $800,000 to class counsel in fees, and a combined $12,000 to the nine class representatives. 654 F.3d at 939-40. *Bluetooth* reversed the settlement approval, laying a

framework to explain why such settlements are unfair.[14]

The first *Bluetooth* signal is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654 F.3d at 947; *Richardson*, 2013 WL 5941486, at *13; *GM Trucks*, 55 F.3d at 803 ("non-cash relief...is recognized as a prime indicator of suspect settlements). Here, the putative (b)(2) class receives solely injunctive relief while agreement permits class counsel to seek, unopposed, an award of fees and costs of $760,000. A proportionate fee request adheres to the Ninth Circuit's benchmark reasonable fee of 25% of the common fund in cases alleging economic injury. *See, e.g., Bluetooth*, 654 F.3d at 942; *Inkjet*, 716 F.3d at 1190. The benchmark is still 25% even where, as here, the settlement establishes a "constructive common fund" rather than a traditional pure common fund. *Dennis*, 697 F.3d at 862-863, 868 (in a "constructive common fund" settlement, an attorneys' award of "38.9% of the total...is clearly excessive"); *see also Pampers*, 724 F.3d at 720 (class relief must "be commensurate with [the] fee award"); *GM Trucks*, 55 F.3d at 821 ("[T]he court should probably use the percentage of recovery rather than the lodestar method as the primary determinant....[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."); *contra* Fee Memo 9-15. To reach the appropriate fee to class relief ratio here, the class benefit would have to be valued at $2.28 million.[15]

As a matter of law, the injunctive relief that this settlement offers is not worth $3.8 million *in class value*. The injunctive relief is described at Settlement ¶4.1. For a period of ten years after the implementation date, Quaker will remove PHOs from certain products, will not introduce PHOs into other products. *Id.* at ¶4.1.1-4.1.2. It will also cease making the statement "contains a dietarily insignificant amount of *trans* fat" on the label of any Product containing .2 grams or more of artificial *trans* fat per serving. *Id.* at ¶4.1.3.

---

[14] *Bluetooth* was not the first time the Ninth Circuit had disapproved this sort of arrangement. Under the settlement in *Molski*, "class members lost their rights to pursue any claims (excepting those for physical injury); the class representative received monetary relief of $ 5,000; and the class counsel was paid $ 50,000." 318 F.3d at 953. The supposed class relief was requiring the corporation to make tax-deductible donations to third parties. 318 F.3d at 953. And the Ninth Circuit concluded that "[b]ecause the consent decree released almost all of the absent class members' claims with little or no compensation, the settlement agreement was unfair and did not adequately protect the interests of the absent class members" *Id.* at 955.

[15] The calculation is ($760,000 / .25) - $760,000.

The burden of proving the quantum of benefit lies with the proponents of the settlement. *Pampers*, 724 F.3d at 719. They must demonstrably show that the settlement "secures some adequate advantage for the class." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010). To date, as far as I am aware, the only attempt to quantify the injunctive relief is the declaration of Nathan Wong, and only available to class members in redacted form. ("Wong Decl.") Dkt. 190-3. Dr. Wong's assessments of the injunctive relief vacillate between a figure of approximately $844 million/year based on the statistical worth of lives (*Id.* at ¶¶33, 46, 47) and around $35 million/year based on savings of health care costs (*id.* at ¶¶37, 44, 48).

I object to this testimony as failing to satisfy the threshold reliability required by *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Dr. Wong's quantification of benefit lacks rigor.

Among the most glaring problems, Dr. Wong first mistakenly assumes that trans fat consumption in a single year (rather than consumption over an entire lifetime) can be responsible for an individual's death. Wong Decl. ¶31. Thus, the supposed 5,300,530 grams responsible for one death (*id.*) should really be 5,300,530 multiplied by the average lifespan of an individual.

Second, Dr. Wong makes generalizations based on overall reductions in trans fat, but he does not account for the fact that diseases correlate only with *excessive* consumption of trans fats; there is no linear relationship between miniscule amounts of trans fats and negative health outcomes. *See* Eric Decker, *The Impact and Consequences of Banning Trans Fatty Acids*, http://foodtecheperspective.wordpress.com/2013/11/13/the-impact-and-consequences-of-banning-trans-fatty-acids/ (Nov. 13, 2013) (last visited May 16, 2014) ("FDA has calculated that *trans* fatty acid consumption of partially hydrogenated oils has decreased from 4.6 g per day in 2003 to 1.3 g per day (2.1 to 0.6% of total energy) in 2010. It is very common for kinetics to not be linear especially at extremely low or high concentrations of bioactive agents. Therefore, it does not seem scientifically prudent to make a bold statement of how many deaths a food ingredient is causing without any clinical data."); *see also* Comments of the Competitive Enterprise Institute Regarding the Tentative Determination Regarding Partially

1 | Hydrogenated Oils ("CEI Comments"), *available at* http://cei.org/regulatory-comments-and-
2 | testimony/comments-fda-trans-fats at 4 (Mar. 11, 2014) (last visited May 16, 2014) ("In all of the studies that
3 | demonstrated any correlation between trans fat consumption and negative human health outcomes, those
4 | negative health effects were associated with trans fat consumption account for more than 5 percent of total
5 | energy intake."). Similarly, the American Heart Association recommends that trans fat intake be limited to
6 | less than 1% of total calories, or approximately 2 to 2.5 grams of trans fat per day; it does not recommend
7 | that trans fat consumption be absolutely reduced to zero.
8 | http://www.heart.org/HEARTORG/GettingHealthy/FatsAndOils/Fats101/Fats-and-Oils-AHA-
9 | Recommendation_UCM_316375_Article.jsp (last visited May 16, 2014). There is no basis to suggest that
10 | consumers of Oatmeal to Go Bars and Instant Oatmeal are generally people who ingest trans fats at a rate of
11 | more than 8 times the national average.

12 | Next, Dr. Wong does not account for possible dietary substitution after the reformulations. *See* CEI
13 | Comments at 5 ("When trying to determine whether banning a product or ingredient will improve public
14 | health, it is crucial to consider what alternatives people will seek out…"). Instead, Dr. Wong presumes in
15 | effect that reformulation of these products will compel consumers of Quaker products to go on a diet.

16 | Relying on these false or unjustified predicates renders Dr. Wong's methodology facially unreliable.
17 | *See Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011) (failure to consider any other
18 | "confounding factors" left expert report inadmissible); *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830
19 | (9th Cir. 2001) (expert testimony based upon an "assumption that finds no support in the physical facts as
20 | described by the reports and other evidence in the record" was properly excluded); *Toomey v. Nextel Communs.,*
21 | *Inc.*, 2004 WL 5512967, 2004 U.S. Dist. LEXIS 30793, at *36-*38 (N.D. Cal. Sept. 23, 2004) (excluding
22 | evidence where the expert made "unrealistic assumptions"). Dr. Wong's valuation is akin to "[a] statistical
23 | study that fails to correct for salient explanatory variables, or even to make the most elementary
24 | comparisons"; it "has no value as causal explanation and is therefore inadmissible in a federal court." *United*
25 | *States v. Artero*, 121 F.3d 1256, 1262 (9th Cir. 1997) (quoting *People Who Care v. Rockford Bd. of Educ.*, 111 F.3d
26 | 528, 537–38 (7th Cir. 1997)).

27 | Regrettably, this is the prototypical effort in class action settlements to estimate the value of
28 | inestimable injunctions; it does nothing to serve the interest of the class and everything to serve the interest

1 | of class counsel. *See In re Oracle Secs. Litig.*, 132 F.R.D. 538, 544-45 (N.D. Cal. 1990) (Walker., J.) (referring to
2 | injunctive relief "expert valued at some fictitious figure" coupled with "arrangements to pay plaintiffs'
3 | lawyers their fees" to be the "classic manifestation" of the class-action agency problem); *Fraley v. Facebook,*
4 | *Inc.*, No C 11-1726 RS, 2012 U.S. Dist. LEXIS 116526, at *12 (N.D. Cal. Aug. 17, 2012) ("Plaintiffs have
5 | presented no reason in logic or law that supports calculating the value of the injunctive relief in such a
6 | manner."); *In re LivingSocial Mktg. & Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489, 2013 U.S. Dist.
7 | LEXIS 40059, at *47 n.16 (D.D.C. Mar. 22, 2013) (rebuking a $54 million valuation of injunctive relief as "of
8 | marginal value" and noting that "the Court is unable to assess the reliability of the report."). "Precisely
9 | because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by
10 | overreaching lawyers seeking to increase the value assigned to a common fund." *Staton*, 327 F.3d at 974; *cf.*
11 | *also Dennis*, 697 F.3d at 868 ("The issue of valuation of this aspect [*cy pres*] of a settlement must be examined
12 | with great care to eliminate the possibility that it serves only the "self-interests" of the attorneys and the
13 | parties, and not the class, by assigning a dollar number to the fund that is fictitious." Consequently, the
14 | Ninth Circuit has laid down a rule that "only in the unusual instance where the value to individual class
15 | members of benefits deriving from injunctive relief can be accurately ascertained may courts include such
16 | relief as part of the value of a common fund for purposes of applying the percentage method of determining
17 | fees." *Staton*, 327 F.3d at 974.

18 | However, the reason why an astronomical valuation cannot stand as a matter of law, is that "'[t]he
19 | fairness of the settlement must be evaluated primarily based on how it *compensates class members*'—not on
20 | whether it provides relief to other people, much less on whether it interferes with the defendant's marketing
21 | plans." *Pampers*, 724 F.3d at 720 (quoting *Synfuel Techs., Inc., v. DHL Express (USA), Inc.*, 463 F.3d 646, 654
22 | (7th Cir. 2006) (Wood, J.)). Even where the "injunctive relief [is a] substantial benefit[] secured under the
23 | settlement agreement, [it] benefit[s] the public and future consumers of [the defendants' product]—not Class
24 | members for past injuries—and cannot be a key consideration in determining the fairness of the settlement."
25 | *Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *15 (N.D. Ill. Jan. 3, 2014). Here, "[n]o
26 | changes to future advertising by [the defendant will benefit those who were already misled by [the
27 | defendant]'s representations." *True*, 749 F. Supp. 2d at 1077; *see also Crawford*, 201 F.3d at 880 (defendant's
28 | injunctive agreement not to use the abusive debt collection letter that was at issue in the case is a "gain" of

1 | "nothing" for class members).

2 | These cases are all proper recognitions of the principle that the class is composed of people who
3 | have done business with the defendants *in the past*; while the prospective injunctive relief can only benefit
4 | those who do business with defendants *in the future*. *See Felix*, 290 F.R.D at 408 (prospective injunctive relief
5 | promise of no value to class members who only dealt with defendant in past transaction).[16] Benefits that
6 | accrue to class members and opt-outs alike cannot be adjudged to be settlement benefits. *See Vought v. Bank*
7 | *of Am., N.A.*, 901 F. Supp. 2d. 1071, 1090 (C.D. Ill. 2012) (remarking on the slender "difference between an
8 | individual who opts out of the proposed settlement and an individual who does not opt out" and ultimately
9 | disapproving the settlement). Although this settlement may well impose significant costs on Quaker, that is
10 | not the measure of compensable value. *Bluetooth*, 654 F.3d at 944 ("[T]he standard [under Rule 23(e)] is not
11 | how much money a company spends on purported benefits, but the value of those benefits to the class.")
12 | (quoting *TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)); *Fraley*, 2012 U.S. Dist.
13 | LEXIS 116526, at *12. It may be true that "every square centimeter" of oatmeal packaging is "extremely
14 | valuable" to the defendant, but it is "egocentrism" to presume that that the same space is equally valuable to
15 | class members. *Pampers*, 724 F.3d at 720; *contrast* Mem. in Support of Motion for Preliminary Approval of
16 | Settlement (Dkt. 168) at 7 (defendants will bear the expense of reformulating Products…at a cost of

17

18

19

20

21

22

23

24 | [16] Note that this is *not* an argument that injunctive relief is *never* a benefit to the class. There are
25 | class actions where a class members receive injunctive relief that addresses their past injuries. For example,
   | *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), is an injunction-only settlement approved by the Ninth
26 | Circuit. *Hanlon* is consistent with *Pampers'* and *Synfuel's* holdings. *Hanlon* plaintiffs alleged a product defect,
   | and class members received "a redesigned improved replacement latch to be installed free of charge." This is
27 | retrospective injunctive relief, compensatory and potentially appropriate. But the injunctive relief here is not
28 | meant to make class members whole, and is thus not a benefit to class counsel's clients.

1  approximately $1.4 million). Non-class injunctive relief simply does not justify $760,000 in attorneys' fees.[17]
2  *Bluetooth's* first warning sign is apparent.

3      *Bluetooth's* second and third indicia of an unfair settlement—the presence of a "clear-sailing"
4  agreement (whereby defendant consents not to challenge the award of fees to plaintiffs' counsel) and a
5  "kicker" (whereby any excess fees reduction by the court reverts back to the defendant rather than to the
6  class)—are also present here. Settlement ¶10.1. This is inappropriate. It indicates that the class attorneys have
7  negotiated provisions to protect their fee award at the expense of potential class benefits. *See Weinberger v.*
8  *Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991) ("[A clear-sailing] clause by its very nature
9  deprives the court of the advantages of the adversary process."); *Bluetooth*, 654 F.3d at 949 ("[T]he kicker
10 deprives the class of that full potential benefit if class counsel negotiates too much for its fees"). It is
11 improper and a dereliction of fiduciary duty for class counsel to afford itself "red-carpet treatment on fees"

12

---

13     [17] Plaintiffs' extensive lodestar analysis (*see* Fee Memo 9-15) is unavailing. First, although the fee
14 allotment is germane to the fairness of the settlement, even a modest request relative to lodestar cannot
   justify an unfair allocation of the proceeds. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 n.14 (3d Cir.
15 2013) (lodestar multiplier of .37 not "outcome determinative"); *Inkjet*, 716 F.3d at 1177 (same with multiplier
16 of .32); *Bluetooth*, 654 F.3d 935 (reversing settlement approval notwithstanding district court's finding that the
   lodestar "substantially exceed[ed]" the fee requested and awarded). As one district court described the
17 unsuitability of applying lodestar methodology to settlement fee awards: "Class Counsel has requested for
   itself an uncontested cash award based on lodestar, rather than the value of the class recovery, with only a
18 modest discount from the claimed lodestar amount. In other words, the class is being asked to 'settle,' yet
19 Class Counsel has applied for fees as if it had won the case outright." *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-
   LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984, at *44 (D. Nev. Jun. 27, 2011).

20     Second, even if we were at the point of discussing reasonable fees, $760,000 would not be proper
21 under established lodestar methodology. "An attorney who works incredibly hard, but obtains nothing for
   the class, is not entitled to fees calculated by any method. For although class counsel's hard work on an
22 action is presumably a necessary condition to obtaining attorney's fees, it is never a sufficient condition.
   Plaintiffs attorneys don't get paid simply for working; they get paid for obtaining results." *HP Inkjet*, 716 F.3d
23 at 1182. Appropriate use of the lodestar calibrates the award downward, not upward, where the degree of
24 success achieved is disproportionately small. *See Bluetooth*, 654 F.3d at 942-44 (citing *Hensley v. Eckerhart*, 461
   U.S. 424, 434-36 (1983)); *Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 U.S. Dist. LEXIS 151180
25 (N.D. Cal. Oct. 21, 2013) (reducing fee by 25% from baseline lodestar to avoid class counsel obtaining a
26 disproportionate 44% of the settlement). Here, the plaintiffs seek virtually their entire lodestar, even though
   the class is being ask to settle for no compensatory relief at all. They seek to use their accrued lodestar to
27 "insulate [themselves] from the risk of pursuing an unprofitable case," something the Court "cannot" do.
28 *Keirsey v. Ebay, Inc.*, No. 12-cv-01200-JST, 2014 U.S. Dist. LEXIS 21371, at *7-*8 (N.D. Cal. Feb. 18, 2014).

1    while urging class settlement "at a low figure or less than optimal basis." *Pampers,* 724 F.3d at 718 (quoting
2    *Weinberger,* 925 F.2d at 524). A clear-sailing provision "by its very nature deprives the court of the advantages
3    of the adversary process" and "suggests, strongly" that its associated fee request should go "under the
4    microscope of judicial scrutiny." *Weinberger,* 925 F.2d at 525.[18]

5         A "kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class
6    amplifies the danger" that is "already suggested by a clear sailing provision." *Bluetooth,* 654 F.3d at 949. "The
7    clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full
8    potential benefit if class counsel negotiates too much for its fees." *Id.* In a typical common fund settlement,
9    the district court may, at its discretion, reduce the fees requested by plaintiffs' counsel—when it does so, the
10   class will benefit from the surplus. Under the proposed settlement, however, if the Court awards less than
11   the $760,000 fee that defendants have already agreed to pay to class counsel, the defendant will be the only
12   beneficiary. Because of the "economic reality that a settling defendant is concerned only with its total
13   liability," this settlement is therefore worse for the class than a traditional common fund. *Pampers,* 724 F.3d at
14   717 (quoting *Strong v. BellSouth Telecommns., Inc.,* 137 F.3d 844, 859 (5th Cir. 1998)). In effect, the parties have
15   prevented the Court from returning the fees and class relief to natural equilibrium.

16        A "kicker" will likely have the additional self-serving effect of protecting class counsel by deterring
17   scrutiny of the fee award. A court has less incentive to scrutinize a fee award, because the kicker combined
18   with the clear sailing agreement means that any reversion will only go to the defendant that had already
19   agreed to pay that amount. Charles Silver, *Due Process and the Lodestar Method,* 74 TUL. L. REV. 1809, 1839
20   (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman,
21   *Lawyer Barons* 522-25 (2011) (same; further arguing that reversionary kicker should be considered *per se*
22   unethical). *See specifically* Fee Memo at 7 (arguing that separation of fees and class relief mean that the court
23   need not exercise its fiduciary role and observing that judicial scrutiny just means "these funds will remain
24   with [the] Defendant"). At a minimum, these two clauses are a warning sign of a self-serving settlement that
25   merits justification: why was this negotiated in such a manner to make the class worse off? *Bluetooth, supra.*

26
27        [18] Clear sailing also undermines any conceivable benefit of separate negotiation of fees and terms.
     *Sobel v. Hertz Corp.,* No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984, at *45
28   (D. Nev. Jun. 27, 2011).

1            Apart from the attorneys' fees award, the settlement assures each of the three named plaintiffs an

2   unchallenged application for an incentive award of $750. Settlement ¶10.1. "The fact that one class member

3   receives $2,000 and the other 200,000+ nothing is quite enough to demonstrate that the terms should not

4   [be] approved under Rule 23(e)" *Crawford*, 201 F.3d at 882. This is because there is no "overlap" between the

5   deals obtained by the named representatives and the unnamed class members. *Pampers*, 724 F.3d at 722.

6   Rather, the payment to named plaintiffs makes them alone more than whole and "provide[s] a *disincentive* for

7   the class members to care about the adequacy of relief afforded unnamed class members." *Id.* (emphasis in

8   original).

9            The Seventh Circuit refers to this phenomenon as "leverag[ing]" "the class device…for one person's

10  benefit"). *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006). In *Murray*, the incentive payment

11  "of $3,000…[was] three times the statutory maximum, while others don't get even the $100 that the Act

12  specifies as the minimum." *Id.* "Such a settlement is untenable." *Id.* Given the $750 for each representative,

13  $760,000 for the attorneys, and $0 for absent class members, this settlement is unsupportable. *See Richardson*,

14  2013 WL 5941486, at *14 ("Set against the recovery obtained on behalf of the absent class members,

15  incentive awards of $1,000 are unfair.").

16           Just last year, the Ninth Circuit again disavowed these types of disproportionate incentive awards. *See*

17  *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013). The Ninth Circuit determined that incentive

18  awards conditioned upon endorsement of the settlement proposed were impermissible. But more than that,

19  "the significant disparity between the incentive awards and the payments to the rest of the class members

20  further exacerbated the conflict of interest caused by the conditional incentive awards." *Id.* at 1165. "There is

21  a serious question whether class representatives could be expected to fairly evaluate whether awards ranging

22  from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards." *Id.* As the

23  disparity here is starker—$750 per representative, $0 per class member—the question becomes

24  proportionally more serious. In such situations there is a well-founded fear that named representatives will be

25  "more concerned with maximizing [their own gain] than with judging the adequacy of the settlement as it

26  applies to class members at large." *Id.* (quoting *Staton*, 327 F.3d at 977).[19]

27

---

28        [19] *Staton* had also repudiated disproportionate incentive awards.

1          These cases hew to the important principle that "[t]he premise of a class action is litigation by

2 representative parties adjudicates the rights of all class members, so basic due process requires that named

3 plaintiffs possess undivided loyalties to absent class members." *Broussard v. Meineke Disc. Muffler Shops*, 155

4 F.3d 331, 338 (4th Cir. 1998). Class representatives are inadequate when incentives indicate that they may be

5 acting as agents of counsel (or of their own private interests) and not of the unnamed class. *See, e.g., Radcliffe;*

6 *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 960 (9th Cir. 2009). Promised motions for unopposed incentive

7 awards are just another instantiation of this principle. They ensure fidelity to class counsel's desired

8 settlement and undercut any incentive to actually scrutinize the benefits that non-privileged class members

9 obtain.

10          We have here a settlement where the class representatives will each get $750, the attorneys will get

11 $760,000, but the class as defined gets exactly nothing—only those individuals satisfied enough to become

12 future patrons can possibly enjoy the benefits of injunctive relief. The main beneficiaries of this settlement

13 are the attorneys; combined with the questionable clear-sailing and "kicker" provisions of the settlement with

14 the questionable relief, there is a tremendous question of Rule 23(a)(4) adequacy: were the class

15 representatives and counsel in this case acting in the best interests of the class, or in the best interests of class

16 counsel? *See Pampers, supra*. If the latter, then the plaintiffs cannot satisfy the 23(a)(4) and (g)(4) adequacy

17 inquiries. *See Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011) (counsel

18 must show the district court that "they would prosecute the case in the interest of the class . . . rather than

19 just in their interests as lawyers who if successful will obtain a share of any judgment or settlement as

20 compensation for their efforts."); *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1147 (9th Cir. 2000)

21 (if "class counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class

22 counsel breached their fiduciary duty to the class."). The class must be decertified if there is anything less

23 than "undivided loyalties." *Broussard*, 155 F.3d at 338. At a minimum, the settlement must be rejected as

24 unfairly dividing the constructive common fund.

25     **B.**    **The release is overbroad.**

26          Class counsel and the named plaintiffs are not the only privileged beneficiaries of this settlement.

27 The defendant obtains an unlawfully broad release at the expense of absent class members. Paragraph 7.1 of

28 the settlement releases "any and all causes of action…of every nature and description whatsoever…for all

claims that were or could have been asserted relating to the Products," exempting only personal injury claims.

The first problem, as noted *supra* §II.3, is the waiver in any (b)(2) settlement should confine itself to claims for injunctive relief. Paragraph 7.1 oversteps. It releases "all causes of action…liquidated or unliquidated, at law or in equity, for injunctive relief or damages…" In fact, this Court has made the same point even outside of the (b)(2) context. *See Fraley*, 2012 U.S. Dist. LEXIS 116526, at *8 ("Regardless of the importance and value to plaintiffs of the injunctive relief, it cannot serve as meaningful consideration for a release of class members' claim for damages, statutory or actual."); *cf. also Lusby v. Gamestop Inc.*, 2013 WL 1210283, 2013 U.S. Dist. LEXIS 41794, at *41 (N.D. Cal. Mar. 25, 2013) ("The release in the Settlement Agreement is not tailored to the relief provided in the Settlement Agreement.")

At least equally troubling is the fact that the operative language of the release—"all claims that were or could have been asserted relating to the Products"—fails to track the allegations of the complaint in this case. This is an unjustiable deviation from Circuit law. As *Hesse v. Sprint Corp.* makes clear, the scope of the release is circumscribed by the limitation that any released claims must share an "identical factual predicate as that underlying the claim in the settled class action." 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)). As Judge Alsup, among others, regularly observes, limiting a release to claims that "could have been brought" is unsatisfactory. *Manchouck v. Mondelez Int'l Inc.*, No. C 13-02148 WHA, 2013 U.S. Dist. LEXIS 80132, at *3 (N.D. Cal. Jun. 3, 2013) ("Language releasing claims that 'could have been brought' is too vague."); *Kakani v. Oracle Corp.*, 2007 WL 1793774, at *2-*3 (N.D. Cal. Jun. 19, 2007) (rejecting a settlement in part because of the "draconian scope" of the proposed release, which forever discharged the defendant from any and all claims that were asserted or *could have been asserted* in the complaint) (emphasis in original); *Otey v. Crowdflower, Inc.*, No. 12-cv-05524-JST, 2014 U.S. Dist. LEXIS 52192, at *21 (N.D. Cal. Apr. 15, 2014) (releasing "any and all claims for wage payments that either were raised or could have been raised" is "unlimited" and "improper"); *Bond v. Ferguson Enterprises, Inc.*, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) (finding release overbroad in class action where release "does not track the extent and breadth of Plaintiffs' allegations and released unrelated claims of any kind or nature up to the date of the agreement"); *Martinez v. Realogy Corp.*, No. 3:10-cv-00755-RCJ-VPC, 2013 U.S. Dist. LEXIS 155659, at *13-*14 (D. Nev. Oct. 29, 2013) (disparaging "could have been brought" language).

The parties may respond that the "could have been brought" language is qualified by limiting it to claims "relating to the Product." This is still insufficient. *See Custom LED, LLC v. eBay, Inc.*, 2013 WL 4552789, 2013 U.S. Dist. LEXIS 122022, at *18-*19 (N.D. Cal. Aug. 27, 2013). The allegations of the complaint revolved solely around the use of partially hydrogenated vegetable oils, and how the use of said ingredient supposedly made Quaker's advertising deceptive. They don't involve, for example, whether I found a rock instead of a dinosaur egg in a packet of instant oatmeal, whether other ingredients or advertisements are employed deceptively, whether Quaker is price-fixing with another company in violation of antitrust laws, or whether the new revised sketch of the Quaker Oats Man looks a bit too much like my grandfather.[20] Releases customarily avoid this pitfall by the use of precise "arising out of [insert factual allegations of complaint]" language.

Most recently, Judge Armstrong confronted a parallel situation in *Zepeda v. Paypal, Inc.*, 2014 U.S. Dist. LEXIS 24388, at *21-*22 (N.D. Cal. Feb. 24, 2014). As here, *Zepada* involved a proposed settlement that would pay $0 to absent class members, $250,000 to charity, $500,000 in fees to class counsel and $5,000 to the named representative. Also as here, the *Zepada* release was not limited to claims sharing a factual predicate with the allegations of wrongdoing in the complaint. In combination, "the lack of any monetary benefit to the class" and "the breadth of the release" impelled Judge Armstrong to deny approval. *Id.* at *22-*23. The Court should do the same here.

## CONCLUSION

The settlement cannot be approved because the class certification does not meet Rule 23(a)(4) or 23(g)(4) standards. But if the settlement is approved, the attorney fee request is far too disproportionate to the class relief, and must be substantially reduced.

---

[20] Just so there's no mistaken assumption, I'm speaking in pure hypotheticals here, not of particular meritorious claims that I currently maintain. Both of my grandfathers are deceased, so I doubt their likenesses have been appropriated.

Dated: May 19, 2014

Respectfully submitted,

/s/ Amy X. Yang
Amy X. Yang
6005 Ridge View Drive
Alexandria, VA 22310
Email: axyang@gmail.com
Voice: (410) 207-8745

*Pro Se*

1

2 **CERTIFICATE OF SERVICE**

3

4     I hereby certify that on this day I caused to be mailed the foregoing Objection via first class mail to the Court for filing and a copy to the following participants at the addresses listed below:

| | |
|---|---|
| Clerk of the Court<br>U.S. District Court for the Northern District of California<br>San Francisco Division<br>450 Golden Gate Avenue<br>San Francisco, CA 94102-3489 | Scott P. Martin<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Ave NW<br>Washington, DC 20036 |
| Ronald A. Marron<br>Law Office of Ronald Marron<br>651 Arroyo Drive<br>San Diego, CA 92103 | Quaker Settlement<br>Classaura Class Action Administration<br>780 Morosgo Drive # 14103<br>Atlanta, GA 30324 |
| Gregory S. Weston<br>The Weston Firm<br>1405 Morena Blvd., Suite 201<br>San Diego, CA 92110 | |

14 DATED this 19th day of May, 2014.

15

16                               */s/ Amy Yang*
                                Amy Yang