1  **BECK & LEE TRIAL LAWYERS**
   JARED H. BECK (233743)
2  ELIZABETH LEE BECK (233742)
   Corporate Park at Kendall
3  12485 SW 137th Ave., Suite 205
   Miami, Florida 33186
4  Tel: 305-234-2060
5  Fax: 786-664-3334

6  Counsel for Class Member Robert Chacanaca

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| In re QUAKER OATS LABELING LITIGATION | Case No: 5:10-cv-00502 RS |
|---|---|
| | Pleading Type: Class Action |
| | **CLASS MEMBER ROBERT CHACANACA'S OBJECTION TO CLASS ACTION SETTLEMENT** |
| | Judge: The Hon. Richard Seeborg |

ROBERT CHACANACA ("Chacanaca")[1], member of the proposed Class, by and through undersigned counsel, hereby files his Objection to Class Action Settlement.

## **Introduction**

This is the kind of settlement that gives class actions a bad name. The terms allow class counsel to enjoy a payday of over three quarters of a million dollars; Quaker receives a broad release of liability; and the Class gets nothing except basically worthless injunctive relief.

The Ninth Circuit has firmly cautioned against blessing such zero-value settlements. Furthermore, class counsel, The Weston Firm and the Marron Firm, were recently sharply rebuked by a federal district court for exercising "poor judgment" and "questionable handling" in connection with another consumer class action, where their requested fees were slashed by 98%. *See Mary Henderson v. The J.M. Smucker Company*, Case No. CV 10-4524-(VBKx) (C.D. Cal. Feb. 28, 2014).

The Court is bound by its fiduciary duty to deny approval because on its face, the settlement s not fair, reasonable, or adequate for the Class.

## **Standard**

Federal Rule of Civil Procedure 23(e) requires court approval for the settlement of any class action. In order to be approved, a settlement must be "fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir.1993). Rule 23(e) "imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims." *In re Gen. Motors*, 55 F.3d at 805; *accord In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir.2005) (court must "act[ ] as a fiduciary, serving as a guardian of the rights of class members."). Only careful review of a proposed settlement can discharge this obligation. Manual for Complex Litigation (Fourth) § 21.61 ("Judicial review must be exacting and

---

[1] Chacanaca was originally the lead plaintiff in this action. After the Court appointed The Weston Firm and Law Offices of Ronald Marron as interim class counsel (*see* Order Consolidating Matters & Appointing Class Counsel [D.E. 94]), Chacanaca was dropped from the complaint. Chacanaca's accompanying declaration (Exhibit B hereto) provides details regarding his purchases of Quaker products and other information required to appear in his objection.

1

thorough. The task is demanding because the adversariness of litigation is often lost after the agreement to settle"); *see also In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement.").

## Analysis

In *Bluetooth*, the Ninth Circuit set forth the framework for evaluating whether class action settlements are fair, reasonable, and adequate under Rule 23(e). The court identified three signs of collusion, the presence of which may indicate, "that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654 F.3d at 947. The signs are:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class;
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]

*Id.* (internal quotations and citations omitted).

This settlement has major *Bluetooth* problems. All three signs are present, and the settlement is plainly not fair, adequate, or reasonable to the Class.

## I. The Fees Are Disproportionate

Under the settlement, members of the Class receive exactly zero dollars, while Quaker gets a broad release of liability including all of their claims for damages or injunctive relief (with the exception of personal injury claims) arising out of the marketing and sale of the Products at issue. Settlement Agreement ¶ 1.24. Class counsel and the named Plaintiffs stand to make out

far better – netting up to $760,000 in fees and $750 in incentive awards, respectively. [2] *Id.* ¶ 10.2.[3]

In *Bluetooth*, the Ninth Circuit found a fee award to be disproportionate where class counsel's fees equated to 83.2% of the total amount the defendants were willing to spend to settle the case (excluding notice costs), and the class received no monetary distribution. *Bluetooth*, 654 F.3d at 945, 948. Here, and unlike *Bluetooth*, there is not even a cy pres award: the Class receives literally zero dollars, and their lawyers rake in up to $760,000.

## II.     There Is A Clear Sailing Agreement

"A clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991).

Here, as in *Bluetooth*, there is a clear sailing agreement: under Paragraph 10.1, Quaker Oats agrees not to "object to or oppose" any motion requesting fees for Class Counsel of up to $760,000. By their nature, clear sailing provisions "deprive[] the court of the advantages of the adversary process in resolving fee determinations and are therefore disfavored." *Bluetooth*, 654 F.3d at 949.

## III.    The Class Gets Paid Nothing

As to the third factor, the situation is even worse than the concern identified in *Bluetooth*. There, the Ninth Circuit found indicia of collusion when the settlement contained a "kicker," meaning that "all fees not awarded would revert to defendants rather than be added to the *cy pres* fund or otherwise benefit the class." *Bluetooth*, 654 F.3d at 947.

---

[2]     In their motion for attorneys' fees, they have asked the Court to award the full amount allowed under the agreement.

[3]     The only other monetary provision of settlement is up to $120,000 to pay for class notice. Settlement Agreement ¶ 6.1.

3

In this case, the Class does not receive any monetary benefit **and** there is no cy pres fund, much less an addition from unpaid fees. Indeed, Quaker has agreed to fund $760,000 to settle the Class's claims, and 100% of that is a check or wire to Class Counsel.

## IV.    The Injunctive Relief Is Of Zero Or De Minimis Value

The parties claim that the injunctive relief Quaker has agreed to is of great value to the Class, and more than sufficient to justify the fee award and the settlement as a whole. The Court should not be fooled. The injunctive relief component is worth nothing or very little at best.

As described in Paragraphs 4.1.1-4.1.3 of the agreement, the injunctive relief is basically a promise by Quaker to remove *trans* fat from two of its products by the end of 2015, and to not introduce *trans* fat in other products for a period of 10 years. In addition, the company agrees to make a minor adjustment to its label on the two products still containing *trans* fat by the end of 2014.

Quaker's pledge to remove and not use *trans* fat is hardly a great concession—in fact, it is really no concession at all. Over a month before the settlement was filed, the FDA announced its preliminary determination that partially hydrogenated oils, the main source of artificial *trans* fat in processed foods, are no longer "generally recognized as safe."[4]  In light of the FDA's position, what major company is **not** going to be excising *trans* fat from its products?   As the Wall Street Journal reported in connection with the FDA's announcement, "Food companies and restaurant chains offered a generally muted reaction, saying they either had stopped using *trans* fat or planned to quit soon."[5]

A promise to do what every other company is going to do in light of the FDA's newly stated position has no conceivable value above *de minimis*, especially given that Quaker is afforded two years to remove the *trans* fat under the terms of the settlement.

---

[4]    FDA News Release, FDA takes step to further reduce trans fats in processed foods (Nov. 7, 2013) *available at* http://www.fda.gov/newsevents/newsroom/pressannouncements/ucm373939.htm.

[5]    Thomas M. Burton & Julie Jargon, FDA Says Trans Fats Aren't Safe in Food, The Wall Street Journal (Nov. 7, 2013), *available at* http://online.wsj.com/news/articles/SB10001424052702303309504579183652200663132.

## V. The Settlement Should Not Be Approved

At the end of the day, the Class will receive nothing except Quaker's word to comply, in two years time, with the stated position of the Food and Drug Administration that *trans* fat should not be used in food. Meanwhile, their lawyers will get paid up to $760,000. This cannot be fair, reasonable, or adequate under any reasonable interpretation of Rule 23.

Recently, another district court rejected a settlement strikingly similar to the one presented here. In *Richardson v. L'Oreal USA, Inc.*, __ F. Supp. 2d __, 2013 WL 5941486 (D.D.C. Nov. 16, 2013), the parties' agreement provided that class counsel would receive fees and costs of up to $950,000; there was no monetary distribution to the class members or cy pres, and the only injunctive relief required L'Oreal to remove certain terms from some of its hair products' labels. The court's analysis, which was guided *inter alia* by *Bluetooth*, is instructive.

It noted that "if the Court approves the settlement, class members lose any possible monetary recovery and get an injunction of limited value, but if the Court disapproves the settlement perhaps some class members may get a monetary recovery." *Id.* at *13. The court's impression of unfairness was buttressed by the incentive awards to the class representatives, because, "[T]he fact that one class member receives $2,000 and the other 200,000+ [class members receive] nothing is quite enough to demonstrate that the terms should not [be] approved under Rule 23(e)." *Id.* at *14 (alterations in original).

Of the fees requested by class counsel, the *L'Oreal* court had this to say,

> [T]he class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright. . . . . Moreover, the result achieved here could be characterized as **worse than "settling"**: counsel seeks to release class members' (originally asserted) class-wide damages claims for precisely nothing. Regardless of the implications for calculating attorney's fees, the amount requested by plaintiffs and agreed to by L'Oréal creates the impression of unfairness.

*L'Oreal*, 2013 WL 5941486, at *13 (citation omitted) (emphasis added).

This settlement is also "worse than settling" because it requires the class to release their damages claims in return for "precisely nothing."

5

### VI. A Federal Court Recently Found Class Counsel To Be Guilty Of "Poor Judgment" In Connection With Their Fee Application and Prosecution of Another Consumer Action

There is an additional reason to be highly skeptical of the fairness and adequacy of the proposed settlement: the class counsel behind it.

In *Mary Henderson v. The J.M. Smucker Company*, Case No. CV 10-4524-(VBKx) (C.D. Cal. Feb. 28, 2014) ("*Henderson*"), the Honorable George King, Chief Judge of the U.S. District Court for the Central District of California recently ruled upon a fee application in another consumer class action prosecuted by The Weston Firm ("Weston") and Marron Firm ("Marron"), this one for false advertising of certain Smucker's products. (A copy of the order is attached hereto as **Exhibit A**).

As is the case here, *Henderson* resulted in no monetary recovery. Nonetheless, Weston and Marron filed a motion seeking over $3.2 million in fees and $35,138.65 in costs.

Judge King thoroughly parsed the fee application and concluded the request was "grossly excessive, especially in light of the limited success Plaintiff actually achieved in this lawsuit." *Henderson* at 3. The order chronicles examples of double-billing, redundancy, and other unreasonable activity characterizing the firms' billing records. Judge King took note of "counsel's questionable handling of this case" and found they demonstrated "poor judgment." *Henderson* at 9. Ultimately, Judge King awarded Weston and Marron fees of $72,297.90 – that is, **a scant two percent** of the over $3.2 million requested. In addition, the Court slashed their requested costs by almost half, from $35,138.65 to $19,417.37.

The fact that Weston and Marron were so recently harshly rebuked by a federal judge in another consumer class action – which, like this one, yielded no benefit to the proposed class, but resulted in Weston and Marron submitting an outsized fee application – raises nothing but bright red flags.

The settlement should not be approved.

## VII. Information Regarding Class Member And His Attorneys

Required information regarding the Class Member is found in the attached Declaration (**Exhibit B**). As to his attorneys' submissions of objections to class action settlements during the previous five years:

On May 16, 2011, the undersigned law firm, Beck & Lee, submitted, on behalf of indirect purchaser class members, an objection to an antitrust class action settlement based on allocation of settlement proceeds in *In Re Korean Air Lines Co. Ltd. Antitrust Litigation*, MDL No. 1891 (C.D. Cal.).

On October 23, 2013, Beck & Lee appeared and intervened on behalf of an objector to a proposed consumer class action settlement in *Martin v. Cargill, Inc.*, 295 F.R.D 380 (D. Minn. 2013) and obtained an order denying preliminary approval of the settlement.

The instant objection and the foregoing two objections are the only objections to class action settlements Beck & Lee has filed during the previous five years, based on a review of the firm's records.

DATED: May 27, 2014

             Respectfully Submitted,

             s/Jared H. Beck
             Jared H. Beck
             Counsel for Class Member