**GIBSON, DUNN & CRUTCHER LLP**
Daniel W. Nelson (*pro hac vice*)
DNelson@gibsondunn.com
Scott P. Martin (*pro hac vice*)
SMartin@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 530-4238

**Counsel for Defendant**
**The Quaker Oats Company**

**THE WESTON FIRM**
JACK FITZGERALD (257370)
jack@westonfirm.com
GREGORY S. WESTON (239944)
greg@westonfirm.com
MELANIE PERSINGER (275423)
mel@westonfirm.com
PAUL K. JOSEPH (287057)
paul@westonfirm.com
San Diego, CA 92110
1405 Morena Blvd., Suite 201
Telephone: (619) 798 2006
Facsimile: (480) 247 4553

**LAW OFFICES OF RONALD A.**
**MARRON, APLC**
RONALD A. MARRON (175650)
ron@consumersadvocates.com
B. SKYE RESENDES (278511)
skye@consumersadvocates.com
ALEXIS WOOD (270200)
alexis@consumersadvocates.com
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**Interim Class Counsel**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE QUAKER OATS LABELING LITIGATION | CASE NO.: 5:10-CV-00502-RS |
| | **NOTICE OF JOINT MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Judge: Honorable Richard Seeborg |
| | Hearing Date: June 26, 2014 |
| | Time: 1:30 p.m. |
| | Place: Courtroom 3, 17th Floor |
| | Action Filed: February 3, 2010 |

1

**NOTICE OF JOINT MOTION FOR FINAL APPROVAL
OF CLASS SETTLEMENT**

PLEASE TAKE NOTICE that on June 26, 2014, at 1:30 p.m., in Courtroom 3, 17th Floor, of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Victor Guttmann, Sonya Yrene, and Rebecca Yumul (collectively, "Plaintiffs") and Defendant The Quaker Oats Company ("Quaker") will and hereby do move this Court for an Order granting the following relief:

1.      Approving the proposed settlement as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23;

2.      Certifying the Class under Rule 23(b)(2) for settlement purposes only;

3.      Finding that the Notice was the best practicable notice under the circumstances and satisfied all constitutional and other requirements;

4.      Confirming Class Members who have timely submitted requests for exclusion;

5.      Dismissing the Action pursuant to the terms and conditions of the Settlement Agreement;

6.      Retaining jurisdiction over the enforcement and implementation of the Settlement Agreement and any amendments thereto; and

7.      Issuing any related orders as deemed appropriate by the Court.

Plaintiffs and Quaker jointly ask that the Court enter a Final Order Approving Class Action Settlement and a Final Judgment in substantially the same form as those previously filed as Exhibits F and G to the Settlement Agreement. *See* D.E. 168-1.

The motion is made pursuant to Rule 23(b)(2) and is based on this notice; the accompanying Memorandum of Points and Authorities; the concurrently filed Declaration; the argument of counsel and all records on file in this matter; and such other matters as the Court may deem appropriate.

2

Dated: June 12, 2014

/s/ Gregory S. Weston
Gregory S. Weston
THE WESTON FIRM
*Attorney for Plaintiffs and the Settlement Class*

Dated: June 12, 2014

/s/ Daniel W. Nelson
Daniel W. Nelson
GIBSON, DUNN & CRUTCHER LLP
*Attorney for Defendant The Quaker Oats Company*

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.      INTRODUCTION ............................................................................................................ 1

II.     THE LITIGATION AND SETTLEMENT NEGOTIATIONS ......................................... 2

III.    TERMS OF THE PROPOSED SETTLEMENT .............................................................. 4

        A.      The Proposed Settlement Class .......................................................................... 4
        B.      Injunctive Relief ................................................................................................. 4
        C.      Release, Entry of Judgment, and Continuing Jurisdiction ................................. 5

IV.     DISSEMINATION OF NOTICE TO THE CLASS .......................................................... 5

        A.      Publication Notice .............................................................................................. 6
        B.      Settlement Website ............................................................................................. 7
        C.      Other Forms of Notice ....................................................................................... 7

V.      ARGUMENT ................................................................................................................... 7

        A.      The Settlement Is Fair, Reasonable, and Adequate. ........................................... 9

                1.      The Parties Understood the Strengths and Weaknesses of their
                        Positions When They Negotiated the Settlement ..................................... 9
                2.      The Risk, Expense, Complexity, and Likely Duration of Further
                        Litigation Support the Settlement. ......................................................... 10
                3.      The Potential Difficulty of Maintaining Class Action Status
                        Throughout the Litigation Favors The Settlement. ................................ 12
                4.      The Substantial Injunctive Relief Offered in the Settlement Further
                        Supports Final Approval. ....................................................................... 14
                5.      The Experience and Views of Counsel Favor Approval. ........................ 15
                6.      The Absence of Governmental Participation Supports Approval ............ 15
                7.      The Reaction of the Class Members to the Proposed Settlement
                        Has Been Decidedly Favorable ............................................................... 16

        B.      There Was No Collusion or Conflict of Interest. .............................................. 16

VI.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
        SETTLEMENT PURPOSES. ......................................................................................... 17

        A.      Numerosity Is Satisfied .................................................................................... 17
        B.      The Settlement Class Satisfies the Commonality Requirement. ....................... 18
        C.      The Settlement Class Satisfies the Typicality Requirement. ............................ 18

i

D.    The Settlement Class Satisfies the Adequacy of Representation
Requirement................................................................................................. 18

E.    The Settlement Class Meets the Requirement of Rule 23(b)(2). .......................... 19

VII.    CONCLUSION............................................................................................................ 21

ii

# TABLE OF AUTHORITIES

Page

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................17

*Astiana v. Ben & Jerry's Homemade, Inc.*,
No. C 10-4387, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014)............................13

*Brown v. Ticor Title Ins. Co.*,
982 F.2d 386 (9th Cir. 1992) .......................................................................20

*Browning v. Yahoo! Inc.*,
No. 04-1463, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) .........................10

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ......................................................................................10

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) .........................................................10

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2008) .................................................................9, 10

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ................................................................................13

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2012) .......................................................................16

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ..........................................................16

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980) .....................................................................10

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. CV 08-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)..............15, 16

*Greko v. Diesel U.S.A., Inc.*,
No. 10-cv-02576, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ...................12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................8, 17, 18, 19

*Hernandez v. Chipotle Mexican Grill, Inc.*,
No. CV 12-5543, 2013 WL 6332002 (C.D. Cal Dec. 2, 2013) ......................13

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...............................................................9, 16, 17

*In re Currency Fee Antitrust Litigation*,
263 F.R.D. 110 (S.D.N.Y. 2009) ..................................................................15

*In re Heritage Bond Litig.*,
No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005)...............9, 12

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .........................................................................9

iii

*In re Netflix Privacy Litig.*,
   No. 5:11-cv-00379 (N.D. Cal. Mar. 18, 2013)......................................................................16

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)...............................................................................16

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)................................................................................................15

*In re POM Wonderful LLC*,
   No. ML 10-02199, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014).....................................13

*In re Portal Software, Inc. Securities Litig.*,
   No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)..............................11

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008)..............................................................................................7

*In re Warner Comms. Secs. Litig.*,
   618 F. Supp. 735 (1985)......................................................................................................10

*Lagarde v. Support.com, Inc.*,
   No. C 12-0609, 2013 WL 1283325 (N.D. Cal. Mar. 26, 2013).........................................16

*Lyons v. Coxcom, Inc.*,
   No. 08-CV-2047-H (CAB) (S.D. Cal. Aug. 23, 2010)................................................. 14, 21

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977)............................................................................................12

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).................................................................................. 11, 16

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ....................................................................................... 8, 12

*Pierce v. Rosetta Stone, Ltd.*,
   No. 11-01283, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013)..........................................15

*Red v. Kraft Foods, Inc.*,
   No. CV 10-1028, 2012 WL 8019257 (C.D. Cal. Apr. 12, 2012)........................................13

*Red v. Unilever United States, Inc.*,
   No. 10-cv-387 (N.D. Cal. June 21, 2011)..........................................................................21

*Richardson v. L'Oreal USA, Inc.*,
   — F. Supp. 2d. —, No. 13-508, 2013 WL 5941486 (D.D.C. Nov. 16, 2013) .............................21

*Ries v. AriZona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012)......................................................................................13

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...................................................................................... 8, 14

*Rosen v. Unilever United States, Inc.*,
   No. C 09-02563, 2011 U.S. Dist. LEXIS 157519 (N.D. Cal. June 21, 2011) .......................14

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976)..............................................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011).......................................................................................................18

*Weiner v. Snapple Beverage Corp.*,
   No. 07 Civ. 8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)........................................13

iv

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180, *amended by* 273 F.3d 1266 (9th Cir. 2001) ...........................................17

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ...........................................................................................3
Cal. Bus. & Prof. Code § 17500 ...........................................................................................3
Cal. Civ. Code § 1750 ...........................................................................................................3

**OTHER AUTHORITIES**

*Manual for Complex Litigation (Fourth)* § 21.6 ...............................................................9
*Manual for Complex Litigation (Fourth)* § 21.632 (2012) ..............................................20

**RULES**

Fed. R. Civ. P. 23(b)(2) .......................................................................................................21
Fed. R. Civ. P. 23(e)(2) .........................................................................................................2

**REGULATIONS**

21 C.F.R. § 101.9(c)(2)(ii) .....................................................................................................3
21 C.F.R. § 101.9(f)(1) ..........................................................................................................3
*Food Labeling: Trans Fatty Acids in Nutrition Labeling, Nutrient Content Claims, and Health
Claims*, 68 Fed. Reg. 41,434 (July 11, 2003; effective Jan. 1, 2006) ............................2

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Victor Guttmann, Sonya Yrene, and Rebecca Yumul (collectively, "Plaintiffs") and Defendant The Quaker Oats Company ("Quaker") respectfully submit this Memorandum of Points and Authorities in Support of their Joint Motion for Final Approval of the Class Action Settlement in this Litigation.

## I.    INTRODUCTION

On February 12, 2014, this Court entered an Order preliminarily approving a Class Action Settlement Agreement ("Settlement") between Plaintiffs, on behalf of the Class, and Quaker. *See* D.E. 180. The Parties reached the Settlement after more than three years of litigation and protracted negotiation over the course of several months, including with the assistance of The Honorable Leo S. Papas (Ret.) as a mediator. The settlement is memorialized in the Class Action Settlement Agreement ("Settlement Agreement") filed with this Court on December 23, 2013, and resolves all claims in the Litigation.[1]

As Plaintiffs explained to this Court in their motion for preliminary approval, the Settlement provides meaningful injunctive relief to the Class. Although Quaker continues to deny Plaintiffs' allegations, it has agreed under the Settlement Agreement to remove partially hydrogenated oil ("PHO") ingredients (*i.e.*, the source of *trans* fat in the Products) by December 31, 2015 from the Products that contain them. *See* D.E. 168, at 4. In addition, Quaker agreed not to introduce PHOs into those Products, or any other Products at issue in the Litigation, for a period of ten years. *See id*. Quaker further agreed that, if PHOs remain in any of the Products on or after December 31, 2014, it will cease making the statement "contains a dietarily insignificant amount of *trans* fat" on the label of any Product containing 0.2 grams or more of *trans* fat per serving. *See id*.

---

[1]    Unless otherwise noted, capitalized terms used in this Memorandum of Points and Authorities have the same meaning as in the Settlement Agreement.

The parties' settlement should now receive the Court's final approval because it is demonstrably "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e)(2). The Settlement provides meaningful relief for the Class in the face of significant risks of continued litigation. Class Counsel, who are highly skilled and experienced in consumer and complex litigation, vigorously litigated the claims before agreeing to the Settlement. As a result, Plaintiffs and Class Counsel participated in the settlement negotiations from a well-informed position that resulted in substantial injunctive relief to the Class and a significant benefit to the public at large. Indeed, Class Members have responded positively to the relief that Class Counsel negotiated on their behalf: no members have opted out of the Class, and only two Class Members have filed objections with this Court. The Settlement has the full support of each of the three Class Representatives.

For the reasons below, and those stated in Plaintiffs' Motion for Preliminary Approval of the Settlement, *see* D.E. 168, at 9-12, Plaintiffs ask that the Court certify the Class for Settlement purposes under Rule 23(b)(2), find that the Settlement is fair, reasonable, and adequate under Rule 23(e)(2), and thus grant final approval of the Settlement.

## II.    THE LITIGATION AND SETTLEMENT NEGOTIATIONS

The operative First Amended Consolidated Complaint alleges that the labels of certain products manufactured by Quaker are misleading because they imply that the Products are healthy, even though they contain or contained during the class period *trans*-isomer fatty acids—commonly known as *trans* fat—from PHOs. Since 2006, the FDA has required food labels to disclose nutrient information for *trans* fat. *See Food Labeling: Trans Fatty Acids in Nutrition Labeling, Nutrient Content Claims, and Health Claims*, 68 Fed. Reg. 41,434 (July 11, 2003; effective Jan. 1, 2006). The relevant FDA regulation requires the *trans* fat content to be disclosed on the Nutrition Facts panel of packaged food and to be "expressed as grams per serving to the nearest 0.5 (1/2)-gram increment below 5 grams and to the nearest gram increment above 5 grams." 21 C.F.R. § 101.9(c)(2)(ii). It further provides that, "[i]f the serving contains

less than 0.5 gram, the content, when declared, shall be expressed as zero." *Id.* For purposes of the Nutrition Facts panel, the FDA defines as an "insignificant amount" any nutrient present in an "amount that allows a declaration of zero in nutrition." *Id.* § 101.9(f)(1). Quaker asserts that the Products at issue here have, at all relevant times, contained either no *trans* fat or less than 0.5 grams per serving.

The First Amended Consolidated Complaint alleges that Plaintiffs are repeat purchasers of the Products, and assert that they read and relied on various statements made on Quaker's packaging that they claim were rendered misleading by the presence of *trans* fat from PHOs. *See* D.E. 102 ¶ 4, 116 & App'x. A. Based on these purportedly false and misleading statements, Plaintiffs assert causes of action for alleged violations of California's consumer protection laws—in particular, the Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*), the False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*), and the Unfair Competition Law (*id.* § 17200 *et seq.*). Quaker denies any wrongdoing.

On March 28, 2012, this Court granted in part and denied in part Quaker's motion to dismiss the First Amended Consolidated Complaint. *See* D.E. 131.[2] The Court held that Plaintiffs' challenges to several statements on the Products' packaging were preempted by the Federal Food, Drug, and Cosmetic Act, but permitted Plaintiffs to pursue their claims as to other statements and images. Since then, the Parties have engaged in substantial factual discovery; they each made initial document productions and participated in an extensive meet-and-confer process over the scope and contents of the remaining discovery. In addition, Class Counsel has conducted research outside of the discovery process to effectively negotiate the Settlement on behalf of the Class, including through their work in other cases involving *trans* fat and challenges to product labeling.

---

[2] The Court had previously granted in part and denied in part Quaker's motion for judgment on the pleadings, concluding that several of the claims asserted in Plaintiffs' prior complaint were preempted by federal law. *See* D.E. 34.

In addition to vigorously pursuing litigation in this matter, the Parties also engaged in protracted arms'-length settlement negotiations over the course of approximately six months. These negotiations included a lengthy mediation session with The Honorable Leo S. Papas (Ret.), who served as a magistrate judge for the Southern District of California for 18 years before his retirement. Ultimately, the Parties reached a Settlement that would avoid the need for further litigation by providing substantial injunctive relief to the Class.

Plaintiffs filed a Motion for Preliminary Settlement Approval on December 23, 2013. *See* D.E. 168. On February 6, 2014, the Court held a hearing on Plaintiffs' motion, *see* D.E. 178, and granted preliminary approval of the Settlement on February 12, 2014, *see* D.E. 180. The Fairness Hearing for the Settlement is scheduled for June 26, 2014.

## III. TERMS OF THE PROPOSED SETTLEMENT

The terms of the Settlement are as follows:

### A. The Proposed Settlement Class

The Class includes all persons and entities who purchased one or more of the Products in the United States during the period from February 3, 2006 through May 27, 2014. Excluded from the class are (a) persons or entities who purchased the Products for the purpose of resale or distribution; (b) persons who are employees, directors, officers, or agents of Quaker or its parent or subsidiary companies; (c) government entities; (d) persons who timely and properly excluded themselves from the Class, as provided in the Settlement Agreement; and (e) any judicial officer hearing this Litigation, as well as their immediate family members and employees.

### B. Injunctive Relief

Quaker continues to deny Plaintiffs' allegations that the Products contain or contained false or misleading labeling. As a compromise, however, and to resolve this matter expeditiously, Quaker has agreed to take significant measures over the next several years that will provide substantial injunctive relief to the Class.

4

*First*, Quaker has agreed to remove PHOs by December 31, 2015 from the Oatmeal to Go and Instant Quaker Oatmeal Products that currently contain PHOs, and not to reintroduce PHOs into those products for a period of ten years. *See* D.E. 168-1, at 14. The estimated cost of reformulating these products is approximately $1.4 million. *See* D.E. 168-2, at 2.

*Second*, with respect to the remaining Products at issue in the Litigation, Quaker has agreed not to introduce PHOs for a period of ten years into Quaker Chewy Bars (which do not currently contain PHOs), as well as the Instant Quaker Oatmeal Products that do not currently contain PHOs. *See* D.E. 168-1, at 15.

*Third*, Quaker has agreed that, unless it is in early compliance with the provision requiring removal of PHOs from the Products by December 31, 2014, it will cease making the statement "contains a dietarily insignificant amount of *trans* fat" on the label of any Product containing 0.2 grams or more of *trans* fat per serving. *See* D.E. 168-1, at 15.

### C. Release, Entry of Judgment, and Continuing Jurisdiction

If the Court grants final approval, every Class Member who has not filed a Request for Exclusion from the Settlement Class will be deemed to have released and forever discharged Quaker and the other Released Parties, as defined in the Settlement Agreement, from any and all Released Claims as set forth in Section 7 of the Settlement Agreement. *See* D.E. 168-1, at 22. The Court will retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement, and all parties agree to submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement. *See id.* at 24.

## IV. DISSEMINATION OF NOTICE TO THE CLASS

The Parties developed a notice program with the assistance of Classaura Class Action Administration ("Classaura"), a firm that specializes in the development, design, and implementation of class-action notice plans. The program was executed in accordance with its design and the terms approved by the Court. *See* D.E. 180, at 4. To date, the costs of providing

5

notice to Class Members has exceeded $86,000.  *See* Decl. of Gajan Retnasaba ("Retnasaba Decl.") at ¶11 (June 9, 2014) (attached as Exhibit A).

In consultation and collaboration with the parties, Classaura has taken thorough steps to provide the Court-ordered Notice to Class Members.  These notice procedures are consistent with class-action notice plans that have consistently been approved and implemented in other litigation, *see* D.E. 168, at 12 (collecting cases), and this Court has accordingly found that they "satisf[y] due process," are the "best notice practicable under the circumstances," and "shall constitute due and sufficient notice," D.E. 180, at 4.

### A.      Publication Notice

The Court-approved notice was published in *USA Today* on both April 3, 2014 and April 7, 2014.  *See* Retnasaba Decl. ¶2.  Notice was also published in the May edition of *Prevention* magazine, which was distributed to readers on or about April 24, 2014.  *Id.* at ¶3.  The published notice used the same language that this Court approved as the Short Form Notice, and was designed to provide Class Members with plain-language information regarding the Settlement and to inform them about their rights.  It included a general description of the lawsuit, the Settlement relief, instructions on how to file a claim, and a general description of Class Members' legal rights.  For additional information, Class Members were directed to the Settlement Website or, in the alternative, to a toll-free number that they could call for information.  *See* D.E. 168-1, at 54.

Complementing the published notices is the Long Form Class Notice.  The Long Form Class Notice contains detailed information about the lawsuit, the Settlement benefits, the release, and how to opt-out, object, and exercise other rights under the Settlement.  *See* D.E. 168-1, at 39.  The Long Form Class Notice is available on the Settlement Website identified in the published notices and by request to the Class Action Settlement Administrator.  *Id.*  Classaura provided 54 copies of the Long Form Class Notice at the request of Class Members.  *See* Retnasaba Decl. ¶8.

6

**B. Settlement Website**

On February 17, 2014, the Settlement Web site (www.QuakerLawsuit.com) was launched. *See* Retnasaba Decl. ¶5. The Web site's address appeared on all of the notices, as well as on Class Counsel's firm website. The Settlement Web site provides detailed information about the Settlement, as well as a copy of the published notice, Long Form Class Notice, summary of important dates, a copy of the Settlement Agreement with Exhibits, the Complaint, Plaintiffs' Motion for Preliminary Approval and accompanying declarations, the Preliminary Approval Order, and the Motion for Attorney Fees, Costs, and Incentive Awards. Class Members are advised of their legal rights, including, for example, how to opt-out or object. *See id.* at ¶5. The Web site had been viewed 3,192 times since its launch. *See id.*

**C. Other Forms of Notice**

In addition, by February 17, 2014, a toll-free number was established, in both English and Spanish, allowing Class Members to call and request that a Notice be mailed to them or listen to frequently asked questions. *See* Retnasaba Decl. ¶4. To date, there have been 401 calls to the toll-free number. *See id.*

The Class Action Fairness Act of 2005 ("CAFA") additionally requires class-action defendants to notify federal and state officials of any proposed settlement. 28 U.S.C. § 1715(b). On January 2, 2014, pursuant to CAFA, Quaker sent a Notice of Class Settlement to the Attorney General of the United States and to the attorneys general of every state. *See* D.E. 198. The Notice attached copies of the First Amended Consolidated Complaint, the Settlement Agreement and exhibits, and Plaintiffs' Motion for Preliminary Approval and exhibits. Neither General Holder nor any of the states' attorneys general has objected to the settlement.

**V. ARGUMENT**

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). As the Ninth Circuit has repeatedly emphasized, "voluntary conciliation and settlement

7

are the preferred means of dispute resolution," *Officers for Justice v. Civil Serv. Comm'n*, 688

F.2d 615, 625 (9th Cir. 1982), and this "overriding public interest in settling and quieting

litigation" is especially pronounced in class actions, "which frequently present serious problems

of management and expense," *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.

1976).

Under Federal Rule of Civil Procedure 23(e)(2), a district court may approve a class

settlement that "would bind class members" if, following a hearing, the court finds that the

settlement is "fair, reasonable and adequate."  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d

1011, 1026 (9th Cir. 1998) (internal quotation marks omitted).  This is necessarily a "tailored"

inquiry:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated
> between the parties to a lawsuit must be limited to the extent necessary to reach a
> reasoned judgment that the agreement is not the product of fraud or overreaching by, or
> collusion between, the negotiating parties, and that the settlement, taken as a whole, is
> fair, reasonable and adequate to all concerned.

*Officers for Justice*, 688 F.2d at 625; *see also, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d

948, 965 (9th Cir. 2009) (same).

Significantly, a proposed settlement "is not to be judged against a hypothetical or

speculative measure of what might have been achieved by the negotiators."  *Officers for Justice*,

688 F.2d at 625.  Instead, a settlement is fair, reasonable, and adequate when "the interests of the

class are better served by the settlement than by further litigation."  *Manual for Complex

Litigation (Fourth)* § 21.6, at 309 (2012); *see also, e.g., Officers for Justice*, 688 F.2d at 625

("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive

litigation that induce consensual settlements.").  In addition, "[i]t is the settlement taken as a

whole, rather than the individual component parts, that must be examined for overall fairness."

*Hanlon*, 150 F.3d at 1026.

The Ninth Circuit has identified a list of non-exclusive factors that a district court should consider in deciding whether to grant final approval, which may include some or all of the following:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (same).

In addition to considering these so-called "*Churchill* factors," the district court must also satisfy itself that "the settlement is 'no[t] the product of collusion among the negotiating parties.'" *Bluetooth*, 654 F.3d at 947 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). A settlement is "presumpt[ively]" fair where it is negotiated at arm's length by experienced counsel after significant discovery, mediation, and months of protracted settlement discussions. *See In re Heritage Bond Litig.*, No. 02-ML-1475 ST, *et al.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005). This presumption is fully warranted here because the Settlement is the product of arm's length negotiations conducted by capable counsel who are well-experienced in class-action litigation and mediated with the assistance of The Honorable Leo S. Papas (Ret.).

### A. The Settlement Is Fair, Reasonable, and Adequate.

Each of the factors identified by the Ninth Circuit as bearing on the fairness, reasonableness, and adequacy of a proposed settlement agreement strongly supports approval of the agreement at issue here.

#### 1. The Parties Understood the Strengths and Weaknesses of their Positions When They Negotiated the Settlement.

When litigation has proceeded to the point where the parties have a "'clear view of the strengths and weaknesses of their cases,'" this factor supports approval of a settlement. *Chun-*

9

*Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (quoting *In re Warner Commuc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985)); *see also*, *e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980). The parties here were "well positioned" at the time of their negotiations to "assess the strength of this case and the comparative benefits" of the Settlement. *Browning v. Yahoo! Inc.*, No. C04-1463, 2007 WL 4105971, at *12 (N.D. Cal. Nov. 16, 2007).

The proposed Settlement was reached following extensive investigation, discovery, and motion practice in the Litigation. Although Plaintiffs and Class Counsel maintain that their claims are valid and assert that they would prevail at trial, they acknowledge the significant challenges that they would face at both the class-certification stage and on the merits. The legal and factual positions in the case have been extensively briefed in the Parties' submissions in connection with Quaker's motion to dismiss, and the Parties were actively engaged in document production when the Settlement was reached. As such, the action had reached a stage where the Parties had—and negotiated with—a "clear view of the strengths and weaknesses of their case[]." *Chun-Hoon*, 716 F. Supp. 2d at 852 (internal quotation marks omitted).

## 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Support the Settlement.

The expense, complexity, and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement. *Churchill Vill.*, 361 F.3d at 576. Courts evaluate the strength of a plaintiff's case to "judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). The proposed Settlement provides substantial injunctive relief that will remain in place for years and that specifically addresses the claims asserted by Plaintiffs. Settlement on these terms is clearly warranted after comparing the uncertainties of future litigation given the risks detailed below.

The parties have already invested more than three years in aggressive, costly, and time-consuming pretrial litigation. The discovery obtained thus far makes clear that Plaintiffs face substantial challenges at each remaining stage of litigation, including class certification, summary judgment, trial, and appeal. At each stage, moreover, Plaintiffs risk receiving no relief at all and losing the opportunity to obtain the injunctive relief provided by the Settlement. The Settlement eliminates these costs and risks, while securing a favorable outcome for the Class.

Approval of a settlement is proper where, as here, "the settlement terms compare favorably to the uncertainties associated with continued litigation regarding the contested issues in this case," including where the settlement "provides Class Members with a meaningful business resolution regarding contested issues." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Absent the settlement, Quaker would present defenses that could pose a serious threat to Plaintiff's claims, as well as create uncertainty as to the appropriateness of class certification. Among other arguments at Quaker's disposal, Quaker's summary judgment briefing would raise serious questions of liability, including whether a reasonable purchaser would have been deceived by the challenged statements, and any damages calculation would entail so-called battles of the experts, thus increasing the cost and uncertainty to Plaintiffs. The potential arguments available to Quaker indicate that Plaintiffs' ability to prove liability and damages is unclear, at best, and favors a finding that the settlement is fair. *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (approving a settlement because, among other things, "plaintiffs' remaining claims are tenuous. Plaintiffs assert that establishing liability and damages at trial would be difficult because of the uncertainties associated with proving its claims, which are 'exacerbated by the unpredictability of a lengthy and complex jury trial'").

Moreover, Quaker would likely appeal any outcome in Plaintiffs' favor. Even in the best case, therefore, it could take many years for Class Members to get *any* relief absent the Settlement. There is a significant advantage of receiving a tangible benefit now as opposed to a

11

speculative potential benefit later. *See Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). Simply put, the risks and potential delay of further litigation outweigh the immediate, concrete relief provided under the proposed settlement agreement. *See, e.g., Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (approving a final settlement and noting that, "even with a strong case, further litigation would be time-consuming and expensive"); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *7 ("[W]hile Plaintiffs are confident of the strength of their case, it is imprudent to presume ultimate success at trial and thereafter.").

### 3. The Potential Difficulty of Maintaining Class Action Status Throughout the Litigation Favors The Settlement.[3]

The Settlement provides Class Members with significant benefits without the risk and delay of continued litigation, trial, and appeal. In negotiating the Settlement, Plaintiffs took into account the uncertainty of litigation and believe that, in light of the risks, the Settlement is fair, reasonable, and adequate. In particular, if Plaintiffs were unable to obtain and preserve class certification, the case would effectively be over, and the Class would receive nothing. Continuing to pursue this litigation would raise serious risks for Plaintiffs on this score.

If the case had not settled, Quaker would vigorously dispute that certification of any class is appropriate in this case. Plaintiffs are aware of the significant barriers they would face in obtaining and maintaining class certification. These barriers would be particularly daunting if Plaintiffs were to seek certification of a damages class under Rule 23(b)(3), rather than the injunctive-relief certification sought by the Settlement Rule 23(b)(2). Rule 23(b)(3) permits certification of a damages class only when "questions of law or fact common to class members predominate over any questions affecting only individual members." Yet the claims that could

---

[3] This sub-section only is not joined by Plaintiffs, who believe they have a strong case for class certification. Plaintiffs nonetheless acknowledge that certain food labeling cases similar to this action have not been certified, and that recent decisions decertifying or denying certification of consumer class actions is an additional factor favoring approval of the Settlement.

be asserted by Class Members would raise innumerable individual questions. For example, Class Members may have purchased the Products for any number of reasons and are unlikely to have seen the same packaging (because Quaker used vastly different Product packaging over the course of the Class Period); in addition, the Class Members did not pay a uniform price for the Products, which was instead set by individual retailers across the country. *See, e.g., Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (rejecting Rule 23(b)(3) certification given differences in price paid by cable subscribers across the class region).

For these and other reasons, cases involving similar factual allegations have consistently rejected damages classes under Rule 23(b)(3). *See In re POM Wonderful LLC*, No. ML 10-02199, 2014 WL 1225184, at *5 (C.D. Cal. Mar. 25, 2014) (predominance requirement not satisfied because plaintiffs' damages expert failed to "answer the critical question why that price difference existed, or to what extent it was a result of Pom's actions"); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) (denying class certification in part because an individualized award of restitution would depend on how many products each class member purchased and the defendant did not set the retail price); *Red v. Kraft Foods, Inc.*, No. CV 10-1028, 2012 WL 8019257, at *11 (C.D. Cal. Apr. 12, 2012) (same); *Hernandez v. Chipotle Mexican Grill, Inc.*, No. CV 12-5543, 2013 WL 6332002 (C.D. Cal. Dec. 2, 2013) (denying class certification in part because there was no class-wide method for calculating damages that depend on the amount of purchases and date of those purchases); *Weiner v. Snapple Beverage Corp.*, 07 Civ. 8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) (denying Rule 23(b)(3) certification because individualized inquiries into causation, injury, and damages would predominate); *see also Ries v. AriZona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) (Seeborg, J.) (noting that "individualized awards of monetary restitution . . . would require individualized assessments of damages based on how many products the class member had bought"). Yet even if Plaintiffs were able to secure a favorable decision on a motion for class certification, the Court has the ability to decertify any certified class at any time,

and certification could be challenged on appeal under Rule 23(f) or following final judgment. *See Rodriguez*, 563 F.3d at 966.

### 4. The Substantial Injunctive Relief Offered in the Settlement Further Supports Final Approval.

The Settlement provides substantial injunctive relief for the Class: Quaker has committed to eliminating all PHOs from the relevant Products by December 31, 2015, and not to introduce PHOs into these Products, or the other Products at issue in the litigation, for ten years. This undertaking confers a substantial benefit on the class and accomplishes the principal goals of the litigation. Similar settlements providing injunctive relief for Class members, and monetary amounts only for attorney's fees, costs, and incentive payments to the named Plaintiffs, have been approved by courts in this Circuit. *See Lyons v. CoxCom, Inc.*, No. 08-cv-2047-H-CAB (S.D. Cal. Aug. 23, 2010) (granting final approval of Rule 23(b)(2) settlement where class members did not receive a direct monetary benefit but were required to release monetary claims); *see also Rosen v. Unilever United States, Inc.*, No. C 09-02563, 2011 U.S. Dist. LEXIS 157519 (N.D. Cal. June 21, 2011) (granting final approval to class settlement requiring removal of *trans* fat from all Unilever margarines without payments to the class).

This injunctive relief is particularly valuable because, whether or not the Settlement is ultimately approved, the class may not recover any damages. As discussed above, Plaintiffs recognize that they face a number of barriers to success should they seek certification of a damages class pursuant to Rule 23(b)(3). And even if a damages class were certified, the value of each claim would be exceedingly small both because of the generally low prices of the products, typically less than $3, and because of the small value of any alleged "premium" that a given class member allegedly paid as a result of the handful of challenged labeling statements that appeared episodically on some of the products. Given the likely valuation of the claims remaining in this litigation, and the relatively large size of the class, any payment per person would be *de minimis*, and a large part of the common fund would likely be wasted locating and

sending low-value checks to Class Members, with other amounts left unclaimed. Class Members benefit from receiving guaranteed relief now, rather than only the speculative possibility that, after years of litigation, they might receive a small check or nothing at all.

Finally, courts have acknowledged the substantial benefit that injunctive relief provides to class members and the public at large. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 124 (S.D.N.Y. 2009) (court held that the injunctive relief was among the factors that "weigh[ed] strongly in favor of approval."). In addition to benefitting the Class Members, the injunctive relief provided in this Settlement confers a significant benefit to the public at large.

### 5. The Experience and Views of Counsel Favor Approval.

The experience and views of counsel also support approving the proposed Settlement. The fact that Class Counsel have determined, in the exercise of their duties to the Class, that this settlement is fair, reasonable, and adequate weighs in favor of final approval. *See, e.g., Pierce v. Rosetta Stone, Ltd.*, No. 11-01283, 2013 WL 5402120, at *5 (N.D. Cal. Sept. 26, 2013) ("Given the collective experience of the attorneys involved in this litigation, the Court credits counsels' view that the settlement is worthy of approval."). The basis for relying on Class Counsel's views is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Class Counsel believes that this is a strong Settlement that is fair and reasonable in light of the significant relief achieved by the Settlement.

### 6. The Absence of Governmental Participation Supports Approval.

Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class-action settlement, CAFA presumes that—once put on notice—state or federal officials will "raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08-1365, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010); *see also LaGarde v.*

15

*Support.com, Inc.*, No. C 12-0609, 2013 WL 1283325, at *7 (N.D. Cal. Mar. 26, 2013) (same); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, at *14 (N.D. Cal. Mar. 18, 2013) (same). To date, no state or federal official has raised any objection to the settlement.

### 7. The Reaction of the Class Members to the Proposed Settlement Has Been Decidedly Favorable.

It is well established that "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (collecting cases). Here, the response from Class members has been overwhelmingly positive.

There have been no requests for exclusion, and only two objections filed in accordance with this Court's order—one of which was filed by a former plaintiff in this case whose preferred counsel lost out on an earlier bid for control of the litigation. *See* D.E. 193, 195. This positive reaction to the Settlement indicates the Court should grant final approval, as the Court "'may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.'" *Garner*, 2010 WL 1687832, at *14. "'It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'" *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528-29); *see also Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010) ("[A] small number of class members seeking exclusion or objecting indicates an overwhelming positive reaction of the class."). That presumption applies with full force here.

### B. There Was No Collusion or Conflict of Interest.

When a settlement is reached before the class is certified, the settlement agreement must be scrutinized for signs of "collusion or other conflicts of interest." *Bluetooth*, 654 F.3d at 946; *see also Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). Although such scrutiny is therefore required here, there is no evidence suggesting that the parties reached this Settlement as

16

a result of collusion, self-interest, or any conflict of interest. The Settlement provides significant injunctive relief to the class and resulted from an arms-length negotiation process with the benefit of the class members in mind. *See Bluetooth*, 654 F.3d at 948. Indeed, the Settlement was negotiated utilizing the guidance of an experienced, neutral mediator. *See id.* (holding that the use of a "neutral mediator" is "a factor weighing in favor of a finding of non-collusiveness").

In *Bluetooth*, the Ninth Circuit explained that the presence of particular "warning signs" for collusion requires district courts to more carefully scrutinize the proposed settlement; the ultimate issue, however, remains whether "the end product is a fair, adequate, and reasonable settlement agreement." *See id.* at 947-49. The terms of the Settlement provide real and meaningful injunctive relief to class members, and should be approved as fair, reasonable, and adequate. *See supra* at 17.

## VI. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

Based on the showing made by Plaintiffs in support of their Motion for Preliminary Approval, *see* D.E. 168, and as discussed more fully in this Court's Preliminary Approval Order, *see* D.E. 180, the Court should determine that the proposed settlement class meets the requirements laid out by Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997); *Manual for Complex Litigation* § 21.632 .

Plaintiffs bear the burden of establishing that all four requirements of Rule 23(a)— numerosity, commonality, typicality, and adequacy of representation— are satisfied, as well as one requirement of Rule 23(b). *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). Plaintiffs seek certification under Rule 23(b)(2).

### A. Numerosity Is Satisfied.

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon*, 150 F.3d at 1019. In this case, the proposed Class consists of potentially hundreds of thousands of consumers who purchased Products during the Class

1  Period. This number far exceeds the point at which joinder of all members of the Class is

2  obviously impractical. *See id*.

3  **B.    The Settlement Class Satisfies the Commonality Requirement.**

4  The commonality requirement asks whether "there are questions of fact and law which

5  are common to the class." *Hanlon*, 150 F.3d at 1019 (internal quotation marks omitted).

6  "Commonality requires the plaintiff to demonstrate that the class members have suffered the

7  same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotation

8  omitted). This requirement is satisfied.

9  All of the class members purchased the Products at issue in the Litigation. While there

10  were variations in the labels and packaging, the Class Members were all exposed to labels

11  containing allegedly misleading statements during the Class Period. These facts are common to

12  all Class Members. All of the Class Members allege violations of California's consumer-

13  protections laws, and the question whether Quaker's labeling was misleading will resolve a

14  central issue for all Class Members on a class-wide basis.

15  **C.    The Settlement Class Satisfies the Typicality Requirement.**

16  Rule 23(a)(3) requires that the claims or defenses of the representative party be typical of

17  the claims or defenses of the class. *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are

18  'typical' if they are reasonably co-extensive with those of absent class members; they need not

19  be substantially identical." *Id*. The claims made by the named Plaintiffs are typical of the Class

20  they seek to represent. The named Plaintiffs are all purchasers of Products manufactured by

21  Quaker, as are all of the Class members, and both the named Plaintiffs and the absent members

22  of the Class assert that the labeling of these Products was rendered misleading in exactly the

23  same way—namely, because the products contained small amounts of *trans* fat.

24  **D.    The Settlement Class Satisfies the Adequacy of Representation Requirement.**

25  Rule 23(a)(4) requires named plaintiffs to fairly and adequately protect the interests of

26  the class, which includes retaining class counsel that are qualified, experienced, and generally

27

28

able to conduct the proposed litigation. As the Ninth Circuit has explained, "[r]esolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

In its Order appointing The Weston Firm and Law Offices of Ronald A. Marron as interim class counsel over a competing law firm, the Court has already recognized that "[t]here is no question . . . the Weston/Marron counsel and Reese Richman have ample experience handling class actions and complete litigation. It is also clear that both have particular familiarity with suits involving issues of mislabeling and the food industry. Even more specifically, both firms seem to have developed a niche expertise in litigation centered on trans fat." D.E. 94, at 5.

Moreover, Plaintiffs do not have any interests antagonistic to the class. Plaintiffs are all average persons who purchased Quaker's Products for their own personal and household use in typical settings—*e.g.*, grocery stores and supermarkets. Their claims parallel those asserted by the absent Class Members. Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### E. The Settlement Class Meets the Requirement of Rule 23(b)(2).

Rule 23(b)(2) requires that (1) "the party opposing the class has acted or refused to act on grounds that apply generally to the class," and (2) "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Both requirements are satisfied here. *First*, Quaker is alleged to have labeled its Products in a false and misleading manner that affected all Class Members in the same way. By definition, all Class Members purchased Products containing the allegedly misleading statements from third-party retailers. *Second*, the injunctive relief provided by the Settlement Agreement is appropriate for all Class Members. The Parties have agreed, after extensive negotiations, that forward-looking relief that will provide all Class Members—and the general public—with PHO-free versions of the Products for at least ten years is desirable and reasonable under the circumstances.

In addition, although Plaintiffs seek certification under Rule 23(b)(2), and thus no opt-out provision was necessary, Class Members were nonetheless afforded the opportunity to opt out of the Settlement. The Parties included this provision to ensure that any Class Member who is dissatisfied with the relief provided by the Settlement could pursue his own claims, and would not be precluded from doing so based on the release contained in the Settlement Agreement. In similar circumstances, the Ninth Circuit has concluded that absent class members' due process rights are adequately protected when they are afforded notice and the opportunity to opt out of a settlement that would release their damages claims. *See Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992) (noting that a Rule 23(b)(2) settlement may "bind an absent plaintiff concerning a claim for monetary damages" where the absent class members are provided notice and the opportunity to opt out). Consistent with the Ninth Circuit's guidance, the Parties here have included such provisions as a cornerstone of the Settlement to ensure that the absent Class Members' rights are protected.

This critical component of the Settlement distinguishes it from cases that have denied final approval under Rule 23(b)(2) where the proposed settlement did not provide absent class members with notice and an opportunity to opt-out, but nonetheless released all claims. *See, e.g., Richardson v. L'Oreal USA, Inc.*, — F. Supp. 2d. —, Civ. Action No. 13-508, 2013 WL 5941486, at *9 (D.D.C. Nov. 6, 2013). Instead, the Settlement at issue here falls firmly in line with cases from this Circuit involving similar claims and releases, which have held class certification to be proper under Rule 23(b)(2). *See, e.g.,* D.E. 163, *Red v. Unilever United States, Inc.*, No. 10-cv-387 (N.D. Cal.) (approving Rule 23(b)(2) class settlement where defendant agreed to eliminate *trans* fat in products as injunctive relief, in exchange for release of all claims); D.E. 93, *Lyons v. CoxCom, Inc.*, No. 3:08-cv-2047 (S.D. Cal. Aug. 23, 2010) (certifying a Rule 23(b)(2) class where class members did not receive any direct monetary benefit but were required to release monetary liability and expenses).

# VII. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court approve the Parties' proposed Settlement as fair, reasonable, and adequate, certify the proposed Class under Rule 23(b)(2) for settlement purposes only, and enter final judgment in the case.

Respectfully submitted,

DATED: June 12, 2014

By: /s/ Daniel W. Nelson

**GIBSON, DUNN & CRUTCHER LLP**
DANIEL W. NELSON
SCOTT P. MARTIN
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:     (202) 955-8500
Facsimile:     (202) 530-4238

**Attorneys for The Quaker Oats Company**

DATED:  June 12, 2014

By: /s/ Ronald A. Marron

**LAW OFFICES OF RONALD MARRON, APLC**
RONALD A. MARRON
651 Arroyo Drive
San Diego, CA 92103
Telephone:     (619) 696-9006
Facsimile:     (619) 564-6665

**Attorney for Plaintiffs and the Settlement Class**

DATED:  June 12, 2014

By: /s/ Gregory Weston

**THE WESTON FIRM**
GREGORY WESTON
JACK FITZGERALD
1405 Morena Blvd., Suite 201
San Diego, CA 92113
Telephone:     (619) 798-2006
Facsimile:     (480) 247-4553

**Attorney for Plaintiffs and the Settlement Class**

21

**FILER'S ATTESTATION**

I, Daniel W. Nelson, am the ECF User whose ID and password are being used to file the above-captioned motion. In compliance with General Order 45, paragraph X.B., I hereby attest that Ronald A. Marron, Gregory Weston, and Jack Fitzgerald have concurred in this filing.

DATED: June 12, 2014               **GIBSON, DUNN & CRUTCHER LLP**

                                      /s/ Daniel W. Nelson
                                      Daniel W. Nelson